UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BANCO POPULAR DE PUERTO RICO, INC.<br>  Plaintiffs<br><br>VS.<br><br>LATIN AMERICAN MUSIC CO., INC., ET ALS<br>  Defendants | CIVIL NO. 01-1142 (GAG)<br><br><br><br><br>COPYRIGHT INFRINGMENT |
| LATIN AMERICAN MUSIC CO., INC.,<br>  Plaintiffs,<br><br>VS.<br><br>BANCO POPULAR DE PUERTO RICO, INC.<br>  Defendants | CIVIL NO. 01-1461 (GAG) |

DEFENDANTS ANGEL "CUCO" PEÑA'S AND ALTAMAR MUSIC'S
STATEMENT OF UNCONTESTED MATERIAL FACTS

TO THE HONORABLE COURT:

   Come now, defendants ANGEL "CUCO" PEÑA and ALTAMAR MUSIC, by his undersigned attorneys and pursuant to L.Cv.R. 56(b), respectfully present this Statement of Uncontested Material facts for which no genuine issue of dispute exists, in support of Defendants Angel "Cucco" Peña's and Altamar Music's Motion for Summary Judgment:

1.   Since 1993, BPPR has annualy produced Christmas music specials which are broadcast on Puerto Rican television and radio, and distributed as audio and audiovisual works. (*See* Docket #1, Banco Popular's Complaint, ¶¶ 18-19).

2.   In and around 1996, LAMCO represented to BPPR that LAMCO and its purported music licensing organization, ACEMLA, owned rights to many of the musical works used in the Specials. (*Id*, at ¶¶ 24, 27).

3.     BPPR subsequently learned that the Peer Parties in the present case had claimed rights to many of the works claimed by LAMCO/ACEMLA. (*Id*, at ¶¶ 26, 30-34, 37).

4.     In January 2001, BPPR instituted the present action seeking a declaration as to the ownership of as many as several dozen musical works that were used in the Specials. (*Id*, at WHEREFORE clause, ¶ 1, pg.14).

5.     Since 1993, BPPR has annualy produced Christmas music specials which are broadcast on Puerto Rican television and radio, and distributed as audio and audiovisual works. (*See* Docket #1, Banco Popular's Complaint, ¶¶ 18-19).

6.     In and around 1996, LAMCO represented to BPPR that LAMCO and its purported music licensing organization, ACEMLA, owned rights to many of the musical works used in the Specials. (*Id*, at ¶¶ 24, 27).

7.     BPPR subsequently learned that the Peer Parties in the present case had claimed rights to many of the works claimed by LAMCO/ACEMLA. (*Id*, at ¶¶ 26, 30-34, 37).

8.     Ownership of these (6) works including "El Pito" works is still in dispute. (*See* Docket #268, ¶ 2 n.1-2, ¶ 1 3 n.3).

9.     In 1966, Jimmy Sabater and Joe Cuba, co-authors of "El Pito", signed a Popular Songwriters Contract with Cordon Music, Inc. (predecessor to EMI), wherein they transferred to Cordon Music the original and renewal terms of the copyright ownership to "El Pito". (*See* Exhibits 1 and 2).

10.    Jimmy Sabater stated under oath that "in 1966, I signed two popular Songwriters contracts with Cordon Music Corp. assigning my copyrights in "Bang Bang" and "El Pito (I'll Never Go Back to Georgia) to Cordon Music Corp." (*See*, Exhibit 3, Affidavit of Jaime Sabater, dated May 8, 2009, ¶7).

11.    Cordon registered the copyrights to "El Pito" in 1966 and did the same for "Bang Bang" in 1967. The registration for "Bang Bang" named both Cuba and Sabater as coauthors and stated that the works were first published in 1966. (*See* Exhibits 4 and 5).

12.    Registration for "El Pito" was corrected in 1967 to include both Sabater and Cuba as its co-authors. (*See* Exhibit 6).

13.    On January 26, 1994, Cordon's successor-in-interest, and EMI's predecessor-in-interest, Windswept Pacific Entertainment Co., renewed the copyrights to "El Pito" in the name of authors. (See Exhibit 7).

