IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BANCO POPULAR DE PUERTO RICO, INC.**<br>**Plaintiffs**<br>VS.<br><br>**LATIN AMERICAN MUSIC CO., INC., ET ALS**<br>**Defendants** | CIVIL NO. 01-1142 (PG) |

### BPPR STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, BPPR, herein represented by the undersigned attorney, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules of this Honorable Court, respectfully submit the following Statement of Uncontested Material Facts in support of its Motion for Summary Judgment filed on this same date:

1) LAMCO was incorporated in the State of New York in the 1970's. (**Exhibit 1**, Raul Bernard Deposition p. 6, line 18)

2) Raul Bernard owns a 100% stock ownership interest in LAMCO. (**Exhibit 1**, Raul Bernard Deposition p. 6, line 25, **Exhibit 2**, Raul Bernard Deposition p. 7, lines 11-12)

3) In the 1970's LAMCO was a publisher that also acted as a performing rights society doing business as ACEMLA. (**Exhibit 3**, Raul Bernard Deposition p. 8, lines 2-12)

4) ACEMLA was incorporated many years later in the 1990's. (**Exhibit 3**, Raul Bernard Deposition p.8, lines 23-25, **Exhibit 4**, Raul Bernard Deposition p. 9, line 1)

5) Raul Bernard has been LAMCO's president since it was incorporated. (**Exhibit 4**, Raul Bernard Deposition p. 9, lines 5-8)

6) Raul Bernard has sole decision-making power within LAMCO to issue licenses. (**Exhibit 5**, Raul Bernard Deposition p. 10, lines 13-18)

7) Raul Bernard owns 100% equity position in ACEMLA. (**Exhibit 6**, Raul Bernard Deposition p. 11, lines 8-12)

8) Raul Bernard has been ACEMLA's president since it was incorporated. (**Exhibit 6**, Raul Bernard Deposition p. 11, lines 13-18)

9) Raul Bernard has sole decision making power within ACEMLA to issue licenses. (**Exhibit 6**, Raul Bernard Deposition p. 11, lines 19-21)

10) On September 2, 1998, Attorney Eugenio C. Romero on behalf of LAMCO and ACEMLA issued a letter to BPPR agreeing to issue licenses and settle all its claims regarding the BPPR Specials between 1993 and1998. (**Exhibit 7**, Eugenio Romero letter)

11) The terms and conditions contained in the September 2, 1998 letter were mandated by Raul Bernard. (**Exhibit 8**, Raul Bernard Deposition p. 21, lines 8-22)

12) Publishing companies and authors, can negotiate on their own public performances under particular songs that they control. (**Exhibit 9**, Raul Bernard Deposition p.19, lines 22-25)

13) ACEMLA is a performance rights society that has made indications that it is also a publishing company. (**Exhibit 10**, Richie Viera deposition p. 169, lines 12-16)

14) ACEMLA did not offer BPPR the opportunity of licensing just the six songs publicly performed by BPPR between 1993 and 1998. (**Exhibit 11**, Raul Bernard Deposition p.20, lines 15-20)

15) If BPPR wanted to license any song from the catalog of ACEMLA for public performance, ACEMLA had to issue a blanket license. (**Exhibit 12**, Raul Bernard Deposition, p. 22, lines 4-8)

16) Regardless of the fact that BPPR wanted only six songs, they had to license the whole catalog. (**Exhibit 12**, Raul Bernard Deposition, p. 22, lines 9-12.)

17) ACEMLA issued a performance license for BPPR in 1999. (**Exhibit 13**, Performance License Agreement, **Exhibit 14**, Raul Bernard Deposition, p. 27, line 17-19).

18) The term of the performance agreement was from January 1999 to December 2000. (**Exhibit 13**, Performance License Agreement, **Exhibit 14**, Raul Bernard Deposition, p. 27, lines 7-9)

19) The public performance of the songs contained in BPPR's 1999 Special "Con la Musica por Dentro" that belong to ACEMLA is covered by said license. (**Exhibit 15**, Raul Bernard Deposition p. 29, lines 3-8)

20) ACEMLA does not have evidence of any public performance of BPPR of any ACEMLA song past the year 2000. (**Exhibit 16**, Raul Bernard Deposition p. 30, lines 14-17).

