UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO
----------------------------------------------------------X
BANCO POPULAR DE PUERTO RICO, :
INC.,
:
       Plaintiff,
:
       -against-                 :   Civil No. 01-1142 (GAG)
:
LATIN AMERICAN MUSIC CO., INC. et al.,
:
       Defendants.

LATIN AMERICAN MUSIC CO., INC. et al.,  X:

       Plaintiffs, :

       -against- :   Civil No. 01-1461 (GAG)

BANCO POPULAR DE PUERTO RICO, :
INC., et al.,
:
       Defendants.
----------------------------------------------------------X

**PEER PARTIES' MEMORANDUM OF LAW IN OPPOSITION TO
LAMCO/ACEMLA'S MOTION FOR SUMMARY JUDGMENT ON OWNERSHIP OF
THE DISPUTED SONGS**

Defendants, Peer International Corporation, Peer International Corporation of Puerto Rico, Peer Music Ltd., Broadcast Music, Inc., EMI Park Groove, Inc., Sonido, Inc., and EMI Catalogue Partnership (collectively, the "Peer Parties"), by their attorneys Loeb & Loeb LLP and Adsuar Muñiz Goyco Seda & Perez Ochoa, PSC, respectfully submit this Memorandum of Law in opposition to co-defendants LAMCO and ACEMLA's (together "LAMCO/ACEMLA") motion for summary judgment with respect to ownership of the disputed works.

## BACKGROUND

The Peer Parties respectfully refer the Court to their Motion For Summary Judgment And Memorandum Of Law As To The Remaining Disputed Songs ("Peer Parties' Summary

1

Judgment Motion") (Dkt. No. 328 at 2-4) and to their Statement of Material Facts (Dkt. No. 327) for a recitation of the relevant facts.

## THE PEER PARTIES, NOT LAMCO/ACEMLA, OWN THE COPYRIGHTS TO THE DISPUTED WORKS

As demonstrated below, the Peer Parties, not LAMCO/ACEMLA, own the copyrights to the disputed songs "Bang Bang", "El Pito" (a.k.a. "I'll Never Go Back to Georgia"), "Dame La Mano Paloma", "Canto A Borinquen", "Las Caras Lindas", and "Periodico de Ayer." LAMCO/ACEMLA's motion for summary judgment with respect to these works should therefore be denied.

### A. "I'll Never Go Back to Georgia" (a.k.a. "El Pito") and "Bang Bang"

LAMCO/ACEMLA claim these works through a purported assignment from one of the two co-authors, Jimmy Sabater, in April 1997. (Dkt. No. 332 at *11.[1]) However, LAMCO/ACEMLA's claims are barred by the Copyright Act's recording statute because they were on constructive notice of prior transfers of these works at the time of the 1997 assignment, and by the Copyright Act's statute of limitation because they knew about competing ownership claims for more than three years before asserting their claims in this litigation.

#### 1. Prior Transfers by Co-Authors Jimmy Sabater and Joe Cuba Prevail Over the Purported Assignment to LAMCO/ACEMLA Thirty Years Later

EMI's predecessors acquired rights to "El Pito" and "Bang Bang" from both co-authors, Jimmy Sabater and Joe Cuba, and registered the copyrights in 1966 and 1967 – over thirty years before the purported assignment to LAMCO/ACEMLA. (Dkt. No. 327, Exs 15, 16, 19, 20.) They also registered the renewal copyright terms in 1994. (*Id.*, Exs. 21-22.) As a result, under

---

[1] LAMCO/ACEMLA did not number the pages in their brief. References to that document are to consecutively numbered pages starting with the first page.

2

the Copyright Act's recording statute, EMI's prior recorded claims take priority over the later assignment to LAMCO/ACEMLA, who did not take the assignment in good faith or without notice. *See* 15 U.S.C. § 205(d) ("As between two conflicting transfers, the one executed first prevails if it is recorded . . . any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer.").

