IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BANCO POPULAR DE PUERTO RICO, INC.**<br>Plaintiffs<br>VS.<br><br>**LATIN AMERICAN MUSIC CO., INC., ET ALS**<br>Defendants | CIVIL NO. 01-1142 (PG) |

## STATEMENT OF CONTESTED FACTS IN SUPPORT OF MEMORANDUM IN OPPOSITION TO GVLI'S MOTION FRO SUMMARY JUDGMENT

COMES NOW, BPPR, herein represented by the undersigned attorneys and respectfully submit the following Statement of Contested Facts in Support of the Memorandum in Opposition to GVLI's Motion for Summary Judgment pursuant to Local Rule 56 (c);

1-Starting in 1993, Banco Popular has produced an annual Christmas Music Specials which generally is broadcasted in the major television and radio stations throughout Puerto Rico and broadcasted throughout the bank's branches, mainly in Puerto Rico. ( Exhibit 1 [ Banco Popular's Complaint ¶ 18]

**Answer**: Admitted

2- Banco Popular distributes the Christmas Music Specials in phonograph records and videocasstes. (Exhibit 1 [Banco Popular's Complaint ¶19]

**Answer**: Admitted

3- LAMCO / ACEMLA admit these facts (contained in 1 and 2) and add that it believes that most of the Banco Popular branches in the United States also broadcast the Banco Popular Christmas Specials as recorded and manufactured by Banco Popular de Puerto Rico. ( Exhibit 2 LAMCO/ACEMLA Amended Answer to Banco Popular's Complaint [ ¶ 11]

**Answer**: Admitted

4- In or about 1996, Raul Bernard represented to Banco Popular that LAMCO owned or controlled the copyrights to a series of compositions and that ACEMLA had the exclusive right to license public performance to certain musical works that were used in the Banco Popular Christmas Specials. (Exhibit 1 [ Banco Popular's Complaint ¶ 24]

**Answer**: Admitted

5- The 1993 Christmas Special has the title Un Pueblo Que Canta and contains among other the following compositions: Ojos Chinos; Madrigal; Mi Jaragual; Las Caras Lindas, and Genesis. (Exhibit 1 [ Banco Popular's Complaint ¶ 24]

**Answer**: Admitted

6- By August 4, 1997 ACEMLA/LAMCO had already made a claim for $824,099.21 to Banco Popular for copyright infringement which was not recommended for acceptance by the Bank and further discussion of the claim was deferred. Exhibit 3 [August 4 letter from Paulette Lavergne, legal counsel for Banco Popular to counsel for LAMCO and ACEMLA.]

**Answer**: Admitted

7- On September 2, 1998, LAMCO and ACEMLA confirm the terms they would accept and agree to grant licenses and compromise their demands with Banco Popular for a series of musical works including GENESIS. In reference to fees for performance license, it states that the fees are payable to ACEMLA for any work under the ACEMLA Catalog comprised in the productions of "Un Pueblo que Canta"( 1993),"Espiritu de Un Pueblo" (1994) and "Somos un Solo Pueblo" for the years from 1993 and 1998.Exhibit 4 [Certified translation of September 2, 1998 letter and attachments from E. Romero , counsel for LAMCO and ACEMLA to Evelyn Vega, Marketing Director, Banco Popular]

**Answer**: Admitted

8-On November 6, 1998, Banco Popular accepted a Settlement Offer which included a payment of $260,432.10 in public performance fees for six songs including Genesis and ACEMLA's catalogue use in the BPPR Christmas Specials. (Exhibit 1 [ Banco Popular's Complaint ¶ 19) ¶38-39 and Exhibit 5 [November 6, 1998 Letter from Paulette Lavergne to Eugenio Romero, counsel for LAMCO AND ACEMLA ]

**Answer**: Admitted

10- On February 21, 2001, GVLI and the Venegas siblings filed a copyright infringement action against, *inter alia*, LAMCO and ACEMLA and on September 6, 2001 against Peer. *Venegas-Hernandez v. Peer*, 2004 WL 368337.

**Answer**: Admitted

11- On June 26, 2001, GVLI filed a counterclaim against Banco Popular for the amounts of moneys owed from the use of the GENESIS and on that same date a cross-claim was filed against LAMCO and ACEMLA and PEER alleging that they knew or had reason to know they could not license GENESIS to Banco Popular and as such have infringed their rights through unauthorized transactions with the song. Exhibit 5 [ Answer to the Complaint ¶ 4-6.]
**Answer**: Admitted.

12- In *Venegas- Hernandez v. Peer,* the Court held that at the time that BPPR used Genesis in the Christmas Special in 1993, the owners of the song were the Plaintiffs in the case and that any profits from the BPPR license prior to the renewal term belong to the Plaintiffs. Venegas-Hernandez ,2004 WL 3686337 , p. 33.
**Answer**: Admitted.

13- *Venegas-Hernandez v Peer,* the Court stated that the renewal period for GENESIS for Puerto Rico came into effect on January 1998. *Venegas – Hernandez*, 2004 WL 3686337, p.7.
**Answer**: Admitted.

14- In the same case the Court held that without evidence of Banco Popular's direct use of GENESIS the performance license issued by ACEMLA would not be evidence of actual infringement. *Venegas – Hernandez*, 2004 WL 3686337, p.33.
**Answer**: Admitted

15- The Opinion and Order issued by the Court in the instant case on April 24, 2009 held that the issue of the performance license for Genesis and the actual usage of the song was not actually litigated and determined by a valid and final judgment. See Dkt. 327 at p.3.

**Answer**: Admitted

16- In the deposition of Mr. Richie Viera, a consultant to Banco Popular he states in explaining the fees for performance that the 1993 Christmas Special was played in the Banco Popular branches. Exhibit 6 [Deposition of R. Viera p. 135 and 136]

**Answer**: It is admitted that the 1993 Christmas Special was played in the Banco Popular branches. However, no time frame is provided for such performance.

17- Raul Bernard, president of LAMCO and ACEMLA states that if the Christmas Special Un Pueblo Que Canta is played in the branches that would be a performance and that is the reason that Banco Popular would pay a performance fee. Exhibit 7 [deposition of Raul Bernard. P.218].

**Answer**: Admitted. However, no time frame is provided for any such performance.

18 - He also states that the 6 songs mentioned in the September 2, 1998 letter would be the songs that were actionable because he knew more or less that they may have been used by Banco Popular because they appear in each of those videos. Exhibit 7[deposition of Raul Bernard, p. 137-138]

**Answer**: Admitted. However, no time frame is provided for the performance of those videos.

19-Paulette Lavergne, legal counsel to Banco Popular testified in her deposition that she understood that there would not be a possibility that the bank would have paid ACEMLA for the performance of songs that were not mentioned in the September 2, 1998 settlement proposal. At the same time she understood that the performance license referred to the showing in Banco Popular branches of the Christmas Specials. Exhibit 8 [deposition of Paulette Lavergne , May 27, 2009 p.86 – 90 and 105.]

**Answer**: Admitted. However, no time frame is provided for such performances.

**WHEREFORE,** co-defendants very respectfully request this Honorable Court to takes notice of BPPR Statement of Contested facts in Support of Memorandum in Opposition to GVLI's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this September 10, 2009.

**I CERTIFY** that on this same day a copy of this motion has been sent through the CM/ECF electronic system which will automatically send an electronic copy to counsel of record for the Defendant.

**S/Francisco Ramos Martínez**
U.S.D.C. NO. 224711
Del Parque Street 403, 8th FL.
Santurce PR  00907
Tel. (787) 725-5598
Fax. (787) 977-1410