IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**BANCO POPULAR DE PUERTO RICO, INC.**
**Plaintiffs**
**VS.**

CIVIL NO. 01-1142 (GAG)

**LATIN AMERICAN MUSIC CO., INC., ET ALS**
**Defendants**

_____/

**LATIN AMERICAN MUSIC CO., INC., Plaintiffs,**

CIVIL NO. 01-1461 (GAG)

vs.

**BANCO POPULAR DE PUERTO RICO, INC.**
**Defendants**

_____/

## MOTION REQUESTING RECONSIDERATION

**TO THE HONORABLE COURT:**

COMES NOW, the above captioned plaintiff, BPPR, through its undersigned counsel, and very respectfully alleges and prays:

1. On October 9, 2009, the Honorable Court granted in part and denied in part BPPR's Motion for Summary Judgment against LAMCO/ACEMLA. (Docket No. 415).

2. The Honorable Court granted BPRR's Motion for Summary Judgment as to the dismissal of the "Felices Dias" claim and as to the dismissal of LAMCO/ACEMLA's regarding preemption. The Court denied the motion with respect to all other claims. For the reasons stated herein, BPPR respectfully requests that the Honorable Court reconsiders it's Opinion and Order and hold that LAMCO/ACEMLA are barred form presenting an infringement suit due to copyright misuse.

3. Misuse of copyright applies where the copyright owner tries to extend the copyright beyond its intended reach, thereby augmenting the physical scope of copyright protection. *See Religious Tech. Ctr. V. Lerma* 40 USPQ 2nd 1569 (E.D. Va. 1996). Misuse may also exists where the infringement occurred as a result of the copyright proprietor's dereliction of duty (e.g., failure to supply a requested list of copyrighted materials), where there is evidence of a scheme to defraud the public, or misconduct. *Supermarket of Homes Inc. v. San Fernando Valley Board of Realtors* 786 F.2nd 1400 (9th Cir. 1986).

4. In the present case, LAMCO/ACEMLA misused their purported copyrights by augmenting the physical scope of copyright protection and by defrauding the public by claiming to have copyrights over songs that were controlled by other parties.

5. The uncontested material facts established that it was LAMCO and ACEMLA's practice to simultaneously prepare agreements for authors to assign the publishing rights to LAMCO and the public performance rights to ACEMLA (See BPPR's SUMF #44).

6. As LAMCO and ACEMLA are controlled by the same principal (BPPR SUMF #6, 9), they control the pricing of the compositions over which they exercise exclusive control, fixing the prices of the compositions.

7. Although normally a licensee can negotiate public performance licenses with the publisher and/or authors directly and not necessarily from the performing rights society (BPPR SUMF # 12), in this case that option is not available as the Publisher and performing rights society are controlled by the same person.

8. It is Bernard who decides the rate at which compositions are licensed by LAMCO as publisher and it is Bernard who decides whether a performance license will be granted by

ACEMLA, the performance rights entity, and the rate at which such performance license is issued (SUMF #6, 9).

9. This sort of tie-in arrangement (between publishers and public performance societies) is precisely the type of arrangement which ASCAP and BMI used to be involved in which ultimately led to the establishment of a consent decrees in <u>United States v. ASCAP</u>, 1940-1943 Trade Cas. P 56,104 (S.D.N.Y.1941); <u>United States v. ASCAP</u>, 1950-1951 Trade Cas. P 62,595 (S.D.N.Y.1950); and as to BMI, <u>United States v. BMI</u>, 1940-1943 Trade Cas. P 56,096 (E.D.Wis.1941); <u>United States v. BMI</u>, 1966 Trade Cas. P 71,941 (S.D.N.Y.1966) in order to prevent entities that functioned primarily as owners from also being performing rights societies.

10. The defense of unclean hands by virtue of copyright misuse prevents the copyright owner from asserting infringement and asking for damages when the infringement occurred by his dereliction of duty. *<u>Tempo Music, Inc. v. Myers</u>*, <u>407 F.2d 503, 507 (4th Cir. 1969)</u> and also prevents the copyright owner from asserting infringement and asking for damages when he was involved in a scheme to defraud the public. *See <u>Buchanan Home and Auto Supply Co., Inc. v. Firestone Tire and Rubber Co.</u>*, <u>544 F. Supp. 242, 245 (D.S.C. 1981)</u>.

11. The clean hands doctrine sates that whenever a party, who, as *actor* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." <u>Buchanan</u>, Id.

12. Unclean hands results from fraud or other inequitable conduct by the petitioner which so closely relates to the claim being asserted that it would be improper to permit the petitioner to prosecute the claim in a court of equity. <u>Buchanan</u>, Id.

