IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>v.<br><br>LAMCO, *ET AL*.<br>_____<br><br>LAMCO, *ET AL*.<br><br>v.<br><br>BANCO POPULAR DE PUERTO RICO | Civil No. 01-1142(GAG)<br><br><br><br><br>Civil No. 01-1461(GAG) |

**MOTION TO INTERVENE**

TO THE HONORABLE COURT:

    **NOW COMES** the Estate of Catalino Curet Alonso, plaintiff under Civil No. 01-1461(PG), represented through its undersigned attorney and respectfully alleges, states, and prays:

    The late Catalino "Tite" Curet Alonso (from now on "Tite Curet") was one of the greatest Puerto Rican composers of all times.  He wrote literally thousands of songs in a variety of genres including boleros, salsas and danzas.  Some of his better well-known works include *Las Caras Lindas, Periódico de Ayer, Planté Bandera* and many others. His songs have won numerous awards at international music festivals and many remain popular to this day.  As composer of such songs, whenever he assigned them to Publishing Company, he was entitled to, at least, a fifty percent (50%) share in music royalties.  Tite Curet

passed away on August 5, 2003. The Curet Heirs have obtained a declaration that they are his sole heirs from the Courts of Puerto Rico.

In the instant case, on October 27, 2009, a "**Motion Submitting Confidential Settlement Agreement between LAMCO/ACEMLA and the Peer Parties**" (Docket No. 433) and a "**Motion for Disbursement of Funds**" (Docket No. 434) were filed by Katarina Stipec-Rubio on behalf of Broadcast Music, Inc, EMI Park Groove, Inc, Peer International, Peer International Corporation of Puerto Rico, Peer Music Ltd., Sonido, Inc., EMI Catalogue Partnership, Altamar Music Publishing, Guillermo Venegas Lloveras, Inc., Banco Popular de Puerto Rico, Latin American Music Company, Inc., Asociación de Compositores y Editores de Música Latinoamericana (ACEMLA), Universal Musica Ltd., Banco Popular de PR, Fundación Banco Popular de P.R., and Latin American Music Co., Inc. As a result of the Confidential Agreement and the Motion for Disbursement of Funds, on October 30, 2009, this Honorable Court issued an Order granting the Motion for Disbursement of Funds (Docket No. 436).

Even though the Curet heirs were not privy to the Confidential Agreement (Docket No. 433) and the Motion for Disbursement of Funds (Docket No. 434), it is evident that the transaction involves funds corresponding to Catalino "Tite" Curet's music royalties. At this moment it is clear that the parties involved in this transaction do not have the intention of paying the corresponding share of royalties to the Curet heirs; at least a fifty percent (50%) share. Accordingly, as an interested party in the allocation of these funds, the estate of Catalino "Tite"

Curet Alonzo wishes to intervene in the above referenced transactions pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure[1].

Rule 24(a) (2) provides the general rubric for permissible intervention in a case. As established by the court, a strict reading of "Rule 24(a)(2)'s reference to 'an interest relating to the property or transaction' suggests that the drafters had in mind something narrower and more akin to property or contract interests in conventional private litigation as the necessary stake; but this narrow reading has not been accepted in practice." *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n,* 197 F.3d 560 (1st Cir. 1999) *citing Daggett v. Commission on Governmental Ethics and Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999).

In *Cotter v. Massachusetts Association of Minority Law Enforcement* 219 F.3d 31, 34 (1st Cir. 2000), the First Circuit stated that "the central question whether what an applicant for intervention is claiming is "an interest relating to the property or transaction which is the subject of the action," Fed. R. Civ. P. 24(a)(2), is peculiarly difficult to answer."  This is because "[t]he drafters may very well have had in mind a rather concrete common law interest, such as an applicant's ownership claim to a piece of property in dispute between two other

---

[1] **Rule 24. Intervention.**
 (a) Intervention of Right.

On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

3

parties, but Supreme Court cases have expanded the notion without setting any very firm limits." *citing Daggett* at 110.  Moreover, the First Circuit noted, "the diversity of facts and interests that may be affected by litigation today is so broad as to make any simple formula difficult, if not impossible, to contrive." *Id.*

The other factors for the District Court to consider regarding whether to grant intervention are the timeliness of the request and the likelihood that parties already involved in the lawsuit will protect the interveners' interests.  The timeliness criteria are discussed in detail in *Banco Popular v. Greenblatt,* 964 F.2d 1227, 1231 (1st Cir. 1992).  They are: when the intervener learned of the effect of the pending lawsuit on his interest, the foreseeable prejudice to the intervener, the foreseeable prejudice to the existing parties, and idiosyncratic circumstances which militate for or against intervention.

Our intervention request will not cause any burden to the parties involved in the above-mentioned agreement since what we request is the rightful payment to the Curet heirs of the corresponding music royalties derived from Tite Curet's compositions; which they are entitled to.  The corresponding amount should not be less than fifty percent (50%) of any amount paid in royalties for the compositions made by Catalino "Tite" Curet Alonzo and that were part of this litigation.[2]

---

[2] Tiempo Perdido; Cortijo Bailable; Pa que Afinque; Periódico de Ayer; Anacaona; Planté Bandera; Las Caras Lindas.

