**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO ET ALS., | * | **CV. 01-1142 (GAG)** |
| PLAINTIFF, | * | |
| V. | * | |
| LAMCO/ACEMLA, ET ALS., | * | |
| DEFENDANT. | * | |
| LAMCO/ACEMLA ET ALS., | * | **CV. 01-1461 (GAG)** |
| PLAINTIFF, | * | |
| V. | * | |
| BANCO POPULAR DE PUERTO RICO ET ALS., | * | |
| DEFENDANT. | * | |

**OPPOSITION TO MOTION TO INTERVENE AT DK.452**

**TO THE HONORBLE COURT:**

**COMES NOW** defendant/plaintiff, LAMCO/ACEMLA parties, et als, through the undersigned attorney of record and respectfully states, alleges and prays the following:

**I.     INTRODUCTION**

The appearing parties oppose the Motion to Intervene file at Dk. 452 by the Estate of Catalino Curet Alonso (hereinafter referred to as the "Estate") for the following list of reasons that warrant denial of their motion.

## II.     PROCEDURAL HISTORY

The Estate party is not and has not been a party to the lead case, 01-1142 (GAG). The Estate was not a party to the latter case, 01-1161, when the case began in 2001 as the composer was alive, and he and other composers were named plaintiff parties for moral rights claims. These named plaintiffs were in addition to the LAMCO/ACEMLA party(s), the LAMCO party, who have been and are the only proper party claiming ownership on behalf of the assignment by the composer Curet, and who have standing to bring copyright ownership and infringement claims against the defendant, Banco Popular de Puerto Rico. (BPPR). They were represented by the LAMCO/ACEMLA attorneys.

Some of the Curt songs were also claimed by the PEER party, also named defendants in the lead case. This was known from 2001 and there was never any claim by this intervening party at any time which was eventually resolved by the Confidential Agreement.

The composer Curet died in 2003 and as this case was stayed, the Estate is represented by their present attorney, Hoglund & Pamias, P.S.C., Attorney Pamias since August 18, 2008, when they filed their Motion to Substitute counsel. See Dk. 206.

On August 19, 2008, said Motion that was granted by this Court.

The record shows that attorney Heath W. Hoglund, from the same firm of Hoglund & Pamias, P.S.C., had first appeared on August 21, 2002 for the Guillermo Venegas party on August 21, 2002. See Dk. 93.

On July 27, 2006, Attorney Sammuel Pamias and Attorney Hoglund moved to withdraw as counsel for the Venegas party. See Dk. 152.

On December 3, 2006, Attorney Pamias filed a Second Motion to Withdraw as Attorney, See Dk. 170.

On December 4, 2006, the Court granted the motion to withdraw. See Dk. 171.

On December 8, 2006, a Motion in Compliance was filed by the Attorneys Hoglund & Pamias, P.S.C. See Dk. 173. Said Motion noted by this Court on that same date. See Dk. 174.

This record of the legal representation is important as to the intervening party's Motion to Intervene and the issue of timeliness, standing, etc, but not to whether there is an actual or potential conflict of interest, in that the Venegas Party did Counter-Claim and sued the same LAMCO/ACEMLA party that represented the Curet composer from the commencement of this case in 2001 until August 19, 2008. The record clearly shows that actual representation by these attorneys began from August 21, 2002 and continued until December 4, 2006 and then once again (re) appeared with the current Estate party on August 18, 2008. This records shows that in representing more than one party in this litigation since 2002, these attorneys were involved and knew of the double claims for the Curet songs.

On October 9, 2009 Status Conference, all of the parties spend five (5) hours on October 9, 2009, the Peer and LAMCO hashed out an agreement. The Universal and LAMCO parties did not agreed and the case was set for trial on October 17, 2009, as the same was held on that date. During this time, intervening party attorney was present, waiting, discussing matters with other attorneys, including the undersigned attorney and the PEER attorneys.

On October 13, 2009, all of the parties, including the Estate party, spent 5.5 hours discussing the same agreement whereby the BPPR party attempted to undo what had been agreed to on the October 9, 2009. This was in Chambers, with the presence of Attorney Pamias for the Estate party. The issues raised in their motion were not raised or discussed by them. A copy of said the proposed agreement between PEER and LAMCO was given to BPPR for their review and consent, or approval not to contest it. Contrary to its motion, with omitted and misstated representations to his Court, the Estate party **was privy** to the agreement, as the Agreement was available in hard copy during the breaks, having been reviewed by the BPPR attorneys, Prado and Ramos, and other parties, and the Estate attorney Pamias discussed the Agreement with the undersigned, with the BPPR attorneys, and with the PEER parties.

