## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO, INC. | * | |
| | * | |
| | * | CIVIL NO. 01-1142 (GAG) |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| LATIN AMERICAN MUSIC CO., INC., et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| ———————————————— | * | |

| | | |
|---|---|---|
| LATIN AMERICAN MUSIC CO., INC., et al., | * | |
| | * | |
| | * | CIVIL NO. 01-1461 (GAG) |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | |
| BANCO POPULAR DE PUERTO RICO, INC., et al., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| ———————————————— | * | |

## UNIVERSAL'S POST-TRIAL BRIEF

**TO THE HONORABLE COURT:**

COMES NOW, Universal Musica Ltd. ("Universal"), through the undersigned counsel, and respectfully **STATES**, **AVERS**, and **PRAYS**:

### I.  INTRODUCTION

On October 16, 2009, this Honorable Court held a bench trial in the above-captioned case to determine the ownership of the song "Fichas Negras", which is disputed between co-defendants Universal and Latin American Music Company, Inc. ("LAMCO") and Asociacion de

Compositores y Editores de Musica Latinoamericana ("ACEMLA") ("LAMCO/ACEMLA"). At the conclusion of the bench trial, this Honorable Court granted Universal's request that it be allowed to submit a post-trial brief on certain issues of law in controversy in the case. Pursuant to the above, Universal hereby respectfully submits its post-trial brief.

Prior to the celebration of the bench trial in the case regarding the parties' ownership dispute over the song "Fichas Negras", this Honorable Court had ruled upon the parties' cross-motions for summary judgment (Dockets No. 408, 409). In its rulings regarding said motions for summary judgment, the Court determined that because EMLASA's 1981 Mexican assignment contract was not registered in the United States Copyright Office,[1] if LAMCO/ACEMLA's 1995 recordation of its Assignment Contract and 1999 registration of the copyright of "Fichas Negras" were valid under the U.S. Copyright Act, LAMCO/ACEMLA's ownership claim would prevail. *See*, *id.*

Still pending after this Court's determination regarding the priority between the transfers is the issue of whether LAMCO/ACEMLA complied with all the legal requirements for recordation of the Assignment Contracts and for registration of the copyright of "Fichas Negras". As this Honorable Court determined in its Opinions and Orders regarding the parties' cross-motions for summary judgment, EMLASA's assignment was the prior assignment and it was duly recorded in the Republic of Mexico (Docket No. 408). Although the Court recognized that LAMCO/ACEMLA's subsequent assignment was recorded in the U.S. Copyright Office, it found that in order for LAMCO/ACEMLA's subsequent assignment to prevail under Section 205(d) of the Copyright Act, LAMCO/ACEMLA still had to establish that said assignment complied with

---

[1] Universal represents EMLASA's catalog of works throughout the world, including "Fichas Negras", except for Mexico, which is where EMLASA, an independent publishing company, is based.

the legal requirements established by the Copyright Act. *Id.* Universal maintains that neither the recordation of the assignment nor the registration of the copyright complied with the legal requirements established by the U.S. Copyright Act, and that therefore, LAMCO/ACEMLA has failed to establish its ownership claim over the song "Fichas Negras".

First, as Universal will discuss in Section II.A, *infra,* the Assignment Contracts recorded by LAMCO/ACEMLA (Exhibits A and B) in 1995 should not be admitted to establish that Johnny Rodriguez assigned "Fichas Negras" to LAMCO/ACEMLA because the addenda to the Assignment Contract constitute inadmissible hearsay.

Second, in Section II.B, *infra,* Universal will discuss the requirements set forth by Section 205(d) of the U.S. Copyright Act regarding when a subsequent transfer or assignment will have priority over a prior assignment or transfer. It provides for the priority of a later transfer, "if recorded first in such manner and **if taken in good faith**, for valuable consideration or on the basis of a binding promise to pay royalties, **and without notice of the earlier transfer**." 17 U.S.C. § 205(d) (emphasis added).

