**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------X
BANCO POPULAR DE PUERTO RICO, et al.,

        Plaintiffs,

    vs.

LATIN AMERICAN MUSIC CO. INC., et al.,

        Defendants.

Civil Action No. 01-1142 (GAG)

---------------------------------------------------------X
LATIN AMERICAN MUSIC CO. INC., et al.,

        Plaintiffs,

    vs.

BANCO POPULAR DE PUERTO RICO, et al.,

        Defendants.

Civil Action No. 01-1461 (GAG)

---------------------------------------------------------X

## THE PEER PARTIES' OPPOSITION TO THE ESTATE OF CATALINO CURET ALONSO'S MOTION TO INTERVENE

Defendants, Peer International Corporation, Peer International Corporation of Puerto Rico, and Peer Music Ltd., Broadcast Music, Inc., EMI Park Groove, Inc., Sonido, Inc. and EMI Catalogue Partnership (collectively, the "Peer" parties), by and through their attorneys Loeb & Loeb LLP and Adsuar Muniz Goyco Seda & Perez Ochoa, PSC, as and for its Opposition to the Estate of Catalino Curet Alonso's ("Curet Alonso Estate" or "Estate") Motion to Intervene (Dkt. No. 452), states as follow:

**PRELIMINARY STATEMENT**

In this copyright ownership and infringement action, the Estate of Catalino Curet Alonso (the "Curet Alonso Estate" or "Estate") seeks to intervene in order to assert entirely new and unrelated breach contract claims against the Peer Parties.[1] The Estate claims that, under certain songwriter agreements between Curet Alonso and Fania, it is entitled to a portion of the funds that Banco Popular de Puerto Rico ("BPPR") deposited with the Court pending determination of the copyright ownership claims. However, under those same songwriter agreements, the Estate's right to receive royalties is conditioned on the Peer Parties' right to apply income otherwise payable as royalties to reimburse their legal fees incurred in defending Latin American Music Co. and ACEMLA de Puerto Rico's ("LAMCO/ACEMLA") challenge to their copyright ownership. The cost of this litigation has been significantly greater than the relatively modest settlement proceeds allocated to the Peer Parties in respect of the Curet Alonso songs. Once those proceeds are applied to legal fees and expenses, there will likely be nothing left of the settlement fund for the Estate or any other royalty participant to recover.

This is both appropriate and just because the copyright ownership disputes arose due to Curet Alonso's unlawful attempt to assign his musical works to LAMCO/ACEMLA after he had already transferred the same works to the Peer Parties decades earlier. Curet Alonso's estate should not be allowed to benefit from his deceitful double-dealing.

Moreover, the Estate's motion to intervene is untimely, as it comes after eight years of litigation, including full fact discovery, a half-dozen summary judgment motions, and two lengthy settlement conferences resulting in a settlement agreement and entry of judgment

---

[1] Although the Estate moves to intervene against all of the Peer Parties, the only contracts in issue are between Curet Alonso and Fania Publishing, Inc. ("Fania"), a predecessor in interest to only Sonido, Inc.

dismissing the Peer Parties under the terms of that settlement. Curet Alonso, who was a <u>named plaintiff</u> in the consolidated copyright infringement action, had notice of every phase of this litigation, including BPPR's deposit of money with the Court. Because the Estate acquired all of Curet Alonso's rights and responsibilities, it is deemed to have had the same notice. As a result, the Estate's motion is clearly untimely and should therefore be denied.

The Peer Parties would be severely prejudiced if the Estate were permitted to undo the carefully crafted settlement agreement and the judgment dismissing all claims against them. The Estate, on the other hand, would suffer no prejudice from denial of its motion, as there are no funds for it to collect after deduction of the Peer Parties' reasonable attorneys fees.

Moreover, the Estate's interest in obtaining royalties under the Curet Alonso songwriter agreements is adequately represented by the Peer Parties who, under those agreements, are entrusted with collecting income and distributing royalties for Curet Alonso's songs. The Estate's involvement would therefore add nothing but additional expense and delay to this already prolonged and costly litigation.