14.     Raul Bernard, president of LAMCO/ACEMLA testified that any renewal registrations made on January 26, 1994 would have appeared in the Copyright Office's public records, and that there existed "red flags" of prior claims that should have forced LAMCO/ACEMLA to conduct an investigation in the Copyright Office. However, Mr. Bernard did not recall if a search had been done.  (*See* Exhibit 8, Bernard Deposition Transcript, at 146:12-147:23; 198:19-199:3).  Other pertinent and related excerpts of the transcript of Mr. Bernard's deposition testimony are attached hereto as Exhibits 9 and 10.

15.     Mr. Sabater purportedly assigned his rights to several songs, including "El Pito" and "Bang Bang," to LAMCO on April 3, 1997, and LAMCO recorded those purported assignments on April 8, 1997.  (*See* Exhibit 11).

16.     LAMCO purported to register copyrights for these works, naming only Sabater as the author on March 30, 2001.  (*See* Exhibit 12.)

17.     Mr. Sabater acknowledges that he was "aware that the music publisher identified as the copyright owner of both 'I'll Never Go Back to Georgia' and 'Bang Bang' as EMI Music" and that he has "seen EMI listed on BMI royalty statements to me for many years including the years before I left BMI in 1998." (*See* Exhibit 3, *supra*, at ¶ 7).

18.     Mr. Sabater further testifies to having "also received royalty statements and payments from EMI Music for many years.  These statements and payments include monies for 'Bang Bang' and "El Pito".  On statements from both BMI and EMI I have seen that Joe Cuba has been identified as co-writer with me on both 'I'll Never Go Back to Georgia' and 'Bang Bang.'" (*Id*, at ¶¶ 8, 9).

19.     BMI has listed EMI as a publisher and Cuba and Sabater as co-authors of "El Pito" aka NEVER GO BACK in its public performance royalty statements. (*See* Exhibit 13).

20.     Furthermore, EMI royalty statements sent to Sabater for nearly the past ten years list Cuba and Sabater as co-authors of "Bang Bang" and "El Pito". (*See* Exhibits 14 through 24).

21.     Mr. Bernard testified that when he signed the purported assignment with Jimmy Sabater, he knew of Sabater's involvement with BMI and his assignments regarding "El Pito". Mr. Bernard further stated and that Sabater may have been paid publication royalties for "El Pito" starting in the 1960s. (*See* Exhibit 8, at 132:11-21; 191:24-192:3).

22.     A search by ACEMlA/LAMCO of BMI's music catalogue would have revealed that EMI was the publisher of "El Pito" with Sabater and Cuba as co-authors of the song.  (*See* Exhibit 25).

3

23. Mr. Bernard acknowledged that Cuba had claimed co-authorship of "El Pito" and may have been collecting royalties "for many years." (*See* Exhibit 8, at 154:12-155:3).

24. At the time of Sabater's purported assignment to LAMCO of the copyrights to "El Pito", LAMCO was on notice of Cordon's (EMI's predecessor in interest) earlier ownership claims to those songs, and LAMCO did not take the purported assignment in good faith.

25. Mr. Joe Cuba passed away on February 15, 2009 (*See* Exhibit 26, New York Times web page print out).

26. Banco Popular made a monetary consignment for the double claim that included the song "El Pito". (See Docket #25).

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, on this 27 day of August, 2009.

I HEREBY CERTIFY: that on this date, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to all parties in the case; Prado, Nunez & Assoc.'s, Edwin Prado-Galarza; 416 Ponce De Leon Ave, San Juan, P.R. 00918; Roberto Suiero Del-Valle, Isreal Melendez Torres , P.O. Box 270331, San Juan, P.R. 00927-0331; , Jean Paul Vissepo Garriga, Ave Roosevelt, Esq. Antolin, No. 401, San Juan, Puerto Rico 00918; Francisco Ramos Martinez, 403 Del Parque Street, San Juan, P.R. 00912; Attorney PHV Barry Slotnick, Esq., Attorney Katarina Syipex-Rubio, Attorney Samuel Pamias-Portalatin; Attorney Edgardo Colon Arraras; and to Josè L. Barreto Rampolla, PO Box 9023880, San Juan, Puerto Rico 00902-3880.

S/FREDDIE O. TORRES GOMEZ  
USDC No. 226409  
Tulipán 170  
Urb. San Francisco  
San Juan, Puerto Rico00927-6221  
Tel. 753-4712 Fax  
Ftorres151@gmail.com