21) Prior to it's publication, BPPR, through Mr. Richie Viera, submitted to LAMCO/ACEMLA, a sample of the songs contained in the BPPR 1999 Special "Con la Musica Por Dentro". (**Exhibit 17**, Raul Bernard Deposition p. 32, lines 1-7)

22) Raul Bernard listened to the medleys that contained the compositions that allegedly were controlled by LAMCO in the Hija del Caribe offices and he approved it before the the BPPR 1999 Special "Con la Musica Por Dentro" was manufactured. (**Exhibit 18**, p. 164, lines 16-24)

23) Aside from the licenses, LAMCO/ACEMLA did not make any claim to BPPR with respect to the way the songs were recorded. (**Exhibit 19**, Raul Bernard Deposition p. 34, lines 8-12).

24) LAMCO issued an Audio Visual-Videogram Mechanical license containing all the songs claimed by LAMCO contained in the BPPR 1999 Christmas Special "Con la Musica por Dentro". (**Exhibit 20**, Audio Visual-Videogram Mechanical license, **Exhibit 19**, Raul Bernard Deposition p. 34, lines 21-25, **Exhibit 21**, Raul Bernard deposition p. 35, 1-4, 23-24)

25) When a license is issued for a song to be re-recorded, there are adaptations and arrangements that are made different from what was originally recorded. (**Exhibit 22**, Raul Bernard Deposition p. 36, lines 1-4.)

26) The licensee has the prerogative to do simple arrangements or adaptations different from the original song. (**Exhibit 22**, Raul Bernard Deposition p. 36, lines 6-9)

27) LAMCO also issued a Commercial Synchronization License to BPPR. (**Exhibit 23**, Synchronization license, **Exhibit 24**, Raul Bernard Deposition p. 37, lines 5-7.)

28) Said license also provides the licensee to adapt and arrange the compositions, and to re-record the compositions. (**Exhibit 24**, Raul Bernard Deposition p. 37, lines 19-22)

29) LAMCO issued mechanical licenses for the songs that it claimed that were contained in the BPPR 1999 Christmas Special "Con la Musica por Dentro". (**Exhibit 25**, Mechanical Licenses, **Exhibit 26**, Raul Bernard Deposition p. 40, line 17-22).

30) LAMCO issued synchronization, mechanical and video mechanical licenses for the BPPR 1999 Christmas Special "Con la Musica por Dentro". (**Exhibit 27**, Richie Viera deposition, p. 85, lines 20-25, **Exhibit 28**, Richie Viera deposition, p. 86, lines 1-17.)

31) On February 22, 2000, Raul Bernard sent a letter to Lourdes Perez of BPPR regarding the BPPR 1999 Christmas Special "Con la Musica por Dentro". (**Exhibit 29**, Letter from Bernard to Lourdes Perez, **Exhibit 30**, Raul Bernard Deposition p. 44, lines 7-15).

32) In the 2/22/2000 letter, LAMCO/ACEMLA did not make any claim with respect to any controversy other than the royalty payment. (**Exhibit 29**, Letter from Bernard to Lourdes Perez, **Exhibit 31**, Raul Bernard Deposition p. Page 45, lines 13-17).

33) In the 2/22/2000, LAMCO/ACEMLA refers to a binding legal contract regarding the synchronization, mechanical and videomechanical prices. (**Exhibit 29**, Letter from Bernard to Lourdes Perez).

34) On March, 2000, LAMCO/ACEMLA sent another letter , this time written to Richie Viera, and once again did not make any claim regarding the way the songs in the BPPR 1999 Christmas Special "Con la Musica por Dentro" were arranged,

recorded and/or adapted. (**Exhibit 32**, Letter from Bernard to Richie Viera, **Exhibit 33**, Raul Bernard Deposition p. 53, lines 19-25).

35) On March 16, 2000, LAMCO/ACEMLA sent the invoices to BPPR regarding the licenses issued for the BPPR 1999 Christmas Special "Con la Musica por Dentro". (**Exhibit 34**, Invoices, **Exhibit 35**, Raul Bernard Deposition p. 77, lines 12-14).

36) In all the correspondence issued by LAMCO/ACEMLA between 2/22/200 and 4/26/2000 to BPPR, they never warned BPPR that if they did not sign the licenses, there wouldn't be a contract. (**Exhibit 29**, Letter from Bernard to Lourdes Perez, **Exhibit 32**, Letter from Bernard to Richie Viera, **Exhibit 36**, Raul Bernard Deposition p. 58, lines 6-23.)