LAMCO/ACEMLA attempt to avoid the effect of Section 205(d) of the Copyright Act by claiming that one of the recorded assignments in the chain of tile from Cordon to EMI (a 1986 assignment from Big Seven Music Corp. to ABZ Music Corp.) did not specifically mention "Bang Bang" and "El Pito" (Dkt. No. 332 at *12), and that these songs are therefore still owned by Big Seven, rather than EMI. In doing so, LAMCO/ACEMLA essentially recycle their argument that constructive notice of prior transfers turns on the identity of the current copyright owner, rather than the fact of prior transfers. That argument has already been *rejected* by the First Circuit. In *Latin Am. Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church* ("*LAMCO*"), 499 F.3d 32 (1st Cir. 2007), *cert. denied*, -U.S.-, 128 S. Ct. 1232 (2008), LAMCO argued for a rule "that would base constructive notice for purposes of § 205(d) on recording the transfer to the current copyright owner, focusing on identification of the current owner as opposed to notice of prior transfers." *LAMCO*, 499 F.3d at 41. The First Circuit rejected that argument and held that the "registration certification for [the disputed song] provided notice that prior transactions existed relating to the copyright for [the disputed song] **regardless of what entity currently might claim those rights**." *Id.* (emphasis added). Thus, because the 1966 and 1967 registration certificates put LAMCO/ACEMLA on constructive

notice of earlier transfers of the copyrights to "El Pito" and "Bang Bang" when they took the purported assignment from Sabater in 1997, LAMCO/ACEMLA's copyright ownership claims fail under § 205(d), regardless of who the current copyright owner is.

In any event, LAMCO/ACEMLA's argument that the 1986 assignment from Big Seven Music Corp. to ABZ Music Corp. did not include "Bang Bang" and "El Pito" is simply incorrect. The assignment notes that Big Seven had merged into ABZ, and provides that "*all* of the copyrights and exclusive rights therein, throughout the world, to the full extent owned or otherwise controlled by the undersigned [Big Seven], are hereby transferred as a result of such merger to ABZ MUSIC CORP." (*See* Exhibit A to the Peer Parties' Opposing Statement of Material Facts ("OSMF") submitted herewith) (emphasis added). And the list of songs attached to the recorded assignment includes "ANY AND ALL ADDITIONAL COPYRIGHTS COMPRISING THE CATALOGUE." (*Id.* at 6.)[2]  Hence, LAMCO/ACEMLA's claim that "El Pito" and "Bang Bang" were not part of the assignment from Big Seven to ABZ is both legally irrelevant and factually incorrect.

### 2. LAMCO/ACEMLA's Copyright Ownership Claims Are Barred by the Copyright Act's Three-Year Statute of Limitations

Assuming *arguendo* that LAMCO/ACEMLA's claims are not trumped by the earlier recorded transfers to EMI's predecessor, Cordon Music, LAMCO/ACEMLA's copyright ownership claims are nevertheless barred by the Copyright Act's statute of limitations.  *See* 17

---

[2] LAMCO/ACEMLA also cite the September 16, 1988 ABZ Music Corp to Windswept Pacific assignment. (Dkt. 332 at *12.) But that assignment, which was recorded in the Copyright Office at V2367 P001-288, specifically includes "El Pito" and "Bang Bang" in the schedule of transferred songs. (OSMF ¶ 37, Ex. B at 58, 271.)

U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.").[3]

"[A] claim for declaratory judgment of [copyright] ownership accrues when the plaintiff 'knew of the alleged grounds for the [ownership] claim.'" *Santa-Rosa v. Combo Records*, 471 F.3d 224, 227-28 (1st Cir. 2006) (first alteration supplied) (quoting *Margo v. Weiss*, 213 F.3d 55, 60-61 (2d Cir. 2000) and citing *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (copyright ownership claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised")).

LAMCO/ACEMLA argue that Jimmy Sabater wrote "Bang Bang" and "El Pito" by himself and not with Joe Cuba (who executed the 1966 assignment to EMI's predecessor, Cordon Music), and that Sabater never signed any contracts with EMI or its predecessors. (Dkt. No. 332 at *11-12.) However, Sabater and LAMCO/ACEMLA had ample notice of Cuba's co-authorship claims and EMI's ownership claims for more than three years before they asserted their claims in this action. First, Cordon Music's 1966 and 1967 copyright registrations, and Windswept Music's 1994 renewal registrations, all stated that Cuba co-authored the songs with Sabater. These documents, which were publicly recorded with the Copyright Office, put Sabater and LAMCO/ACEMLA on notice of Cuba's co-authorship claim and of EMI's predecessor's ownership claim. *See* 17 U.S.C. 205(c) ("Recordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document[.]"); *Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 66 (1st Cir. 1997) ("[a] copyright registration certificate issued by and filed with the Copyright Office [] serves to put the