13. Further, the doctrine of unclean hands includes the standards of "misconduct" and "bad faith" as well as fraud. *See, e.g.,* <u>Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d 991, 999 n.8 (N.D. Ill. 2001)</u>

14. In order to lawfully produce the 1993 and 1999 Specials, BPPR sought to obtain licenses from the various copyright owners. Among the purported copyright owners it sought licenses from was co-defendant Latin American Music Company (LAMCO). LAMCO claimed that it had the right to license and collect royalties on behalf of certain artists. In exchange for receiving such licenses, BPPR paid LAMCO and ACEMLA a significant amount of money for blanket licenses over songs utilized in its Christmas Specials.

15. Furthermore, while BPPR sought to obtain licenses for the 1999 Special from the various copyright owners, it discovered that many of the songs were claimed by more than one publisher, including songs that had been claimed by LAMCO/ACEMLA and paid by BPPR pursuant to the September 2, 1998 agreement.

16. As a result, BPPR filed the present action for declaratory judgment to determine the rightful owner of the songs and consigned the amount of $179, 620.04 as royalties that may be owed to the rightful owners of the songs, precisely in order to avoid any infringement claim from the rightful owners.

17. In response to BPPR filing the aforementioned action for declaratory judgment, LAMCO/ACEMLA filed a Complaint alleging willful infringement of copyrights under the Copyright Act of the United States, 17 U.S.C. 101.

18. LAMCO/ACEMLA are barred from presenting their infringement claim as a result of their fraudulent and false representations to BPPR and to this Honorable Court.

19. As part of the September 2, 1998 agreement, LAMCO/ACEMLA made fraudulent representations to BPPR claiming that they owned 100% of the "Ojos Chinos" and "Genesis" compositions.

20. BPPR paid LAMCO $16, 363.47 in mechanical and synchronization fees for the use of "Ojos Chinos" in the 1993 Special "Un Pueblo que Canta". Pursuant to <u>Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church</u>, 499 F.3d 32, 38 (1st Cir. 2007), the First Circuit decided that LAMCO did not have any rights with respect to the composition "Ojos Chinos".

21. Likewise, BPPR paid LAMCO $16, 363.47 in mechanical and synchronization fees for the use of "Genesis" in the 1993 Special. Pursuant to <u>Venegas-Hernandez et als v. ACEMLA, LAMCO, Inc.</u>, 424 F.3d 50 (1st Cir. 2005), the First Circuit decided that LAMCO only held fifty percent of the rights in the "Genesis" composition after October 16, 1996. Therefore, LAMCO did not have any rights with respect to "Genesis" in 1993 and was not authorized to received the amount paid for the use of the song in the 1993 special.

22. Of the 24 songs that were claimed by LAMCO/ACEMLA in the present case, ten songs ("Anacaona", "Elimincacion de los Feos", "En la Vida Todo Es Ir", "Felices Dias", "Ojos Chinos", "Oubao Moin", "Pa que Afinque", "Periodico de Ayer", "Plante Bandera" and "Rebeldia" ) have been either voluntarily withdrawn by LAMCO or dismissed. An additional five songs ("Bang! Bang!", "Canto a Borinquen", "Dame la Mano Paloma", "I will never go back to Georgia" and "Las Caras Lindas") have been settled without

ownership having been established. One song ("Fichas Negras") is still being contested and another song ("Genesis") has been determined that LAMCO only controls fifty percent.

23. In *Latin Am. Music. Co. v. The Archdiocese of San Juan of the Roman Catholic and Apostolic Church*, No. Civ. 96-2312 (PG), 2005 WL 1847013, at *12 (D.P.R. Aug. 2, 2005), after consideration of the Special Master's Report and Recommendation, the Court found the Peer Parties to be the owners of 418 of the 468 works in issue that were claimed by LAMCO.

24. As a result of LAMCO/ACEMLA's misrepresentations and fraudulent claims to BPPR and to the Honorable Court, they should be barred from presenting any type of infringement claim against BPPR.

WHEREFORE, BPPR respectfully requests that this Honorable Court reconsiders it's Opinion and Order and hold that LAMCO/ACEMLA are barred form presenting an infringement suit due to copyright misuse.

        **RESPECTFULLY SUBMITED.**

        In San Juan, Puerto Rico this 13th day of October, 2009.

        **WE HEREBY CERTIFY** that, we electronically filed the foregoing with the Clerk of the Court using the CM/RCF system. Notice of this filing will be sent to all counsels of record.

        PRADO, NUÑEZ & ASSOCIATES, P.S.C.
        Calle del Parque, #403
        Cond. Del Parque, 8th Floor
        Santurce, P.R. 00907

                                                    Tel. (787) 977-1411

                                       S/ Francisco Ramos Martínez
                                           U.S.D.C.P.R.  No. 224711