**II.     Pending litigation between LAMCO/ACEMLA and the Curet heirs.**

LAMCO and ACEMLA (collectively herein after "the ACEMLA parties") allege to be entitled to receive royalties from Tite Curet's music based on contract and a rider executed during the periods of 1995 and 1998.  However, since then the ACEMLA parties have failed to pay Catalino "Tite" Curet or his heirs the corresponding royalties derived from the exploitation of his music and committed acts of copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101, *et seq.*  against the Estate of Catalino "Tite" Curet and, in consequence, the Curet heirs filed a claim on this court on January 5, 2006.[3]

On August 26, 2008, Hon. Judge Aida Delgado issued an order adopting the report and recommendation made by the Honorable Magistrate Judge Bruce J. McGiverin,[4] were it found ACEMLA and LAMCO to be copyright infringers of the songs "*Pueblo Latino*" (two [2] infringements), "*Planté Bandera*" (at least one [1] infringement) and *Periódico de Ayer* (at least one [1] infringement).

Subsequently, from March 19, 2009 to March 25, 2009, a trial was held.  At this moment we are only waiting for the court's decision regarding the rescission and resolution of the subject contracts based on material breaches of said contracts and the damages to be imposed for the copyright infringements committed by ACEMLA parties.[5]

Under Copyright Law, if the ACEMLA parties are found to be willful infringers for the four (4) copyright infringements decided by the court, they will be exposed

---

[3] 06-1014 (ADC)
[4] 06-1014 (ADC) [Docket 66]
[5] The court should find them to be willful infringers since plenty of evidence was introduce to this regard. See Post Trial Brief.  [Docket 140]

to the payment of up to six hundred thousand dollars ($600,000.00). On the other hand, if they are found to be non-willful copyright infringers they will be exposed to the payment of up to one hundred and twenty thousand dollars ($120,000.00). *See 17 USC § 504.* In either case, the subject amounts far exceed the amounts that they are now receiving for royalties relating to Curet's music. In addition, if the contracts are rescinded, the ACEMLA parties will not be entitled to any such sums of money arising or in connection with royalties from Catalino "Tite" Curet Alonzo music.

Notwithstanding the above, if we stick to the terms of the contract, the Estate of Tite Curet is entitled to, at least, a fifty percent (50%) share of the music royalties derived from Tite Curet's music. Exhibit 1. Accordingly, we kindly request from the court to withhold any amounts of money that will be paid to ACEMLA in concept of royalties relating to Tite Curet's compositions.

### III. PEER PARTIES

- **Peer release letter**

With effects as of March 31, 2006, the Peers International Corporation and Southern Music Publishing Company, Inc. (collectively hereinafter "Peer"), "quitclaimed, relinquished and reassigned" to Hilda Velázquez Cotto, Hilda Curet Velázquez and Eduardo Curet Velázquez all of the publishers' rights, titles and interests in the musical work composed by Tite Curet. Exhibit 2. Accordingly, at this moment the Curet heirs are entitled to any sums of money related to Tite Curet's compositions to which the Peer parties may have had any rights in the past. In the alternative, Curet heirs are entitled to, at least, a fifty percent (50%)

share of the music royalties derived from his compositions. Accordingly, we kindly request from the court to withhold any amounts of money that will be paid to Peer parties in concept of royalties relating to Tite Curet's compositions.

### IV. Conclusion

As previously stated, a confidential agreement was subscribed by the ACEMLA parties, the PEER parties and others in this case, of which the Curet heirs were not privy. As such, this motion was drafted without the benefit of reviewing the same, so our claims are made without the benefit of reviewing the specific scope of the agreement, even though some of the funds allocated therein clearly belong to the Estate of Catalino "Tite" Curet Alonso.

For the reasons set forth herein, we ask from this Court to withhold any amounts of money that will be paid to ACEMLA in concept of royalties relating to Tite Curet's compositions until the court renders its decision in the case of Hilda Curet-Velazquez *et al*. v. ACEMLA de Puerto Rico, Inc., 06-1014 (ADC). In regard to the Peer parties, we request that the court withholds any amounts of money that will be paid to the Peer parties in concept of royalties relating to Tite Curet's compositions. Said amounts should be determined by the amount of funds deposited in court divided by the number of songs in the agreement.

**WHEREFORE**, it is respectfully requested that the Court permits the Estate of Tite Curet to intervene in the allocation of the above referenced transactions since some of the funds to be disbursed correspond to Catalino "Tite" Curet Alonso's music royalties, of which the appearing party is entitled to, at least, a fifty (50) percent share.

**RESPECTFULLY SUBMITTED**.

**IT IS HEREBY CERTIFIED** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the attorneys of record.

In San Juan, Puerto Rico, on November 9, 2009.

S:\ *Samuel F. Pamias-Portalatín*

**SAMUEL F. PAMIAS-PORTALATÍN, ESQ,**
**USDC-PR No. 220309**

**Hoglund & Pamias, P.S.C.**
256 Eleanor Roosevelt Street
San Juan, Puerto Rico 00918
Telephone: 787-772-9200
Facsimile: 787-772-9533
E-mail: samuel@hhoglund.com