Additionally, at the same October 13, 2009 Settlement Conference held in Chambers for five and one half (5.5) hour conference, the Honorable Judge Gelpi asked each of the attorneys, including the Estate attorney, that if the Court accepted the Agreement, over the objections by BPPR, would the attorneys agree that they would be out of the lead case, and all, including Attorney Pamias, agreed. The motion to intervene at p. 2, par. 3 states that the Estate (Heirs) were not privy to the Agreement which is against the record, is without any merit and is not true.

This same Estate party has stated that it will not pursue its infringement claims in the latter case as plaintiffs, they have never filed any dispositive motions, never appeared at any of the many depositions, never or participated in discovery, did not adopt any expert opinion from the LAMCO party against the Pena/Altamar parties, and have only been present at the Status Conference but have not prosecuted any of its plaintiff claims.

On the October 17, 2009 Status Conference, BPPR did not oppose the agreement.  While the undersigned attorney was late and was not present at said conference, and was excused by the Court thereafter, but this was the representation made by BPPR Attorney Ramos, and other attorneys, after said conference.  It was also indicated to the undersigned by the other attorneys, that the remaining latter case of copyright infringements would be sent to non-binding mediation for early next year, a pretrial would be set in December, and eventual trial, if needed, for March 2010.
No Minute Entry has been issued to date by this Honorable Court.  The Court indicated that there was time permitted to file the agreement.

It was and is, a consideration to the LAMCO/ACEMLA parties entering the Settlement Agreement, that the performance and other infringements claims for the 1999  and other Bank Specials  for the remaining works would go forward, along with the other claims in the complaint, and that the funds would be distributed thereafter.

The motion also attempts to untimely due what has already been done, the Court having accepted the agreement, dismissed the PEER parties and entered Judgment, accordingly.

There can be no issuance of any Order contrary to the expressed terms of the agreement, nor any Order to stay of disbursement of funds or issuance of any Order changing the Settlement Agreement already approved by this Court.  This after the fact motion is without any merit as the Estate is not a party to the agreement, and their explicit if not implicit approval, estoppels them and prevents them from going against their own attorney representations to this Honorable Court.

6

## III.  LEGAL ARGUMENT

### 1.  THE MOTION TO INTERVENE MUST BE DENIED AS UNTIMELY

Some of the factors for the Court to consider for the granting or denial of the Motion to Intervene, are the timeliness of the request and the likelihood that parties already involved in the lawsuit will protect the interveners' interests. Banco Popular v, Greenlatt, 964 F.2d 1227, 1231 (1st Cir. 1992)(timeliness).

Never has this party sought to intervene in the lead case since 2001 despite being represented and even after involved in the discussions and review of the settlement.  The waiting until after issuance is untimely and improper and should not be allowed.

The presence with the October 13, 2009 conference constitutes waiver of any basis now to object to an agreement of ownership where they are not a party and their interests are protected.

The motion to intervene also alludes to another pending complaint, filed January 3, 2006, some almost four years ago to date, now pending before this Court, since March 2009, a issue which was raised on October 9, 2009 in Open Court by this same attorney and that was not granted by this Court.

This tactic of wait until the agreement is reached and then make a move is a bad faith and wrong calculated move by this party.  No further determination should be allowed to be stayed especially when that case is also a 2006 case and there is no date to be decided.

Furthermore Curet Estate submits a purported  "quitclaim" of works from Peer Southern as an exhibit. Peer Southern cannot quitclaim and assign works they purport to

have owned without anything else. Moreover, none of the Curet songs in this dispute are listed in such a document. Thus, such exhibit is also useless.

The claim of copyright infringement is not actionable between co-owners, even if the "beneficial owners" are entitled to 50% royalties. The entitlement to 50% royalties for the "beneficial owners" is not disputed. What the appearing parties opposed in the instant filing is that the motion to intervene seeks to by-pass, alter and amend the contractual agreement between the composer and publishers which is not allowed under copyright law.

In their motion for summary judgment, Altamar Music Co.,/Pena party argued that between alleged co-owners, Jimmy Sabater and Joe Cuba, there cannot be any infringement claims between co-owners regarding their double claimed song, Bang Bang. See list of cases cited at Dk. 330. This is not the case with the Estate. Moreover, the Curet Estate is only a "beneficial owner" duly entitled to receive their share of royalties through their assignment to the LAMCO publishers and through their non-exclusive performance assignment to ACEMLA. 1

Furthermore, the Estate may have in some uncertain future all the remedy and relief requested granted in that lawsuit, if they were to prevail in that litigation, and no stay herein would affect that outcome or any post-judgment relief or appeal. If the estate party losses, they may be liable for attorneys' fees and not entitled to anything in the future. This Court cannot allow the Estate to seek injunctive relief in this case for that another case that they have not sought the same relief. They are now estopped from their own omissions and actions to date and this blatant attempt to receive benefits not within the industry custom and practice must not be allowed.