It is Universal's contention – as will be shown with references to the trial transcript and LAMCO/ACEMLA's trial exhibits – that LAMCO/ACEMLA had or should have had either actual or constructive notice that there were prior ownership claim or claims over the famous, priorly recorded song of "Fichas Negras", and that instead of investigating that possibility, it turned a blind eye and proceeded to record the Assignment Contracts and subsequently a new copyright registration. This lack of inquiry does not comply with the case law's requirement of a

---

*See,* Testimony of Eddie Fernandez (Transcript ("Tr.") at pages 6-7).

thorough copyright investigation, and certainly does not comply with the requirement that the subsequent transfer be made in good faith and without notice of the prior transfer.

Finally, as will be discussed in Section II.C, *infra,* the copyright registration of "Fichas Negras" submitted by LAMCO/ACEMLA to the U.S. Copyright Office in 1999 is also invalid. The registration application submitted to the U.S. Copyright Office was filled with either deliberate falsehoods or – at best – significant and material omissions or errors. Under the standard set forth by the leading treatise on copyright law, "[i]f the claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid." 2-7 *Nimmer on Copyright* § 7.20.

As Universal will brief in Section II.C, the registration application was rife with misstatements and omissions, including the date of birth and death of the author, the date of creation of the Works in question, the group registration of 23 works which were not originally released together, and the categorical assertion that all 23 works were priorly unpublished, without verification of that fact. All of these – taken as a whole and examined under the attending circumstances – should lead this Honorable Court to rule that the registration of "Fichas Negras", buried among 22 other titles which bear no relation to that song beside its author, is invalid and does not give LAMCO/ACEMLA valid title over "Fichas Negras".

## II. DISCUSSION

### A. The 1995 Assignment Contracts are inadmissible to establish that "Fichas Negras" was duly assigned to LAMCO/ACEMLA because the addenda containing the purportedly assigned songs constitute inadmissible hearsay.

At the bench trial, in response to Universal's argument that they were inadmissible as hearsay, this Honorable Court ruled that Exhibits A and B, the 1995 Assignment Contracts to

LAMCO and ACEMLA respectively, were admitted for the **limited** purpose of establishing that those were the documents that were submitted to the U.S. Copyright Office for recordation in 1995. Universal argued that pursuant to *U.S. v. Vigneau*, 187 F.3d 70 (1st Cir. 1999), the addenda or riders to the Assignment Contracts were inadmissible hearsay because they had – according to the testimony of Mr. Luis Raul Bernard, president of LAMCO (hereinafter "Bernard") – been prepared by a third party, the author Johnny Rodriguez, who was not an employee of LAMCO or ACEMLA, and thus, the documents could not be qualified as a business record under Fed. R. Evid. 803(6).[2]

At that time, this Honorable Court ruled that the documents would only be admitted to establish that those contracts constituted the documents submitted for recordation to the U.S. Copyright Office, but did not otherwise rule as to the validity or admissibility of the Assignment Contracts to in fact establish that Johnny Rodriguez assigned "Fichas Negras" to LAMCO/ACEMLA.[3] Universal respectfully requests that this Honorable Court deem the

---

[2] Fed. R. Evid. 803(6), entitled "Records of Regularly Conducted Activity", provides, in pertinent part, for the admissibility of business records as an exception to the hearsay rule, when they are introduced by a "qualified witness", "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness".

[3] In its evidentiary ruling on the admissibility of the Assignment Contracts, this Honorable Court stated, in pertinent part: "This is what he filed in the copyright office. That is the only purpose I am admitting it." *See,* Tr. at page 60 (lines 24-25). This Honorable Court went on to state to Universal's counsel: "You are free to cross-examine. The weight of the evidence I will give it is a different matter. But the admission into evidence is not conclusive of what you are arguing right now." *Id.* at page 61 (lines 2-5).

In short, this Honorable Court admitted the Assignment Contracts (Exhibits A and B) into evidence for the limited purpose of establishing that those were the documents that Mr. Bernard sent to the U.S. Copyright Office. However, the determination as to what weight should be given those documents in light of the evidentiary deficiencies cited by Universal's counsel remained an open question, and is the very issue raised by Universal in the present brief for the Court's adjudication.

Assignment Contracts otherwise inadmissible to establish LAMCO/ACEMLA's right to "Fichas Negras" because the addenda contitutes inadmissible hearsay with no indicia of reliability.