Even if the Estate had a right to intervene to assert its royalty claims (which it does not) the Court would not have jurisdiction to decide those claims because they arise only under state law, and the federal copyright ownership claims involving Curet Alonso's songs have all been dismissed. Lastly, the Estate's motion must be denied because it fails to attach a proposed pleading as mandated by the Federal Rules of Civil Procedure.

## **BACKGROUND**

On or about January 31, 2001, BPPR filed suit against several music publishers, including the Peer Parties, LAMCO/ACEMLA and others, seeking to determine the ownership to copyrights in certain songs used in BPPR's Christmas Specials. The copyright ownership

dispute arose because several composers, including Curet Alonso, had transferred their copyrighted works to the Peer Parties in the 1960s, and then purported to transfer the same works to LAMCO/ACEMLA in the 1990s.  Because BPPR was unsure which group of music publishers owned the copyrighted songs, and therefore to which group it owed royalties for the Christmas Specials, on May 25, 2001, BPPR deposited $179,620 with the Court.  (Dkt. 25.)

On April 19, 2001, LAMCO/ACEMLA and several songwriters, including Curet Alonso, filed an action against BPPR for copyright infringement of many of the same songs involved in the copyright ownership dispute.  The two actions were consolidated on August 6, 2001.  (Dkt. 38.)  Curet Alonso therefore had notice of all filings in both consolidated actions since at least August 2001.

Following the resolution of other related litigation, the parties engaged in extensive discovery during the spring and summer of 2009.  During August and September 2009, the parties briefed at least six separate motions for summary judgment, which the Court decided on October 9, 2009.

Also on October 9, 2009, the Court held a lengthy pretrial/settlement conference attended by all attorneys of record.  (Dkt. 428.)  On October 10, 2009, the Peer Parties filed an informative motion stating that they had reached a settlement with LAMCO/ACEMLA under the terms presented to the Court during the October 9, 2009 conference.  (Dkt. 418.)  The settlement contemplated distributing the funds BPPR had deposited with the Court (the "Settlement Funds") according to the number of songs each music publisher claimed to own.  That same day, the Court entered an Order directing the Peer Parties and LAMCO/ACEMLA to file a joint motion to dismiss based on the settlement, and noting that a second settlement conference would be held on October 13, 2009.  (Dkt. 420, 424.)  A bench trial was held on October 16, 2009 to decide the

ownership of one song disputed between LAMCO/ACEMLA and another music publisher, Universal Music, Ltd.  (Dkt. 429.)

In accordance with the Court's October 10, 2009 Order, on October 27, 2009 the Peer Parties and LAMCO/ACEMLA filed their Confidential Settlement Agreement ("Settlement Agreement") and the Peer Parties moved for an Order, pursuant to the Settlement Agreement, directing the Court to disburse to the Peer Parties their portion of the Settlement Funds.  (Dkt. 433, 434.)  Three days later, on October 30, 2009, the Court entered an Order approving the Settlement Agreement, as well as an Order granting the Peer Parties' motion to disburse their portion of the Settlement Funds, which amounted to approximately 40% of the Settlement Funds. (Dkt. 435, 436.)  Finally, on October 30, 2009, the Court entered judgment dismissing all claims against the Peer Parties pursuant to the Settlement Agreement. (Dkt. 437.)

On October 31, 2009, the Curet Alonso Estate moved for a stay of the Court's Order granting the Peer Parties' motion to disburse the Settlement Funds, stating that it intended to file a motion to intervene as of right under Fed. R. Civ. P. 24(a).  (Dkt. 438)  The Estate filed its motion to intervene of right on November 9, 2009.  (Dkt. 452.)  In its motion, the Estate asserts that "[a]s a composer of such songs, whenever [Curet Alonso] assigned them to [*sic*] Publishing Company, he was entitled to, at least, a fifty percent (50%) share in music royalties" (Estate's Mot. at 2) and asks the Court to withhold the Settlement Funds that are to be paid to the Peer Parties.