37) The first claim of LAMCO/ACEMLA regarding moral rights violations were when they filed the lawsuit. (**Exhibit 37**, Raul Bernard Deposition p. 62, lines 24-25, **Exhibit 38**, Raul Bernard Deposition p. 63, lines 1-2.)

38) On March 22nd, 1999, LAMCO/ACEMLA submitted a Copyright registration, Pau2-357-741, in which the title of the work is "No debimos conocernos, 22 títulos más de Johnny Rodriguez". (**Exhibit 39**, Copyright certificate Pau2-357-741, **Exhibit 40**, Raul Bernard deposition, p. 102, lines 10-13).

39) In Box 3 (a) of the Copyright registration it states that the work was completed on 1970. However, that date refers to the creation of any particular work that is included within the registration (**Exhibit 39**, Copyright certificate Pau2-357-741, **Exhibit 41**, Raul Bernard deposition, p. 104, lines 1-4).

40) According to LAMCO/ACEMLA the date of publication of any pre-1978 song is 1976. (**Exhibit 42**, Raul Bernard deposition, p. 106, lines 14-15)

41) The song "El Pito" was performed on the radio around or before 1966. (**Exhibit 43**, Raul Bernard deposition, p. 134, lines 1-5).

42) In the Certificate of Registration of "I'll Never get back to Georgia", LAMCO/ACEMLA stated that it was originally published January 2nd, 1979. **Exhibit 44**, Certificate of Registration PA 1-049-452, **Exhibit 45**, Raul Bernard deposition, p. 137, lines 23-25, **Exhibit 46**, Raul Bernard deposition, p. 138, lines 1-2).

43) It is LAMCO/ACEMLA's practice to claim in their registration certificates that any date after January 1, 1978, is the first publication date for all recordings that were on the market pre-1978. (**Exhibit 47**, 2nd Raul Bernard deposition, p. 19, lines 20-25, **Exhibit 48**, 2nd Raul Bernard deposition, p. 31, lines 15-20.)

44) It was LAMCO/ACEMLA's practice, to simultaneously execute the assignments to LAMCO and the public performance rights to ACEMLA. (**Exhibit 49**, 2nd Raul Bernard deposition, p. 25, lines 1-10)

45) LAMCO/ACEMLA desisted of its claims regarding Felices Dias in the present case. **Exhibit 50**, 2nd Raul Bernard deposition, p. 97, lines 18-22.)

46) Cortijo Bailable was a published in a vinyl record pre 1978. **Exhibit 51**, 2nd Raul Bernard deposition, p. 103, lines 19-23).

47) LAMCO claims that on any previous available recordings, the first date of publication is from 1976 thereon. (**Exhibit 52**, 2nd Raul Bernard deposition, p. 105, lines 3-6)

48) In the Registration certificate LAMCO claimed that the year of publication of "Cortijo Bailable" was February 10, 1976. (**Exhibit 53**, Certificate of Registration PA 1-046-341) **Exhibit 51**, 2nd Raul Bernard deposition, p. 103, lines 1-8)

49) LAMCO/ACEMLA claims that "Fichas Negras" was unpublished work in 1999. (**Exhibit 54**, 2nd Raul Bernard deposition, p. 120, lines 21-24.)

50) LAMCO/ACEMLA collected royalties for the song Genesis from BPPR representing that they own 100% of the song. (**Exhibit 55**, 2nd Raul Bernard deposition, p. 127, line 25, **Exhibit 56**, 2nd Raul Bernard deposition, p. 128, lines 1-3, 8-10.)

51) Madrigal, Mi Dolor es Mío and Mi Jaragual were distributed in a phonograph records prior to 1978. (**Exhibit 57**, 2nd Raul Bernard deposition, p. 192, lines 17-21, **Exhibit 58**, 2nd Raul Bernard deposition, p. 196, lines 21-25, **Exhibit 59**, 2nd Raul Bernard deposition, p. Page 197, lines 1-5, 17-19.)

52) In their Certificate of Registration for "Madrigal, Mi Dolor es Mío and Mi Jaragual", LAMCO/ACEMLA claims the songs were created, completed and published in 1978. (**Exhibit 60**, Certificate of Registration PA 814-445).