---

[3] "[W]here co-ownership results from purported statutory co-authorship, the question of co-ownership is governed by the Copyright Act." *Cambridge Literary Props., Ltd. v. W. Goebel*

world on constructive notice as to the ownership of the copyright and of the facts stated in the registration certificate.") (quoted in *LAMCO*, 499 F.3d 32, 40 (1st Cir. 2007)).

Second, BMI public performance royalty statements, as well as BMI's publicly available repertoire records, list EMI as publisher and Sabater <u>and Cuba</u> as co-authors of "Bang Bang" and "El Pito" (Dkt. No. 327, Exs. 26, 28-29), and EMI royalty statements sent to Sabater over the past ten years list Cuba as a co-authors of these songs (*Id.*, Exs. 27A-L.)

Third, both Sabater and LAMCO/ACEMLA's president, Raul Bernard, have acknowledged Cuba's co-authorship claim and EMI's predecessor's ownership claims. Sabater recently testified that he was "aware that the music publisher identified as the copyright owner of both 'I'll Never Go Back to Georgia' and 'Bang Bang' is EMI Music," that he has "seen EMI listed on BMI royalty statements to me for many years including the years before I left BMI in 1998[,]" (Dkt. No. 327, Ex. 17 at ¶ 7), and that "[o]n statements from both BMI and EMI I have seen that Joe Cuba has been identified as a co-writer with me on both 'I'll Never Go Back to Georgia' and 'Bang Bang.' I have been aware of Mr. Cuba's credit as a co-writer and have been aware that he has been paid royalties in connection with both musical compositions by both BMI and EMI." (*Id.* ¶¶ 8, 9.) And even Sabater's 2001 affidavit, relied upon by LAMCO/ACEMLA, acknowledges that Cuba "has apparently been collecting royalties and representing to third parties that he [] has co-authored many of my works." (Dkt. No. 337, Ex. 21 ¶ 11.)

Bernard expressly admitted that he was aware of Cuba's co-authorship claims to "Bang Bang" at the time of LAMCO/ACEMLA's 1997 agreement with Sabater (Dkt. No. 327, Ex. 23B at 57:17-20), and he acknowledged that both Cordon's 1966 registrations and Windswept's 1994 renewal registrations filed with the Copyright Office named Sabater and Cuba as co-authors (*id.*

---

*Porzellanfabrik G.m.b.H. & Co.*, 510 F.3d 77, 81 (1st Cir. 2007), *cert. denied*, -U.S.-, 129 S. Ct.

at 37:17-38:24.)  Bernard also exchanged correspondence with Windswept in 1997 referencing Cuba's co-authorship claim to "El Pito" and "Bang Bang" (*Id.*, Ex. 23B-C at 61:25-64:19, Ex. 39), and he even acknowledged Windswept Music's claims to "El Pito" and "Bang Bang" in correspondence with Windswept in 1997 (*Id.*, Ex. 39.)

The indisputable evidence therefore demonstrates that Sabater and LAMCO/ACEMLA knew for more than three years before they asserted their claims in this action that EMI or its predecessors claimed ownership of "El Pito" and "Bang Bang," and that Cuba was acknowledged as a co-author of those songs.  Sabater and LAMCO/ACEMLA are therefore barred under the Copyright Act's statute of limitations, 17 U.S.C. § 507(b), from disputing that Sabater composed "El Pito" and "Bang Bang" along with Joe Cuba, or that EMI owns the copyrights to these works.