If Courts should now permit the composers to intervene in copyright actions filed by their publishers, it would open the flood gates for interveners without necessity as they always have available actions against their own publishers. The motion cites no caselaw to support its request in a copyright case under the facts of our case.

Contrary to the motions allegations, the LAMCO owners as owners cannot be infringers to copyright from the composers or "beneficial owners" as are the Curet heirs in the pending case. See Dk. 330.

Also, the Exhibit 1 submitted to the Motion is improper as it is the ACEMLA non-exclusive assignment contract, for performance, not the LAMCO publishers contract establishing ownership transfer to LAMCO from the composer. See Dk. 337, Exhibit 24 A-H, Ex. 25.

What the motion fails to state to this Honorable Court is that the publishers have paid the composer over hundreds of thousands of dollars while collecting some forty-thousand dollars because of double claims for the Curet music. Thus, all and any payments received in royalties are periodically notified by LAMCO to the Estate (Curet heirs), they are duly reported, they are properly credited and recouped, if appropriate. This is the contract, this is the practice in the industry and the interveners have already filed their claims in another case and cannot use this case to circumvent, enjoin, or alter that legal relationship by their motion. The 2006 case has not affected this case to date and should not affect this case now. The motion is late, not forthcoming and is without any merit.

The motion also attempts to untimely due what has already been done, the Court having accepted the agreement, having dismissed the PEER parties and has entered Judgment, accordingly. See Dk.

This Court should not issue any Order contrary to the expressed terms of the agreement, nor issue any Order to stay of disbursement of funds or issuance of any Order changing the Settlement Agreement already approved by this Court. This after the fact motion is without any merit as the Estate is not a party to the agreement, and their explicit if not implicit approval, estoppels them and prevents them from going against their own attorney representations to this Honorable Court.

Thus, the motion to intervene must be denied as their interests are protected, the requests are without any standing and are untimely.

### 2. THE ISSUE OF OWNERSHIP HAS BEEN RESOLVED AND THERE IS NO STANDING TO INTERVENE

The declaratory judgment lead case was about copyright ownership. The exclusive assignments are ownership governed by the Copyright Act, 17 U.S.C. section 101.

The composer Curet assigned the ownership to LAMCO which is undisputed. The U.S. Copyright Office Certificates of Registration and Recordations filed by LAMCO/ASCEMLA gives then standing to claim ownership, not the actual composers within their catalogue that they represent. See Dk. 337 Ex. 24A-H. Ex 25.

The publisher's duties are to distribute the royalties to their composers through their usual industry business practices and periodically reporting. There is no standing

for any of the composers, whether against PEER, LAMCO or any publishing entity to intervene in copyright cases to claim royalties directly from infringers or parties. The 1999 Special was at a time when the composer was alive and LAMCO was the proper claimant. LAMCO is still the owner of the Curet works. The PEER consolidated action resolved some but not all claims for double claims between LAMCO and PEER, but not as to some renewal rights.

The Estate (Heirs) are not copyright owners, rather what the U.S. Copyright Acts states as "Beneficial Owners" and take the place of the composer to receive the contractual benefits. Because of the death of the composer, they may have acquired some, and few, Renewal Rights of certain songs. None of these renewal rights pertain to any of the Curet songs in LAMCO share.

Thus, the motion seeks to receive directly from this Court, for an alleged 50% share which is not the contractual agreement between the parties that cannot be altered by their motion to intervene. The granting of the motion would re-open the instant litigations, put the parties in their original positions and would go against the Orders of this Court. As the Court has accepted the Agreement, it cannot then grant the motion as it goes against the parties considerations in accepting the same and receiving payments.

**WHEREFORE**, plaintiff respectfully requests that this Honorable Court deny motion to intervene in its entirety as it is untimely, lacks standing, it is improper and should not collaterally attached other pending litigation.

**RESPECTFULLY SUBMITTED:**

**CERTIFICATE OF SERVICE:** I HEREBY CERTIFY that a true and exact copy of the foregoing document has been filed with the Clerk of Court using manual

mode and the clerk will file the CM-ECF system that will served notice to all counsel and to all of the parties counsel at their address of record herein by email.

In Ponce, Puerto Rico, this 10th day of November, 2009.

/s Mauricio Hernandez Arroyo

_____

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO**
**USDC-PR NO. 208409**
**Attorney for LAMCO/ACEMLA**
1369 Calle Salud, Suite 104
Ponce, Puerto Rico 00717-2014
Tel./Fax No. (787) 984-0789
Cel No. (787) 597-4815
e-mail"mhernandezarroyolaw@gmail.com