In *Vigneau*, 187 F.3d at 75, the First Circuit Court of Appeals held that the business records exception does not embrace statements contained in a business record that were made by one who was not a part of that business at the time the statements were made if they are offered for their truth. As noted by the *Vigneau* court, "the business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business **if the embraced statements are offered for their truth**." *Id.* (italics in original) (bold added). That is precisely what is at issue here as it pertains to the addenda to the Assignment Contracts, and why they are inadmissible hearsay under Fed. R. Evid. 802 and 803(6). Bernard testified that the list containing the purportedly assigned songs was prepared by Johnny Rodriguez,[4] who undisputedly was never an employee of LAMCO or ACEMLA.[5] Furthermore, that list is not signed by Mr. Rodriguez;[6] it is not dated (in fact, Bernard admitted that he does not know the exact date when it was allegedly prepared, nor when or to whom at LAMCO or ACEMLA it was submitted);[7] and it does not make any reference whatsoever to the two-page Assignment Contract.[8] In short, there is absolutely no indicia of reliability regarding either the

---

[4] Tr. at page 37 (lines 19-23).

[5] Tr. at page 67 (lines 7-9).

[6] Tr. at page 76 (lines 13-14, 19-20).

[7] Tr. at page 86 (lines 9-11); page 99 (lines 4-11) ("We have three handwritten and two typewritten lists and they were ***probably*** given by Johnny Rodriguez to me or my brother to be registered.") (emphasis added).

[8] Tr. at page 76 (lines 5-8).

content of the lists (neither the handwritten nor the typewritten one), nor is there any indicia of reliability that those lists – whether or nor they were accurately prepared by Mr. Rodriguez – were supposed to be incorporated into the Assignment Contracts.

As Universal's counsel informed this Honorable Court at the bench trial, the U.S. Copyright Office does not attempt to judge the legal sufficiency or to interpret the documents submitted for registration. *See,* Circular 12 of the U.S. Copyright Office, *Recordations of Transfers and Other Documents* (available at http://www.copyright.gov/circs/circ12.pdf). Circular No. 12 provides, in pertinent part: "Although the Copyright Office has minimum requirements that must be satisfied for a document to be recorded, such as being complete by its own terms, the Office does not determine whether documents satisfy legal requirements that are necessary for the documents to be effective or enforced against the parties." *Id.* at page 1. It further states:

> **The Copyright Office does not attempt to judge the legal sufficiency or to interpret the content of any document submitted for recordation.** It does not screen the document for errors or discrepancies... Parties are therefore cautioned to review and scrutinize any document to assure its legal sufficiency before submitting it to the Copyright Office for recordation. **The Copyright Office will record the document, but recordation may be without legal effect unless the remitter has prepared the document in a way that satisfies applicable legal requirements**.

*Id.* at page 3 (emphasis added).

Accordingly, the mere fact that the Assignment Contracts were recorded with the U.S. Copyright Office does not validate them as legally sufficient or otherwise enforceable or admissible. It is up to the Court to examine them for legal sufficiency and admissibility, and Universal respectfully requests that this Honorable Court rule that the addenda to the Assignment

Contracts are inadmissible as hearsay to establish the truth of the matter asserted therein, namely that the 77 songs included in the lists purportedly part of the Assignment Contracts – including "Fichas Negras" – are the songs that are referenced in the two-page document constituting the Assignment Contracts.

> **B. LAMCO/ACEMLA's recordation of the 1995 Assignment Contracts was not done in good faith or without notice of a prior transfer, and thus does not comply with Section 205(d) of the Copyright Act.**

However, even if this Honorable Court admits the Assignment Contracts, including the addenda listing "Fichas Negras", Universal maintains that the recordation of the transfer is invalid under Section 205(d) of the U.S. Copyright Act, 17 U.S.C. § 205(d).

In response to Universal's counsel's cross-examination, Bernard, who has been President of LAMCO, a music publisher specializing in Latin music in business for the past 25 to 30 years,[9] testified as follows regarding the importance of ownership, transfer and recordation of songs:

Q: Would you agree with me that ownership of songs is an important issue for music companies such as LAMCO?

A: Very. Very much.

Q: And that by the same token it is very important that issues of assignment of songs are very important?