The Estate also claims that on March 31, 2006, Peer International Corp. and its sister company, Southern Music Publishing Company, Inc., assigned their rights to certain of Curet Alonso's songs to Curet Alonso's heirs.  (Estate's Mot. at 6-7.)  Although that assignment did not involve Fania or any of the Curet Alonso songs at issue in this litigation, and it was, by its

5

own terms, effective as of March 31, 2006, the Estate paradoxically claims that it is "entitled to any sums of money related to Tite Curet's compositions to which the Peer parties may have had any rights in the *past*." (Estate's Mot. at 6) (emphasis added).

For the reasons discussed below, the Estate's motion to intervene should be denied.

## ARGUMENT

The First Circuit has established that a motion to intervene of right under Rule 24(a)[2] will be denied unless the movant meets four criteria. "First, the application must be timely. Second, the applicant must have a direct and substantial interest in the subject matter of the litigation. Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. Finally, the applicant's interest must be inadequately represented by existing parties." *Caterino v. Barry*, 922 F.2d 37, 39-40 (1st Cir. 1990) (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989)). "An 'applicant who fails to meet any one of these requirements cannot intervene.'" *United States v. Puerto Rico*, 227 F.R.D. 28, 30 (D. P.R. 2005) (quoting *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992)).

As shown below, the Curet Alonso Estate fails on all four of these requirements.

**I.  THE CURET ALONSO ESTATE CANNOT DEMONSTRATE THAT ITS MOTION IS TIMELY**

The First Circuit has recognized that Rule 24's timeliness requirement is of "first importance" in ruling on a motion to intervene. *Caterino v. Berry*, 922 F.2d at 40 (citation

---

[2] Rule 24(a), "Intervention of Right," provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

6

omitted); *see also Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) ("We have made it pellucidly clear that Rule 24's timeliness requirement is of great importance."). The purpose of the timeliness requirement is to uphold equitable principles. As the First Circuit has recognized, "it [would be] inequitable to allow a latecomer, who fiddled while Rome burned, to collect a share of the dire insurance." *Greenblatt*, 964 F.2d at 1234.

In considering the timeliness requirement, courts in this Circuit consider: "(i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the proposed intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention." *Caterino*, 922 F.2d at 40 (quoting *Culbreath v. Dukakis*, 630 F.2d 15, 17, 20-24 (1st Cir. 1980)). All four of these factors weigh against the Estate's intervention.

### A. Curet Alonso and the Estate Had Notice of the Settlement Funds More than Eight Years Ago

"One of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the exercise of reasonable diligence." *R&G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 584 F.3d 1, 9 (1st Cir. 2009). "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." 7C Wright, Miller & Kane, *Fed. Prac. and Proc.* § 1916 at 539-540 (3d ed. 2007) (hereinafter "*Wright & Miller*").

In *United States v. Puerto Rico*, 227 F.R.D. 28, the court held that "[i]ntervenors have failed to comply with the first requirement, timeliness" where the suit was filed four years before the motion to intervene, and the proposed intervenor had notice that its interest might be adversely affected two years before the motion to intervene was filed. *Id.* at 31. Even the Estate

recognizes that one of the timeliness factors is "when the intervener learned of the effect of the pending lawsuit on his interest[.]" (Estate's Mot. at 4)