53) Tiempo Perdido/ Mi Trsite Problema was first distributed in Vinyl records pre-1978. (**Exhibit 61**, 2nd Raul Bernard deposition, p. 221, lines 13-18, **Exhibit 62**, 2nd Raul Bernard deposition, p. 225, lines 3-9.)

54) The date of publication and year of completion in the Certificate of Registration sent by LAMCO/ACEMLA to the Copyright Office is January 1st, 1989. (**Exhibit 61**, 2nd Raul Bernard deposition, p. Page 221, lines 20-25, **Exhibit 63**, 2nd Raul Bernard deposition, p. 222, lines 1-5, **Exhibit 64**, Certificate of Registration PA 911-581)

55) There is a second certificate of registration which states that those date were 1976. (**Exhibit 65,** Cetificate of Registration PA 1-046-341)

56) Un Jibaro Termina'o was released to the public in phonograph records prior to 1978. (**Exhibit 66**, 2nd Raul Bernard deposition, p. 233, lines13-16).

57) In their Certificate of Registration for "Un Jibaro Terminao", LAMCO/ACEMLA claim the song was created, completed and published in 1978. (**Exhibit 67**, Copyright Certificate PA 855-388, **Exhibit 68**, 2nd Raul Bernard deposition, p. 234, lines 7-11).

58) Venegas had knowledge that BPPR publicly performed "Genesis" when it was broadcast in 1993. (**Exhibit 69**, Venegas deposition p. 44, lines 18-24).

59) Prior to Guillermo Venegas Lloveras, Inc. claim in June 13, 2000, there was no way that BPPR could know that PEER or LAMCO wasn't the rightful owner. (**Exhibit 70**, Venegas deposition p. 62, lines 6-13).

60) The rates charged by LAMCO/ACEMLA for synchronization licenses were ten to twelve times higher than the other publishers' rate. (**Exhibit 71**, Richie Viera deposition p. 160, lines 2-9, **Exhibit 72**, Richie Viera deposition p. 162 lines 4-13.)

61) LAMCO/ACEMLA would also charge higher fees for blanket licenses of public performance even though their catalog was smaller than the other public performance societies. (**Exhibit 73**, Richie Viera deposition p. 161, lines 4-6, 12-15).

62) In his negotiations on behalf of the Bank, songs included in medleys were usually negotiated dividing the statutory rate between the numbers of songs contained in the medley. (**Exhibit 72**, Richie Viera deposition p. 162, lines 14-29, **Exhibit 74**, Richie Viera deposition p.163, lines 1-3).

63) The only publisher that wasn't willing to lower the statutory rate dividing between the numbers of songs contained in the medley was LAMCO. (**Exhibit 74**, Richie Viera deposition p.163, lines 4-7).

64) As of today, ASCAP is the public performance organization which administers and controls the public performance of "Genesis" (**Exhibit 75**, Venegas deposition, p. 50, lines 11-25, **Exhibit 76**, Venegas deposition p. 51, 1-8 )

65) These records were published without the statutory copyright notice. (**Exhibit 77**, Musica de Don Felo, **Exhibit 78**, Quique y Tomas le Cantan a Don Felo, **Exhibit 79**, Homenaje al Decano de los cuatristas)

66) There were double claims regarding the songs claimed by LAMCO/ACEMLA. (**Exhibit 80**, EMI letter to BBBP March 27, 2000)

67) Peer administered and controlled "Genesis" in 1993.(**Exhibit 81**, Venegas Deposition p. 45 lines 3-10)

68) Peer included the song "Genesis" in ASCAP's catalog. (**Exhibit 82**, Venegas Deposition p. 50 lines 17-20)

69) The song "Genesis" is still included in ASCAP's catalog. (**Exhibit 83**, Venegas Deposition p. 51 lines 4-8)

70) GVLI has not taken any legal actions against ASCAP in order to drop the song from there catalog. (**Exhibit 84**, Venegas Deposition p. 69 lines 6-17)

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court which will send notification to all counsels of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, on this 27th day of August, 2009.

                                      **S/Francisco Ramos Martínez**
                                      U.S.D.C. NO. 224711
                                  Del Parque Street 403, 8th FL.
                                            Santurce PR  00907
                                          Tel. (787) 725-5598
                                        Fax. (787) 977-1410