It should also be noted that Sabater has recanted his 2001 affidavit, replied upon by LAMCO/ACEMLA, stating "I did not read it carefully and signed it only because it was at the urging of Raul Bernard.  To the extent that the 2001 affidavit differs in any way from the information I am providing in this affidavit, the current information is accurate."  (Dkt. No. 327, Ex. 17 at ¶ 11.)  Sabater now "confirm[s] that in 1966, I signed two popular Songwriters Contracts with Cordon Music Corp. assigning my copyrights in 'Bang Bang' and 'El Pito (I'll Never Go Back to Georgia') to Cordon Music Corp." (Dkt. No. 327, Ex. 17 ¶ 7), putting to rest any doubts that EMI's predecessor validly acquired the copyrights to those works.  As a result, LAMCO/ACEMLA's motion for summary judgment with respect to "Bang Bang" and "El Pito" should be denied.

---

58 (2008) (citing 3 *Nimmer on Copyright* § 12.01[A][1][b] (2007)).

**B.   "Dame La Mano Paloma"**

LAMCO/ACEMLA claim this song through a purported assignment from the composer, Luis Morales Ramos, in 1997. (Dkt. No. 332 at *12.) However, over thirty years earlier, in 1965, Morales Ramos entered an exclusive songwriters agreement with Peer, which transferred to Peer the original and renewal copyright terms to all works he created between April 1, 1965 and June 30, 1967. (Dkt. No. 327, Ex. 8.) A letter dated January 1, 1966 from Morales Ramos to Angel Fonfrias, a Peer employee, identifies "Dame La Mano Paloma," as one of the works written during that time period. (*Id.*, Ex. 9.) Peer then registered the copyright on May 25, 1972. (*Id.*, Ex. 10.) Peer also recorded an assignment of the renewal copyright term on January 3, 2000, and registered the renewal term on January 10, 2000 (*id.*, Exs. 11, 12).

Thus, as with "Bang Bang" and "El Pito," under the Copyright Act's recording statute, the Peer Parties' earlier recorded assignment and copyright registration prevails over the purported assignment to LAMCO/ACEMLA thirty years later. *See* 17 U.S.C. § 205(d) ("As between two conflicting transfers, the one executed first prevails if it is recorded . . . any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer").[4]

LAMCO/ACEMLA attempt to avoid application of the Copyright Act's recording statute by arguing that the 1965 songwriters agreement with Peer "lacks specificity" and that the January 1, 1966 letter from the author to the Peer employee does not constitute an assignment under 17 U.S.C. § 304. (Dkt. No. 332 at *12-13.)

---

[4] The fact that Peer registered the renewal term in 2000, after the purported 1997 assignment to LAMCO/ACEMLA, is irrelevant, because Peer had already acquired the original *and renewal*

With respect to the 1965 songwriters agreement, section 204(a) of the Copyright Act, which governs transfers of copyright, requires only "an instrument of conveyance, or a note or memorandum of the transfer, [] in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a).[5]  Contrary to LAMCO/ACEMLA's contention, there is no requirement that a copyright assignment specifically name the works being transferred.  The courts have therefore upheld copyright transfer agreements that apply to groups of works created during certain time periods.  For example, in *Nat'l Ass'n for Stock Car Auto Racing, Inc. (NASCAR) v. Scharle*, 356 F. Supp. 2d 515, 524 (E.D. Pa. 2005), *aff'd*, 184 Fed. Appx. 270 (3d Cir. 2006) the court held that the copyright to a trophy design was validly transferred by an agreement that "applies to works of art created by the artist as an independent contractor in accordance with its terms.  **That it identifies the trophy design as part of a larger group of works as opposed to specifically mentioning the project by name is irrelevant.**"  *Id.* (emphasis added).  The court noted that "such contracts are commonplace in the art and entertainment industries" *id.*, and cited with approval *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1155 (S.D.N.Y. 1988) as "referencing a written publishing agreement in which [the] singer transferred worldwide copyrights **in and to all works to be composed during the term of the agreement**" *NASCAR*, 356 F. Supp. 2d at 524 (emphasis and alteration added).

---

terms and registered the original copyright term in 1972, putting LAMCO/ACEMLA on constructive notice of prior transfers of "Dame La Mano Paloma."