A: That is correct, sir.

Q: And issues having to do with transfer of songs are very important?

A: That is correct, sir.

Q: And issues having to do with recordation of songs are very important?

A: Very, very important.

---

[9] *See*, Tr. at page 8 (lines 10-13), page 31 (lines 3-5).

Q: Not only to LAMCO, but they are important for anyone in that industry?

A: They should be.

Tr. at page 66 (lines 14-25), page 67 (lines 1-3).

As the Court will see, the importance of the issues of copyright ownership, transfer and recordation, as admitted by the President of LAMCO, stands in stark contrast to the actions taken by LAMCO/ACEMLA to investigate the copyright status of "Fichas Negras", and as a matter of law establishes that LAMCO/ACEMLA failed to comply with the necessary investigation under Section 205(d) to claim a "good faith" transfer without notice.

Section 205 of the U.S. Copyright Act provides for the recordation of transfers of copyright ownership.  Regarding conflicting transfers of ownership, Section 205(d), entitled *Priority Between Conflicting Transfers*, provides as follows:

> As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within 1 month after its execution in the United States or within 2 months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails ***if recorded first in such manner and if taken in good faith***, for valuable consideration or on the basis of a binding promise to pay royalties, ***and without notice of the earlier transfer***.

17 U.S.C. § 205(d) (emphasis added).

The key phrases for purposes of the present discussion are "taken in good faith"  and "without notice of the earlier transfer".  As the case law discussed below demonstrates, what constitutes good faith and notice is fact-dependent, and requires an inquiry into not only what the subsequent transferee actually knew, but what it ***should have or could have known*** had it undertaken the required inquiry into the provenance and copyright status of the work in question.

It is not merely sufficient to undertake a perfunctory and superficial study of the possible copyright status of a particular work; in order to prevail over an earlier transfer, the subsequent transferee has to establish that it undertook a reasonable and sufficient search into the copyright status of a song before attempting to record title to it.  Mere ignorance of a competing transfer does not comply with either the "good faith" or "without notice" requirement of Section 205(d), if that ignorance is the result of a shoddy, incomplete or perfunctory examination into the copyright status of the work whose title is being claimed.

It is firmly established that a party seeking to record a copyright transfer has the obligation to conduct a search of the records of the U.S. Copyright Office in order to determine whether a prior transfer had taken place, regardless of whether that search would have led them to the actual registrant.  *See, e.g., LAMCO v. The Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007).  Moreover, this "search of the Copyright records **is just the starting point for an investigation into who owns which rights in a given work**." *Peer International Corp. v. LAMCO*, 161 F. Supp. 2d 38, 47 (D.P.R. 2001) (emphasis added).  As noted by the Court in *Peer*, notice is not limited to actual notice, "a legal question which may pose difficult questions of proof as to whether a subsequent transferee possessed actual knowledge of a prior notice", but also includes **constructive and presumed (or inquiry) notice or knowledge**.  When a party has notice or information to put a reasonable person on inquiry, **or has the opportunity to obtain knowledge from sources open to his investigation** (such as public records or corporation books), he is held to have notice. *Id.* at 48 (*citing General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)).

10

What constitutes "constructive notice" has been discussed in the context of another provision of the U.S. Copyright Act. In that context, courts have held that a plaintiff has notice of his claim for ownership or infringement of copyright "when a reasonably diligent plaintiff would have put on inquiry as to the existence of a right." *Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997). *See also, Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 465 (S.D.N.Y. 1999) (plaintiff's claims for co-ownership of a musical composition were barred by the statute of limitations because "the exercise of reasonable diligence" would have disclosed the existence of a claim at the time a recording of the composition "entered wide retail distribution in the United States and abroad."). *See also, Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) ("One thing is clear, however: ***the reasonable person standard incorporates a duty of diligence***. It is not a barrier to accrual that a plaintiff has failed to discover a cause of action if a reasonably diligent person, similarly situated, would have made such a discovery") (emphasis added). This "duty of diligence" applies with equal force in the present context, and it is unquestionable that LAMCO/ACEMLA failed to exercise its "duty of diligence"; thus, they should be held to have constructive or inquiry knowledge of the prior transfer and not have priority under Section 205(d).