The Estate unreasonably delayed bringing its intervention motion for an even longer period of time than the movant in *United States v. Puerto Rico*. BPPR's copyright ownership action was commenced on January 31, 2001, and the copyright infringement action – in which Curet Alonso was a named plaintiff – was commenced on April 19, 2001, more than <u>eight years</u> before the Estate's motion to intervene. Moreover, the docket shows that the Settlement Funds in which the Curet Alonso Estate now claims a royalty interest were deposited into Court on May 25, 2001. (Dkt. 25.) Curet Alonso therefore had notice of the existence of the Settlement Funds since at least August 6, 2001, when the infringement action was consolidated with BPPR's copyright ownership action. Under Article 599 and 603 of the Civil Code, a decedent's rights and obligations are transmitted to his heirs at the moment of death. *See* 31 LPRA §§ 2081, 2085; *Cabassa v. Registry of Property*, 116 D.P.R. 861 (1986) (successors in mortis causa are subrogated in the deceased's assets and rights). As a result, the Estate stands in the shoes of Curet Alonso, and is charged with whatever notice he had.[3] There is therefore no question that the Estate knew or should reasonably have known of its purported interest in the action more than <u>eight years</u> before its belated motion to intervene.[4]

Furthermore, "the status of the case at the time when intervention is attempted" is "highly relevant" and "[t]he more advanced the litigation, the more searching the scrutiny which the

---

[3] Even if the Estate were somehow not charged with having the same notice as Curet Alonso had, the Estate came into existence and acquired all of Curet Alonso's rights and responsibilities when he died on August 5, 2003, and therefore had notice of the existence of the Settlement Funds for at least six years.

[4] Notably, the Estate's current attorney, Mr. Pamias-Portalatin, previously represented one of the defendants in the BPPR action, Guillermo Venegas Lloveras, Inc., until he was replaced by other counsel on August 19, 2008. (Dkt. 207.) Thus, even the Estate's counsel has been fully aware of the action and of the existence of the Settlement Funds for many years.

motion must withstand." *Greenblatt*, 964 F.2d at 1231. In *United States v. Puerto Rico*, the court denied the motion to intervene where the "proceeding has advanced to a stage in which there is little for the Court to do other than oversee the compliance with the settlement agreement between the parties." 227 F.R.D. at 31. Because of the important interests in finality of judgments, "courts have historically viewed post-judgment intervention with a jaundiced eye in situations where the applicant had a reasonable basis for knowing, before final judgment, that its interest was at risk." *Greenblatt,* 964 F.2d at 1231.

As in *United States v. Puerto Rico*, the Estate's motion comes after all claims have been dismissed, judgment entered, and all that is left to do is distribute the Settlement Funds according to the Settlement Agreement. Moreover, as discussed above, the Estate had ample notice and opportunity to assert whatever royalty claims it believed it had prior to the settlement and dismissal of claims against the Peer Parties. This factor therefore cuts sharply against the Estate's motion to intervene.

> **B. The Peer Parties Would Be Prejudiced if the Estate Were Allowed to Overturn the Settlement Agreement and the Judgment Dismissing the Peer Parties**

Courts have recognized that parties to a fully executed settlement agreement will be prejudiced if the agreement is disturbed by a belated intervenor. *See Greenblatt*, 964 F.2d at 1232 (the purpose of the timeliness requirement is "to prevent last minute disruption of painstaking work by the parties and the court."); *R&G Mortgage*, 584 F.3d at 9 (denying motion to intervene where intervention was aimed at disrupting a settlement agreement).

Courts are particularly unwilling to allow intervention after judgment has been entered based on the settlement agreement. *See Greenblatt*, 964 F.2d at 1232 ("Once settlement efforts are completed and embodied in a final judgment, the parties expected to be able to tailor their future actions and decisions in reliance on that judgment. It follows inexorably that modifying a

settlement term can knock the props out from under justifiable reliance of this sort."); 6 James W.M. Moore, *Moore's Federal Practice* § 24.21[2], at 24-88 (Matthew Bender 3d ed. 2009) (hereinafter "*Moore's Federal Practice*") ("Generally, a motion to intervene after the parties have settled and the case has been dismissed will clearly prejudice the settling parties, because the movant seeks to revive the dismissed action.") (citation omitted).