[5] LAMCO/ACEMLA are apparently confused between the Copyright Act's copyright transfer provision, 17 U.S.C. § 204(a), which does not require that the work be specifically identified, and the recording provision, 17 U.S.C. § 205(c), which does.  *Compare* 17 U.S.C. § 205(c) ("[r]ecordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document, but only if— (1) the document, or material attached to it, *specifically identifies* the work to which it pertains") (emphasis added) *with Id.* § 204(a) (containing no requirement that each work be specifically identified).  Peer's May 25, 1972 copyright registration for "Dame La Mano Paloma" does specifically mention the song (indeed,

Indeed, in *Venegas-Hernandez v. Asociacion de Compositores y Editores de Musica Latinoamericana*, 424 F.3d 50, 56 (1st Cir. 2005), a case cited by LAMCO/ACEMLA, the First Circuit referenced an agreement by which the author "assigned to Peer the copyrights to all compositions he had written in the past **or would write during the term of the agreement**, in exchange for specified royalties." *Id.* (emphasis added).  If the Court were to adopt LAMCO/ACEMLA's argument, it would effectively invalidate those ubiquitous publishing and songwriter agreements, thereby clouding the title to many thousands of musical works.[6]  In sum, LAMCO/ACEMLA's challenge to the 1965 songwriters agreement between Peer and the author should be rejected.

LAMCO/ACEMLA's argument with respect to the January 1, 1996 letter is similarly misguided.  (Dkt. No. 332 at *12.)  The Peer Parties do not rely on that letter as an assignment of copyright, but as evidence that "Dame La Mano Paloma" was composed by the author during the term of his songwriters agreement with Peer.  Because LAMCO/ACEMLA offer no evidence to the contrary, there is no genuine dispute that the song falls within the term of the songwriter agreement, and was validly transferred to Peer.

### C. "Canto A Borinquen"

#### 1. Irma Rodriguez Rivera Was Not Legally Married to the Composer, and Therefore Inherited No Rights to Transfer to LAMCO/ACEMLA

LAMCO/ACEMLA claim to own the copyright to "Canto A Borinquen" through a purported assignment from the composer's alleged widow, Irma Rodriguez Rivera, dated

---

that is the only song it mentions), and therefore put LAMCO/ACEMLA on constructive notice of the author's prior transfer. (Dkt. No. 327, Ex. 10.)

[6] Furthermore, nothing in *Venegas*, 424 F.3d 50 (1st Cir. 2005) – the only case cited by LAMCO/ACEMLA – supports their argument.  In *Venegas*, the First Circuit merely held that oral testimony of an alleged copyright transfer did not meet 17 U.S.C. § 204(a)'s "note or

February 2, 1996. (Dkt. No. 332 at *13.) However, it appears that the putative widow from whom ACEMLA took the assignment was not legally married to the author. On November 16, 1954, years before the purported marriage to Rodriguez Rivera, the author Flor Morales Ramos married Josefina Lopez. (Dkt. No. 327, Ex. 34A at 2.) The marriage to Josefina Lopez did not end in divorce or the death of Ms. Lopez. (*Id.*, Ex. 34A at 3, 4.). As such, Irma Rodriguez was never the "widow" of the author, and any transfer of copyright by her to LAMCO/ACEMLA is a nullity.

### 2. The Alleged Assignment from One of the Composer's Children Could Not, and Did Not, Transfer the Copyright to LAMCO/ACEMLA

Recognizing that Rodriguez Rivera was never legally married to the author, and therefore could not have inherited any rights to his songs, LAMCO/ACEMLA now claim that they acquired "Canto A Borinquen" in 2003 through an assignment from one of the artists' children, Ruth Noemi Morales. (Dkt. No. 332 at *13; Dkt. No. 337, Ex. 23B.) However, "Canto A Borinquen" is not named in the list of transferred works (Dkt. No. 337, Ex 23B), and therefore was not part of that assignment.

In any event, Noemi Morales could not have validly transferred the copyright. Because Noemi Morales was, at most, a co-owner of her father's copyrights along with her siblings, she could not have transferred an exclusive copyright interest to "Canto A Borinquen" without the consent of her siblings. *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 6.11[A] ("[O]ne joint owner does not have the power to transfer the interest of another joint owner without the latter's consent."). Similarly, under Puerto Rico law, until an estate is settled or liquidated, the heirs are co-owners of the estate property and cannot transfer or assign any particular asset without the consent of the other heirs. *See Kogan v. Registrar*, 125 DPR 636

---

memorandum" requirement. *See* 424 F.3d at 60. It said nothing that might require a copyright

11

(1990). Because LAMCO/ACEMLA offer no evidence that Noemi Morales's siblings joined in the purported assignment, or that the "Canto A Borinquen" copyright was adjudicated to Noemi Morales alone when the artist's estate was settled, her assignment to LAMCO/ACEMLA is invalid and LAMCO/ACEMLA's summary judgment motion with respect to this song should be denied.