In *LAMCO v. The Archdiocese of San Juan*, 194 F. Supp. 2d 30, 40 (D.P.R. 2001), this Court held that "good faith" is a question for the jury, or the fact-finder in this case, which "entails not only honesty in fact, **but reasonableness as well**." (Emphasis added). In this regard, Universal sustains that the particular status of "Fichas Negras" and its composer Johnny

Rodriguez should have put LAMCO/ACEMLA on notice that there were potential adverse claims regarding the copyright title to the song, to wit:

- Bernard admitted that Johnny Rodriguez was a famous composer (Tr. at page 68, lines 18-19);

- LAMCO's website lists four songs as its "most popular", one of which is "Fichas Negras" (Universal's Exhibit 3; Tr. at page 69, lines 14-24);

- The only Johnny Rodriguez song listed as one of LAMCO's "most popular" is "Fichas Negras" (*id.*);

- "Fichas Negras" was recorded by a number of "very famous singers", including Daniel Santos and Julio Jaramillo (Tr. at page 71, lines 14-18, 21-22, page 72 (lines 5-7));

- Bernard admitted that when LAMCO entered into the assignment contract with Johnny Rodriguez it knew that "Fichas Negras" had been recorded several times and that those records were out in the market. (Tr. at page 82, lines 2-10);

- In the hand-written list included as an addendum to the assignment contract (LAMCO/ACEMLA's Exhibit A), there are several references to what Bernard admitted are various record companies under the column of "Record", including several next to the name of the song at issue, "Fichas Negras". *See also*, Tr. at pages 77-78.

Furthermore, Bernard testified that he has been in the music business for something like 50 years, with all of his experience being in the Latin music arena (Tr. at page 62 (lines 10-16)); that LAMCO has been involved with copyright litigation for the past 25 to 30 years (Tr. at page

31 (lines 3-5)); that issues of copyright ownership, transfer and recordation are extremely important to LAMCO and should be to any music publisher (Tr. at page 66 (lines 14-25), page 67 (lines 1-3)); and that he is aware of the fact that music publishers and record companies have websites where one can search their catalogs to determine whether they claim the copyright to a specific work (Tr. at page 64 (lines 12-19)).

Bernard testified that LAMCO follows the "usual operating procedures" in order to "comply with the copyright office procedures". (Tr. at page 31 (lines 19-20)). Later, upon subsequent questions by LAMCO/ACEMLA's counsel, Bernard testified the following regarding LAMCO's "usual" practices:

> Q: And so when you registered the song did you do any type of research to see if this song had been registered previously?
>
> A: That is correct.
>
> Q: What did you do?
>
> A: We **usually go to the U.S. Copyright Office and make a search** even if the composer tells us.

Tr. at page 52 (lines 4-10) (emphasis added).

However, upon cross examination by Universal's counsel, Bernard had to admit: (1) that he did not personally perform the copyright investigation into "Fichas Negras" or any of the other myriad songs purportedly contained in the addenda to the Assignment Contracts; and (2) that he had previously testified in his deposition that there were no records at LAMCO of any copyright investigation being done regarding "Fichas Negras". *See*, Tr. at page 91 (lines 11-25), page 92 (lines 1-15). Furthermore, Bernard also admitted that he did not perform a search as to whether any other publishing rights claimed rights over "Fichas Negras", *see*, Tr. at page 91 (lines 21-23);

and that he does not know the dates in which "Fichas Negras" or any of the other songs contained in the handwritten list were recorded. Tr., at page 83 (lines 1-7).

While Bernard attempted to raise the possibility that such a document – evidencing a copyright investigation into "Fichas Negras" – could exist in the files at LAMCO, this Honorable Court should exclude from consideration any such possibility, because: (1) Bernard denied the existence of any such document at his deposition; (2) LAMCO/ACEMLA failed to produce any such document pursuant to a request for production of documents furnished by Universal, which was the subject of a motion and subsequent order to compel production, which would preclude any reference to any such document at this stage. *See,* Dockets No. 248-254. Thus, in terms of evidence, LAMCO/ACEMLA failed to produce any document that would establish that ***any*** copyright investigation took place, much less the thorough investigation that was warranted under the particular circumstances of the very famous and priorly recorded "Fichas Negras". Furthermore, when Bernard testified as to LAMCO's "usual practices" to verify the copyright status of a song, he limited those "usual" procedures to a search of the U.S. Copyright Office records, nothing else.