As the Court is well aware, the Peer Parties and LAMCO/ACEMLA reached the Settlement Agreement only after eight years of protracted litigation followed by extensive settlement negotiations and the assistance of the Court. Moreover, judgment has been entered pursuant to the Settlement Agreement dismissing all claims against the Peer Parties. The Peer Parties are entitled to rely on the finality of that judgment. There is no question that the Estate's motion is designed to frustrate the court-approved Settlement Agreement. Indeed, obstructing the Settlement Agreement by withholding disbursement of the Settlement Funds is the *sole purpose* of the Estate's motion. Allowing the Estate to intervene would therefore result in significant prejudice to the Peer Parties.

### C. The Estate Would Suffer No Prejudice From Denial of Its Motion

"The penultimate factor in the four-part test focuses on what prejudice an applicant will suffer if intervention is denied. This requires that [the Court] determine whether the movant, had intervention been allowed, would have enjoyed a significant probability of success on the merits." *Greenblatt*, 964 F.2d at 1232 (citations omitted).

The Estate claims it is entitled to 50% of that portion of the Settlement Funds applicable to songs written by Curet Alonso as royalty payments under certain contracts with the Peer Parties. Copies of Curet Alonso's songwriter agreements with Sonido's predecessor (Fania) are

attached as Exhibit 1.[5]  Although those songwriter agreements do provide for Curet Alonso to receive royalties for certain uses of his songs, they also entitle Sonido to withhold any monies otherwise payable to Curet Alonso as royalties in the event claims are asserted challenging Sonido's rights to the compositions, and to deduct from such monies Sonido's damages, including its reasonable attorneys fees.[6]  As a result, because LAMCO/ACEMLA challenged Sonido's ownership of the Curet Alonso compositions in this action, Sonido is entitled to retain any funds payable to Curet Alonso and deduct its attorney's fees from those funds.

Over the course of this eight year litigation, the Peer Parties have expended hundreds of thousands of dollars defending LAMCO/ACEMLA's copyright ownership claims.  Indeed, in 2009 alone, legal fees have been $210,890, not including local counsel's fees.  Those fees far outweigh the 40% of the Settlement Funds allocated to the Peer Parties as part of the Settlement Agreement.  Thus, after properly applying the Peer Parties' portion of the Settlement Funds to cover their attorney's fees and expenses, there is nothing left for Curet Alonso or his Estate to recover.  The Estate therefore cannot demonstrate a significant probability of success on the merits, and would suffer no prejudice from a denial of its motion to intervene.

### D. Equitable Considerations Require Denial of the Estate's Motion

"This last prong of the test necessitates consideration of unusual features militating in favor of, or against, intervention." *Greenblatt*, 964 F.2d at 1233.  Here, the equities weigh strongly against the Curet Alonso Estate.  The underlying dispute over Curet Alonso's

---

[5] Notably, the Estate did not attach any of these agreements to its papers, and merely asserts that "[a]s composer of such songs, whenever he [Curet Alonso] assigned them to Publishing Company, he was entitled to, at least, a fifty percent (50%) share in music royalties." (Estate's Mot. 1.)

[6] *See* Exhibit 1, Section 11(a) ("If a claim is presented against the Publisher [Fania] alleging that the Composition is an infringement or invasion of the rights of others," Fania may retain all monies payable to Curet Alonso, and Fania's damages in respect of such claims "including reasonable attorney's fees . . . shall not be limited to the monies retained hereunder.")

11

copyrighted compositions arose because Curet Alonso attempted to sell copyrights to LAMCO/ACMELA even though he had already transferred those same copyrights to Sonido's predecessor decades earlier. (*See* Peer Parties' Motion for Summary Judgment, Dkt. 328 at 2, 6, 17-18.) If the Estate were allowed to intervene to assert claims to the Settlement Funds, the Estate would effectively be allowed to profit from Curet Alonso's duplicitous double-dealing.

In sum, all factors weigh against the timeliness of the Estate's motion.