### 3.   LAMCO/ACEMLA Do Not Qualify as Good Faith Purchasers Without Notice

LAMCO/ACEMLA's claims to "Canto A Borinquen" should also be rejected because they knew or should have known that Morales Ramos had given up control of "Canto A Borinquen" long before the purported transfers from Rodriguez Rivera and Noemi Morales, and therefore do not qualify as a good faith purchasers without notice of prior transfers. *See* 17 U.S.C. § 205(d).

Raul Bernard acknowledged that Morales Ramos was a well known composer at the time LAMCO/ACEMLA signed the agreement with Rodriguez, and documents attached to LAMCO/ACEMLA's registration indicate that "Canto A Borinquen" was distributed by record companies as early as the 1950s or 1960s. (Dkt. No. 327, Ex. 23C at 82:6-83:15, 92:13-25].) Moreover, Bernard admitted that when LAMCO/ACEMLA took the purported assignment from Rodriguez in 1996, he was told that Morales Ramos had an agreement with Peer. (*Id.*, Ex. 23C at 93:17-21.)

### D.   "Las Caras Lindas"

LAMCO/ACEMLA claim ownership of the copyright through a 1995 assignment from the author, "Tite" Curet Alonso. (Dkt. No. 332 at *13.) However, on September 26, 1978, the author entered a Standard Uniform Songwriters Agreement with Fania Publishing Co.

---

transfer document to specifically name each transferred work.

(predecessor in interest to Sonido, Inc.), which transferred the copyright to Fania. (Dkt. No. 327, Ex. 35.)

As discussed above, a later copyright transfer will prevail over a prior transfer *only* if the later transfer was "recorded first . . . and if taken in good faith . . . and without notice of the earlier transfer." 17 U.S.C. § 205(d). In *LAMCO*, this District Court recognized that "[t]he term 'notice' in § 205(d) includes actual notice, inquiry notice, and constructive notice" (Dkt. No. 327, Ex. 3 at 8) (citing 3 *Nimmer on Copyright* § 10.07[A][2] and *Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 54 (D.P.R. 2001)). The court also recognized that "'when [a party] has notice or information to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . he or she is held to have notice.'" (*Id.* at 48) (quoting *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)). In *LAMCO*, the court found that the later transfer to LAMCO did not meet the good faith and without notice requirements where, among other things, "the LAMCO Parties could have (and should have) asked the widow or the children of the author, who clearly knew of the prior transfers." (Dkt. 327, Ex. 3 at 10).

In *Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 48 n.13 (D. P.R. 2001), the District Court held that LAMCO was on constructive notice of a prior transfer, where "[LAMCO] could have (and should have) asked the author, who clearly must know about the agreements they entered into, signed, and apparently received at least some money from." *Cf. Pelfresne v. Village of Williams Bay*, 965 F.2d 538, 540 (7th Cir. 1992) ("whatever fairly puts a person on inquiry with respect to an existing fact is sufficient notice of that fact if the means of knowledge are at hand. If under such circumstances one omits to inquire, he is then chargeable with all the facts which, by proper inquiry, he might have ascertained.")

The circumstances putting LAMCO on notice of the prior transfer to Fania are even stronger here than in *LAMCO*.  Here, as in *Peer Int'l Corp.*, LAMCO's latter assignment was not from the author's widow and or children, but from the song's author, who himself executed the prior transfer to Fania (Sonido's predecessor), and "who clearly must know about the agreements [he] entered into, signed, and apparently received at least some money from."  *Peer Int'l Corp.*, 161 F. Supp. 2d at 48 n.13.  Indeed, although Curet Alonso's affidavit states conclusorily that LAMCO/ACEMLA "are the only organizations with exclusive and non-exclusive copyrights over all of my musical compositions," (Dkt. No. 337, Ex. 25 ¶ 34), Mr. Alonso references several agreements with other music publishers, including the 1978 agreement with Fania in which he transferred "Las Caras Lindas." (*Id.* at ¶ 22.)  Thus, at the time LAMCO/ACEMLA signed the 1995 agreement with Curet Alonso, they clearly had the means to learn of his prior transfers to Fania and therefore do not qualify as good faith purchasers.