In this case, LAMCO/ACEMLA did not act reasonably in failing to undertake a thorough and exhaustive search into the copyright status of "Fichas Negras", in light of all the attending circumstances, detailed above. LAMCO/ACEMLA's conduct is tantamount to "willful blindness", which has been equated to at least "constructive notice", if not "actual notice", by courts interpreting other sections of the Copyright Act. *See, Philips Electronics North America Corporation v. Remote Solution Co., Ltd.*, 411 F. Supp. 2d 479, 482 n. 4 (D. Del. 2006). *See also, Island Software and Computer Service, Inc. v. Brunner*, 413 F.3d 257, 263 (2d Cir. 2005)

14

("willful blindness" equals "reckless disregard" of facts which could indicate that another party held the copyright rights to the work).

In short, LAMCO/ACEMLA could only argue that they followed the "usual operating procedures" – *i.e.*, merely conducted a perfunctory search of Copyright Office records – regarding the copyright status of the songs purportedly assigned by Johnny Rodriguez. **However, Bernard had to admit that he did not undertake that investigation personally, and LAMCO/ACEMLA failed to provide any records to establish that even the perfunctory Copyright Office search was carried out, much less that a thorough, legally sufficient investigation regarding the prior recordings and possible adverse claims to the copyright of "Fichas Negras" was done.** Because of this patent deficiency, LAMCO/ACEMLA cannot validly establish priority of their subsequent transfer under Section 205(d), as they did not take their transfer in good faith or without prior notice (constructive or otherwise) of any prior transfer. Their failure to comply with Section 205(d) invalidates any priority over Universal's title by virtue of their recordation of the 1995 assignment contract.

### C. LAMCO/ACEMLA's 1999 copyright registration of "Fichas Negras" and 22 other songs is invalid because it contains willful and material omissions and misstatements.

As Nimmer has stated in his famous treatise on copyright law, even when the courts have been lenient under both the 1909 Act and the current Act to not invalidate a registration certificate because of an "innocent error" committed by the applicant, "[i]f the claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid." 2-7 *Nimmer on Copyright* § 7.20. In *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162-1163 (1st Cir. 1994), the

First Circuit Court of Appeals held that an immaterial, inadvertent error in the copyright registration or deposit does not invalidate the copyright registration, but defined an error as immaterial only "if its discovery is not likely to have led the Copyright Office to refuse the application". *Id.*

That is not the situation at hand herein, where the application for copyright registration submitted by LAMCO/ACEMLA in 1999 is rife with errors or misstatements that are neither immaterial nor inadvertent, and which taken as a whole, give rise to a strong inference of fraudulent intent. Furthermore, Universal maintains that submitting twenty-three works together as a priorly unpublished collection for registration by the U.S. Copyright Office, without verification if the works at issue were in fact unpublished or not, when it is uncontested that there were recordings of the works at issue which may have occurred prior and/or subsequent to 1978, is extremely misleading and potentially fraudulent. If the U.S. Copyright Office had been apprised of the actual prior recordings (and possible prior publications of the works at issue) and which were submitted in a single registration as unpublished works, it seems unquestionable that the Copyright Office would refuse the registration and would at the very least require LAMCO/ACEMLA to ascertain and verify the publication status of **each** of the works.[10] This is sufficient to invalidate the registration as deficient.

LAMCO/ACEMLA submitted into evidence the 1999 copyright registration of "Fichas Negras" as Exhibit D ("Certificate of Registration"). The Certificate of Registration was filled

---

[10] *See, by analogy*, Exhibit E submitted by LAMCO/ACEMLA (November 13, 2002 letter from the U.S. Copyright Office in which it denied a group registration of works that were not originally released together, and where it indicated that the Office needed to know the exact year in which a song was written).

out and submitted by Jose Bernard, former VP in charge of registrations at LAMCO. *See*, Exhibit D; Tr. at page 86 (lines 18-25), page 87 (lines 1-14).