## II. THE ESTATE DOES NOT CLAIM A DIRECT INTEREST IN THE SUBJECT OF THE ACTION

The First Circuit has acknowledged that "the intervenor's claims must bear a sufficiently close relationship to the dispute between the original litigants" and its interest must be "'direct, substantial, and legally protectible.'" *Travelers Indemnity Co.*, 884 F.2d at 638 (quoting *Flynn v. Hubbard,* 782 F.2d 1084, 1092 (1st Cir. 1986) (Coffin, J., concurring).

The underlying litigation involved disputes over the ownership of certain copyrighted compositions, and whether BPPR infringed those copyrights by using them in its Christmas Specials. As noted above, the Curet Alonso Estate does not claim to own any of the disputed copyrights, and therefore has no interest in the subject of the action.[7] Instead, the Estate claims merely a royalty interest in the Settlement Funds. But that interest arises only through Curet Alonso's songwriter agreements with Sonido's predecessor, Fania. Under those agreements, only Fania or its successor, and not Curet Alonso or the Estate, is entitled to collect royalties for

---

[7] The Estate's assertion that Peer Music International Corp. and its affiliate, Southern Music Publishing Company, Inc. relinquished their rights to certain Curet Alonso compositions as of March 31, 2006 is wholly irrelevant for two reasons. First, none of the Curet Alonso works involved in this action are included in the list of relinquished works (*Compare* Estate's Mot. at 4 n.2 *with* Estate Mot. at Ex. 3.) That is because all of the Curet Alonso compositions at issue are owned by Sonido (successor to Fania), not Peer or Southern. Second, even if the compositions at issue were owned by Peer or Southern, the relinquishment was effective as of March 31, 2006, and therefore could not entitle the Estate to any royalties with respect to the pre-2001 uses of Curet Alonso's works that were involved in this action.

12

the subject Curet Alonso compositions. As a result, the Estate's has no "direct" interest in the Settlement Fund, and its motion to intervene should be denied. *See Travelers Indemnity Co.*, 884 F.2d at 638. Stated another way, neither Curet Alonso nor the Curet Alonso Estate had standing to obtain royalty payments directly from BPPR. As such, it has no interest in this income now.

If the Estate believes that Sonido has not appropriately distributed royalties pursuant to the Curet Alonso songwriter agreements, its proper remedy would be to commence a separate, independent action in a court of competent jurisdiction for breach of contract,[8] but it would still not have any direct interest in the subject of this action or the Settlement Funds themselves.

### III.  RESOLUTION OF THE UNDERLYING ACTION WILL HAVE NO EFFECT ON THE ESTATE'S CLAIMED RIGHT TO ROYALTIES

Rule 24(a) requires that the prospective intervenor's interest be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest[.]" Fed. R. Civ. P. 24(a). Even assuming that the Estate did have a sufficiently direct interest in the subject of this copyright ownership and infringement action – as opposed to an interest in the Curet Alonso songwriter agreements – resolution of the underlying action and disbursement of the Settlement Funds will not affect the Estate's interest in those songwriter agreements. As explained above, the Settlement Funds will properly be applied towards the substantial legal costs of this litigation, and there will be nothing left for the Estate to recover.

---

[8] Of course, in any such action, Sonido would likely assert counterclaims against the Estate based on Curet Alonso's improper attempt to transfer to LAMCO/ACEMLA copyrights that he had already transferred to Fania, and it would seek to recover the full extent of its attorney's fees.

### IV. THE ESTATE'S INTEREST UNDER THE SONGWRITER AGREEMENTS IS ADEQUATELY REPRESENTED BY THE MUSIC PUBLISHERS WHO ARE CHARGED WITH COLLECTING INCOME AND DISTRIBUTING ROYALTY PAYMENTS

Intervention of right requires not only a showing of a legally protectable interest, but a showing that the existing parties do not adequately represent that interest. Fed. R. Civ. P 24(a)(2). "[W]here the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." *Costa v. Margotta, Gund, Budd & Dzera, LLC,* 281 Fed. App'x 5, 8 (1st Cir. 2008) (Unpublished) (citations omitted).