Moreover, Raul Bernard has acknowledged that "Las Caras Lindas" was released on records in the early 1970s and that it was already a "great hit" by the time LAMCO registered the song (Dkt. No. 327, Ex. 23D at 161:9-21, 165:11-16, 183:20-23]), which served as additional notice to LAMCO/ACEMLA of the author's prior transfers.  Bernard also admitted that in the mid-1990s, he exchanged correspondence with Sonido regarding their claims to Curet Alonso's songs.  (*id.* at 179:23-180:7].)  Under these circumstances, good faith required LAMCO to act reasonably by inquiring from its assignor about any prior transfers.  *See Quinto v. Legal Times of Wash, Inc.*, 506 F. Supp. 554, 562 (D.D.C. 1981) (holding that "good faith" under another provision of the Copyright Act requires "not only honesty in fact, but reasonableness as well").  Had LAMCO done so, LAMCO would have discovered the earlier copyright transfer to Fania.  Because LAMCO did not, its transfer was not in good faith and the later transfer to LAMCO

cannot prevail under § 205(d). LAMCO/ACEMLA's motion for summary judgment with respect to "Las Caras Lindas" should therefore be denied.

### E. "Periodico de Ayer"

LAMCO/ACEMLA apparently claim rights only with respect to the renewal copyright term, while the Peer Parties claim the original term. The narrow dispute is merely over when the original term ended. Because the registration for this work was obtained in December 9, 1977, the 28-year original term expired at the end of 2005. *See* 17 U.S.C. § 304(a) ("Any copyright, in the first term of which is subsisting on January 1, 1978, shall endure for 28 years from the date it was originally secured."); *id.* § 305 ("All terms of copyright provided by sections 302 through 304 run to the end of the calendar year in which they would otherwise expire.").

Indeed, the Special Master's report in *Latin Am. Music Co. v. The Archdiocese of San Juan*, No. Civ. 96-2312, specifically noted that the original copyright term for "Periodico de Ayer" ran through 2005 (Dkt. No. 327, Ex. 7D at 271) and this Court has recognized that: "The Special Master's Report also found that the LAMCO parties did not own the original copyright term to 'Periodico de Ayer,' **which would expire at the end of 2005**. . . . Because the First Circuit issued a valid and binding final judgment as to the aforementioned issues, [the First Circuit's decision] has preclusive effect in this case." (Dkt. No. 219, Oct. 14, 2008 Opinion and Order at 5) (emphasis added).

There is therefore no dispute that the Peer Parties own the original copyright term, and that it ran through the end of 2005.

### CONCLUSION

For all of the above reasons, the Peer Parties respectfully ask the Court to deny LAMCO/ACEMLA's motion for summary judgment with respect to the disputed songs.

Dated: New York, New York
September 9, 2009

          Respectfully submitted,

          LOEB & LOEB LLP

          By: _____
              Barry I. Slotnick (*admitted pro hac vice*)
          345 Park Avenue
          New York, New York 10154-1895
          Tel: (212) 407-4000
          Fax: (212) 407-4990

San Juan, Puerto Rico, September 9, 2009

          ADSUR MUÑIZ GOYCO SEDA & PEREZ OCHOA, PSC

          By: /KATARINA STIPEC
              Katarina Stipec (206611)
          P.O. Box 70294
          San Juan, Puerto Rico 00936-8294
          Tel: (787) 756-9000
          Fax: (787) 756-9010

          *Attorneys for Peer International Corporation, Peer International Corporation of Puerto Rico, Peer Music Ltd., Broadcast Music, Inc., EMI Park Groove, Inc., Sonido, Inc. and EMI Catalogue Partnership*

CERTIFICATE OF SERVICE

     CERTIFICATE OF SERVICE: I hereby certify that the forgoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will in turn send notification of such filing to all counsel of record.

S/KATARINA STIPEC