In the cross-examination of Bernard, counsel for Universal was able to point to the following errors/misstatements in said registration:

- Box Number 2 of the application calls for the birth and death date of the work's author. While Johnny Rodriguez was born in 1912 and died in 1997, when the Certificate of Registration was submitted in 1999, his date of birth was listed as 1941 and no date of death was listed, indicating that the author was still living. Bernard admitted that was a mistake. *See*, Exhibit D; Tr. at pages 89-90.

- Box Number 3A of the application calls for the date of creation of the Work. The date of creation of all 23 works submitted in the Certificate of Registration was listed as 1970. However, when asked on cross-examination, Bernard admitted that all 23 works were not in fact created in 1970. *See*, Exhibit D; Tr. at page 90, line 25, page 91 (lines 1-2).

- Box Number 3B of the application inquires whether the work being registered has been published priorly. LAMCO/ACEMLA represented to the U.S. Copyright Office that all of the 23 works had not been published prior to registration. *See*, Exhibit D; Tr., page 91 (lines 9-13).

- While "Fichas Negras" is contained as one of 23 songs in an addendum to the Certificate of Registration, the song whose title appears in the first page of the certificate of registration is "No Debimos Conocernos". *See*, Exhibit D; Tr. at page 88 (lines 4-8). In spite of the fact that "Fichas Negras" is listed as one of

17

LAMCO's most famous four songs, and it is the only one of those four songs listed in LAMCO's website that was written by Johnny Rodriguez, it was "buried" among 22 other song titles in an addendum. *See*, Universal's Exhibit 3; Tr. at page 69, lines 14-24.

LAMCO/ACEMLA pretend to minimize the cumulative effect of the errors and omissions contained in the Certificate of Registration, alleging that regardless of those mistakes, the application was processed by the U.S. Copyright Office. That, however, is not the end of the inquiry, because the Copyright's Office's processing of the registration application is a ministerial act. The correct inquiry to be made, as discussed above, is whether the material misstatements or omissions contained in the application would have caused the U.S. Copyright Office to reject the application for any reason; that would invalidate the registration. In this case, the issue of whether the works being registered were priorly published or unpublished is extremely significant. If any of the 23 songs being submitted together as an unpublished collection of works was published prior to registration, it was ineligible for such registration, and would have had to be submitted in a separate and different registration form as a published work. LAMCO/ACEMLA's total disregard for the facts surrounding the publication status of the works that it sought to register is further evidence of its deficient registration.

### *The Importance of Publication in Copyright*

The concept of "publication" is a very important one in the world of copyright law, both under the 1909 Act and the current Act. *See*, 1-4 *Nimmer on Copyright* § 4.01. The current Copyright Act defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to

distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication…" 17 U.S.C. § 101. As has been noted by Nimmer, "[w]hether or not a publication has occurred after the effective date of the current Act [January 1, 1978] can be significant." *Nimmer, op. cit.* § 4.01. Nimmer's treatise then cites several instances in which whether or not a work is published is significant; some of the most pertinent and significant are detailed below:

- A copyright notice had to appear on copies and phonorecords of decennial works that were "published" prior to March 1, 1989, the effective date of the [Berne Convention Implementation Act];

- The copyright notice that had to appear on all such decennial copies and phonorecords had to include the year of first publication;

- The deposit requirement only applies to published works;

- Unpublished works are protected under the current Act, regardless of the nationality or domicile of the author, while published works by foreign authors are protected only under certain prescribed circumstances;

- Registration in the Copyright Office must occur within five years of first publication in order for the registration certificate to constitute *prima facie* evidence of the validity of the copyright;

- Statutory damages and attorney's fees are available as to unpublished works only if registration preceded infringement, and as to published works only if registration either preceded infringement, or if registration occurred within three months after first publication;

19

- Publication during the pendency of the current Act extends the period of protection for works that were unpublished when the Act became effective.

*See*, *id.* *See also,* Thomas F. Cotter, *Toward a Functional Definition of Publication in Copyright Law*, 92 Minn. L. Rev. 1724, 1728 (June, 2008) ("Publication remains an important concept, due both to the continuing stream of copyright infringement actions involving works that may have been published without notice prior to 1989 and to the consequences that follow from publication even after that date").