The Estate makes absolutely no showing why the current parties do not adequately represent its interests, and merely asserts, without any support, that "[a]t this moment it is clear that the parties involved in this transaction do not have the intention of paying the corresponding share of royalties to the Curet heirs[.]" (Estate's Mot. at 2.) In fact, the Curet Alonso songwriter agreements transferred Curet Alonso's copyrighted compositions to Fania, and charged Fania or its successor with collecting income generated through use of the Curet Alonso compositions and paying the writer's share to the royalty participants (after deducting attorney's fees). Sonido's and the Estate's interests with respect to the Settlement Fund are therefore identical – to obtain as large a portion as possible. The Estate makes no showing why its interests with respect to the Settlement Fund are not adequately represented, and its motion should therefore be denied.

### V. THE COURT HAS NO JURISDICTION OVER THE CURET ALONSO ESTATE'S PURELY STATE-LAW CONTRACT CLAIM

Even if the Estate could establish its entitlement to intervene of right (which it cannot), the its motion should be denied because the Court would have no independent grounds for jurisdiction over the Estate's proposed claims. 7C *Wright & Miller* § 1920 at 491 ("[A]n intervenor can proceed to decision after a dismissal of the original action . . . if there are independent grounds for jurisdiction of the intervenor's claim").

The Estate essentially claims that the Peer Parties breached the Curet Alonso songwriter agreements by not paying royalties owed to it.  However, there would be no federal subject matter jurisdiction over such claims because it arises purely under state law.  *See* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A][2], at 12-22.5 (Matthew Bender, Rev. Ed. 2009) ("State and not federal courts have jurisdiction in contract actions for nonpayment of royalties arising out of the exploitation of copyrighted works.") (collecting cases).  There would also be no supplemental jurisdiction over the Estate's state-law claims because all federal claims related to the Curet Alonso compositions have already been dismissed.  *See* 28 U.S.C. § 1367.  Thus, even if the Estate met all requirements under Rule 24(a) (which it does not), its motion should still be denied.

## VI.     THE ESTATE'S FAILURE TO ATTACH A PROPOSED PLEADING REQUIRES DENIAL OF ITS MOTION

The Peer Parties are, to some degree, left to guess what claims the Estate would actually assert if it were allowed to intervene.  For that reason, Rule 24 provides that a motion to intervene "*must* . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c) (emphasis added).  Because the Estate does not attach any proposed pleading, its motion should be denied.  *See* 6 *Moore's Federal Practice* § 24.20, at 24-81 to 24-82 ("The selection of the word 'must' in the restyling of Rule 24(c) was not in error . . . [A] district court will be unable to evaluate a motion to intervene, and the existing parties will be unable to make a meaningful response to the motion, unless they know exactly what claims or defenses the movant proposes to bring to the lawsuit.  A proposed pleading is, therefore, an essential part of the motion.").

**CONCLUSION**

For all the above reasons, the Peer Parties respectfully request that the Curet Alonso Estate's Motion to Intervene be denied.

Dated: New York, New York
November 16, 2009

        ADSUR MUÑIZ GOYCO SEDA & PEREZ OCHOA, PSC


By: S/KATARINA STIPEC

Katarina Stipec (206611)
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel: (787) 756-9000
Fax: (787) 756-9010


LOEB & LOEB LLP


By:_____
   Barry I. Slotnick
   345 Park Avenue
   New York, New York 10154-1895
   (212) 407-4000

   *Attorneys for Peer International Corporation, Peer International Corporation of Puerto Rico, and Peer Music Ltd., Broadcast Music, Inc., EMI Park Groove, Inc., Sonido, Inc. and EMI Catalogue Partnership*

CERTIFICATE OF SERVICE

      CERTIFICATE OF SERVICE: I hereby certify that the forgoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will in turn send notification of such filing to all counsel of record.

S/KATARINA STIPEC

NY808894.4
202907-10002