As this Honorable Court can see, whether or not a work is published or unpublished has enormous legal significance. LAMCO/ACEMLA's blanket averment that the distribution of a sound recording [phonorecord] prior to January 1, 1978 did not constitute "publication" under the Copyright Act – while correct pursuant to Congress' 1997 amendment to Section 303 of the Copyright Act[11] – can only take LAMCO/ACEMLA so far. This is so because Bernard admitted that he had no knowledge of whether "Fichas Negras" was recorded and distributed ***after January 1, 1978***, which would entail that song's publication. *See,* Tr., at page 83 (lines 3-7). Over twenty-one (21) years elapsed between 1978 and 1999 – from the time that distribution of a phonorecord legally constituted publication to the copyright registration of the work in question – and over seventeen (17) years to the 1995 assignment to LAMCO/ACEMLA; however, LAMCO/ACEMLA did not inquire as to whether this extremely famous song had been recorded in all those years to determine its published or unpublished status. For that matter, LAMCO/ACEMLA did not inquire as to whether any of the other 22 songs that were registered at the same time as "Fichas Negras" had been recorded or distributed in that 21-year period, in

---

[11] 17 U.S.C. § 303(b) was amended in November, 1997 to provide: "(b) The distribution before January 1, 1978 of a phonorecord shall not for any purpose constitute a publication of the musical work embodied

20

spite of the fact that every single one of those songs had been recorded previously, as indicated in the addenda to the Assignment Contract.  If any one of those 23 songs was recorded even once between 1978 and 1999, it had been published for purposes of the Copyright Act, and the Certificate of Registration filed by LAMCO/ACEMLA is invalid and would be rejected by the Copyright Office.  Once again, LAMCO/ACEMLA's failure to undertake the most basic of inquiries into the legal status of the works it sought to register casts significant and serious doubts on the legitimacy of the documents that it submitted to the U.S. Copyright Office, and should lead this Honorable Court to invalidate its Certificate of Registration.

In conclusion, all of these factors taken together – that "Fichas Negras", an extremely famous song which had been recorded by several record companies and many famous singers, was lumped together in a 23-work registration of allegedly unpublished works under the title of another song; with the birth and death date of the author being incorrect; and with an incorrect date of creation; gives rise to a strong inference that LAMCO/ACEMLA sought to "bury" the registration of "Fichas Negras" with potentially fraudulent intent.

**WHEREFORE**, Universal respectfully requests that this Honorable Court take notice of the afore-mentioned, and that it rule that the addenda to the Assignment Contracts constitute inadmissible hearsay and thus do not establish that LAMCO/ACEMLA were legally assigned the copyright to "Fichas Negras".  In the alternative, Universal respectfully requests that that this Honorable Court: (1) determine that LAMCO/ACEMLA did not comply with the requirements of Section 205(d) of the Copyright Act and cannot claim a valid recordation of the 1995 Assignment Contracts in the U.S. Copyright Office; (2) determine that LAMCO/ACEMLA's 1999 registration of "Fichas Negras" was invalid because it contained willful and material

therein."                                             21

omissions and/or misstatements; and, (3) as a consequence, find that LAMCO/ACEMLA's 1995 assignment and 1999 registration of "Fichas Negras" does not have precedence over EMLASA's 1981 assignment and registration of said song in Mexico.

**RESPECTFULLY SUBMITTED.**

**I CERTIFY** that on this same date I filed the foregoing by uploading to the CM/ECF system, which will send automatic notices to the attorneys of record.

In San Juan, Puerto Rico, this 11th day of November, 2009.

**Attorneys for Universal Music Group**

S/ EDGARDO COLON ARRARAS
_____
**EDGARDO COLON ARRARAS**
USDC No. 129612
E-mail: ecolon@gaclaw.com

S/ MARIANA NEGRÓN-VARGAS
_____
**MARIANA NEGRÓN-VARGAS**
USDC No. 215309
E-mail: mnegron@gaclaw.com

**GOLDMAN ANTONETTI & CORDOVA, PSC**
P.O. Box 70364
San Juan, PR 00936-8364
Tel. (787) 759-8000
Fax (787) 767-9177