# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO ET ALS., | * | CV. 01-1142 (GAG) |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| v. | * | |
| | * | |
| LAMCO/ACEMLA, ET ALS., | * | |
| | * | |
| DEFENDANT. | * | |

| | | |
|---|---|---|
| LAMCO/ACEMLA ET ALS., | * | CV. 01-1461 (GAG) |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| v. | * | |
| | * | |
| BANCO POPULAR DE PUERTO RICO ET ALS., | * | |
| | * | |
| DEFENDANT. | * | |


## LAMCO/ACEMLA PARTIES POST-TRIAL BRIEF IN OPPOSITION TO UNIVERSAL'S BRIEF

**TO THE HONORBLE COURT:**

**COMES NOW** defendant/plaintiff, LAMCO/ACEMLA parties, through the undersigned attorney of record and respectfully submits its Post-Trial Brief in Opposition to Universal parties, Post-Trial Brief with respect to the song "Fichas Negras", bench trial held on October 16, 2009, as follows:

## I. __INTRODUCTION__

The claim of ownership regarding the song "Fichas Negras" composed by Johnny Rodriguez Lozada is at issue. BPPR had filed its declaratory judgment case named Universal and LAMCO as defendants, the lead case in this consolidated litigation. In that same year, LAMCO/ACEMLA had filed suit for copyright infringement against BPPR for the use of this song in the 1999 Special. (Cv. 01-1461(GAG).

The facts surrounding the ownership "Fichas Negras" have basically been decided in this Honorable Court's Opinion and Order granting of LAMCO/ACEMLA's Motion for Summary Judgment with some dispute by LAMCO/ACEMLA as to the validity of the alleged Contract in Mexico and, if valid, its duration. Finally, the revisited and moot applicability of the Berne Convention is not an issue that should be addressed as this Court has already ruled and decided in LAMCO/ACEMLA's favor in their motion for summary judgment. See Dk. 408. This Court denied Universal's Motion for Summary Judgment and at Dk. 414, granted LAMCO/ACEMLA's Motion for Summary Judgment.

On October 13, 2009, the parties field their Pre-Trial Memorandum Order. See Dk. 427. Said Pre-Trial Order Universal raised only the issue that the assignment failed to comply with applicable legal requirements, and that said assignment and recordation were done in bad faith. Dk 427, at page 3.

## II. __PROCEDURAL POSTURE AND LAW OF THE CASE__

The Universal parties have filed a Post-Trial Brief that attempts to disregard the procedural posture and the **Law of the Case** asking the Court to find in the alternative,

that the LAMCO/ACEMLA'S 1995 assignment and 1999 Registration does not have precedence over EMLASA'S 1981 purported assignment of said song in Mexico.

As the Universal motion for summary judgment was denied and this Court found in favor of LAMCO/ACEMLA as to the issue of priority between their conflicting interest. This is the Law of the Case. This Honorable Court found that the EMLASA's 1981 recordation of its assignment of copyright "Fichas Negras" …does not constitute recordation for purpose of 17 USC section 205(d"). "The recordation of transfers and other documents for purposes of said disposition must be made in the U.S. Copyright Office. See 17 USC section 205(a)." Dk. 408, page 1, lines 21-25. **This Court further held that "Universal does not argue that LAMCO took the assignment with notice of its prior transfer, nor does it allege that LAMCO did not pay valuable consideration. Universal's only argument is that LAMCO's transfer was not "duly recorded" because it was not done within one year month of the transfer"**.

In their Post-Trial Brief, Universal attempts to argue something different and they are barred from doing so as any new arguments not previously raised are deemed waived.

The Court also ruled and found that "Universal also pointed that the recordation document in this case lists too many songs for it to conform with the specificity requirements of 17 USC section 205(d). This Court concluded, [H]owever, that disposition merely deals with whether or not a recordation document in the Copyright Office may give constructive notice of the facts stated therein. Such disposition is inapposite as to whether or not LAMCO's transfer takes priority over EMLASA's, an issue that is governed by 17 USC section 205(d)." Id, lines 4-13

**The Court concluded that "the transfer of the copyright over "Fichas Negras" to LAMCO takes priority over the prior transfer to EMLASA under 17 USC section 205(d)."** Id, page 2, lines 14-17. (emphasis ours).

The **Law of the Case** is also based on this Court's granting LAMCO/ACEMLA's Motion for Summary Judgment. See Dk. 409. The Court's Opinion and Order held that the USCO registration requirement remained in effect for works of U.S. origin, finding that this song, "Fichas Negras" "being a work of U.S. origin," and thus rejecting Universal's argument of the applicability of the Berne Convention. The Court granted Summary Judgment on this ground and dismissed any claims for copyright infringement asserted by Universal under the Copyright Act regarding "Fichas Negras". Dk. 409, p. 2, lines 2-6.

Therefore, Universal the Post-Trial Brief, must be restricted to the Law of the Case and limited to the issues raised at trial and cannot attempt to collateral attack and circumvent the summary judgment orders already decided by this Honorable Court at Dk. 408 and 409.

### III. UNDERSAL DID NOT PRESENT ANY EVIDENCE AT TRIAL THAT PROVED ANY BAD FAITH

At the bench-trial, Universal's did not submit any direct evidence in support of its argument of bad faith. Universal did not present any testimonial evidence from their sole witness, Mr. Fernandez to this end. Universal did not present any documentary evidence to establish any fact regarding the issue of bad faith. All of Universal's legal arguments in their Post-Trial Brief are not based upon facts established at trial, as their only attempt to prove bad faith is from only the cross-examination of LAMCO/ACEMLA defendant's witness, Mr. Bernard, which it did not achieve as the record is absent of any such finding.

On October 16, 2009, this Court held a Bench Trial regarding the ownership of the song, but the trial was limited to the only issue raised by defendant Universal in their Pre-Trial Memorandum as the whether or not the assignment/transfer between Johnny Rodriguez and LAMCO/ACEMLA complied with all the legal requirements.

**<u>UNIVERSAL WITNESS EDDIE FERNANDEZ'S TESTIMONY</u>**

Universal presented one (1) witness, Eddie Fernandez, on behalf of Universal, LTD and rested. The exhibits used were three (3) exhibits, Exhibit 1 and 2. They were objected to by LAMCO. See Trial Transcript (TT) at pages 8-10. The Court stated that "but if he can authenticate them then there may be a matter of the weight of the evidence and you may very well be right". See TT p. 10, lines 13-16. The Court noted the objection, it was overruled without prejudice. TT p. 11, lines 10-11. The objection of defendants LAMCO was for the lack of authenticity and compliance with Certification legal requirements of the United State Consular in Mexico and the Mexico Office of Foreign Affairs to certify that the filing of that office is an Official and valid registration. The third exhibit was 3 pages of the LAMCO webpage. The testimony by Mr. Fernandez was as to alleged ownership of the song in Mexico only. See Dk. 431.

Universal through their witness, Mr. Fernandez, testified that in 1981 the contract was signed and at that time there was no legal relationship between EMLASA and Universal, and not a party to the contract. See TT p. 14, lines 4-13. The Court observed that the contract stated Santurce, PR, but was notarized in Mexico, that the notary was not from Puerto Rico which Universal admitted. See TT at p. 15, lines 12-21. Mr. Fernandez did not know whether Johnny Rodriguez went to Mexico. Id, pages 15 line 24-25, p. 16 at line 1. The contracts establishing the legal relationship that Universal purchased

Polygram were in Miami and not produced.  See TT at p. 17, lines 11-19.   He did not have the renewal contracts from 1984-1994, TT at p. 18, lines 1-23, and Johnny Rodriguez never signed with Universal.  See TT at p. 23, lines 4-5.

It is undisputed and agreed to that there is no other registration existent, today, nor in 1995, nor 1999, when it was first registered and has never registered the alleged assignment of the song in the United States. See TT Bernard testimony, p. 103, lines 17-25, p. 104, 1-6.  The copyright investigation for "Fichas Negras" was done by LAMCO and that the USCO would not process double registration.  See TT p. 104, 12-15, 22-23.

Defendant's sole witness testimony continued to state that no lawsuit had ever been filed by Universal regarding the song (See TT at p. 23, lines 19-22) or in no other forums than Mexico (TT at p. 24, 13-19).  In fact, none could have been brought.

The record is clear on defendant Universal's case-in-chief that no testimony over any issue of bad faith was elicited from Universal's witness Mr. Fernandez.

The Court issued its Minutes on that same date.  See Dk. 429.

## LAMCO/ACEMLA WITNESS RAUL BERNARD'S TESTIMONY

At trial, Plaintiff presented testimonial and documentary evidence by its' President, Mr. Raul Bernard, that was not rebutted by defendant Universal.

The testimony was clear that LAMCO obtains assignments and registers them, thousands of songs, through regular SOP or usual procedures…..that our offices would comply with the copyright office procedures.   See TT p. 21, lines 9-22.

He testified to that he knew Johnny Rodriguez, was present at his signature with the ACEMLA contract.  TT p. 33, lines 16-17, He testified to the LAMCO assignment, with the attachment in the composers own signature, signed in front of him contained the

song "Fichas Negras"  See TT p. line 35, line 25, p. 36, lines 1-24.  The Exhibit A LAMCO Contract states that there is an Addendum, and that the five pages are the Addendum to the Contract.  See Re-direct TT, p. 107, lines 3-15.   See also that the handwriting with song "Fichas Negras" was in the composer Johnny Rodriguez, handwriting. See TT p. 38, lines 3-18,

The five (5) plaintiff's exhibits presented were admitted by the Court, as business records, and the original copies were present in Court.    TT p. 39, lines 1-15, p. 44, line 24-25, p. 45, lines 1-6.  See also Dk. 430.

The Trial Court stated regarding the issue to be tried as "[H]e recorded it in the United States,   There is no issue."  "But if it was not properly recorded it may very well be a defense."  See TT at p. 107, lines 14-18.


## IV.  LEGAL ARGUMENT

## LAMCO HAS PROVEN OWNERSHIP OVER DISPUTED SONG

The song. "Fichas Negras" was authored by Johnny Rodriguez which is undisputed.   The Court concluded that "the transfer of the copyright over "Fichas Negras" to LAMCO takes priority over the prior transfer to AMMLASA under 17 USC section 205(d)." 408, page 2, lines 14-17.

LAMCO has priority and it is the only entity able to bring suit in the United States.  See Opinion & Order at Dk. 408-409.

At trial, defendant LAMCO/ACEMLA through Exhibit A, B, and C and D, Exhibit A-Certificate of Recordation, dated May 23, 1995, Volume 3118, Pages 476-486, Ex.-B, Vol. 3118 pages 487-495; Ex.-C-Certificate of Recordation Vol. 3504, Doc. 741,

dated November 21, 2003, and Ex. D-the USCO Certificate of Registration, PAU 2-357-741. This Certificate of Recordation contains the March 31, 1995 Contract between LAMCO and composer Johnny Rodriguez, with seven (7) pages of songs typed and handwritten, includes Fichas Negras.  The Trial Judge admitted into evidence as a business record.

At trial, it was established and undisputed that LAMCO filed its Registration on March 22, 2999.  See also Exhibit E USCO Letter to LAMCO dated November 13, 2002, stating acceptance of group filings and Exhibit F, ACEMLA Mr. Bernard's Reply Letter dated December 12, 2002.

It is also undisputed that Universal or EMLASA, or anyone else, never registered Fichas Negras with the U.S. Copyright Office (USCO).  No claim for copyright damages have ever been filed.  See Mr. Fernandez testimony. (See TT at p. 23, lines 19-22).

## A.  LAMCO/ACEMLA BUSINESS RECORDS WERE PROPERLY ADMITTED AND SHOULD BE AFFORDED FULL WEIGHT OF THE EVIDENCE

It is crystal clear that LAMCO/ACEMLA's Exhibit A Johnny Rodriguez Assignment and its Addendum to the listing all of the works being assigned to LAMCO in the composers own handwriting constitutes the best reliable evidence and an integral part of the assignment itself and to the trustworthiness  and actions of the composer of the works being assigned thereof.  It is upon such an assignment the composer and his works became part of the music catalog of LAMCO and an affiliated member of ACEMLA, receiving monetary consideration.

The Vigneau[1] case cited by Universal is inapplicable here. The pages listing the works being assigned within the contract assignment, <u>handwritten by the composer himself</u>, are not "an outsiders" note but an integral part of the document itself constituting the recorded copyright assignment where the composer assignor remains a beneficial owner to those works.  Thus, upon examination and recordation by the US Copyright office,  such contract is unequivocally a LAMCO business records and the recorded assignment is the best evidence of copyright ownership containing not only validated signatures but the composers listing in his own handwriting.

The listing (typewritten) of the works by the composer on blank documents provided by LAMCO, also constitute part of such assignment as a regular practice and due diligence of LAMCO to obtain the best information of the works being assigned.

As shown by the Addendum to the recorded copyright assignment, LAMCO's blank forms provided to the composer elicits any and all probable information of recordings in order to establish the probable dates on which any of such works were first fixed in phono-records in order to provide the best evidence possible to the US Copyright office, and therefore during any copyright proceedings as this one.

The fact is that the composers listing in these assignments, list not only the works, but which phono-rcordings had been released containing the same musical works. Recordings subsequently used to provide the underlying musical copyright mandatory

---

[1]     The business records exception to the hearsay rule, Fed. R. Evid. 803(6), does not itself allow the admission for their truth of "outsider" statements contained within business records. <u>Cameron</u> v. <u>Otto Bock Orthopedic Indus., Inc.</u>, 43 F.3d 14, 16-17 (1st Cir. 1994); <u>Johnson</u> v. <u>Lutz</u>, 170 N.E. 517 (N.Y. 1930). Nor did the government offer other direct or circumstantial evidence, such as a handwriting expert, to show that it was in fact Mark who had completed the forms.

deposit to the US Copyright office and the Library of Congress so that upon such copyright registration it would provide such Constructive Notice under Section 205.

Moreover, the recorded document contains an alphabetical list prepared by LAMCOS employees for each of those seventy-seven (77) same works assigned where there appears in number 29 the work "Fichas Negras" the work here in question as part of such assignment.

Such alphabetical listing of those works assigned prepared by LAMCO's employees submitted with the contract are part of LAMCO's own internal practices to facilitate the US Copyright office and the examination process of recordation's practices of the to be recorded document. No Court has ever invalidated any LAMCO/ACEMLA such USCO Registration or recordation.

Accordingly, the admitted exhibits were proper and should be afforded the weight under the business record exception.

### B.  LAMCO/ACEMLA HAS MET THE USCO FILING REQUIREMENTS

Universal argues in their Brief an issue already subject to the Law of the Case as resolved by this Court in granting LAMCO/ACEMLA summary judgment regarding section 205(d).

Universal witness testified to that they never registered anything with the USCO. Defendant LAMCO/ACEMLA testified to this fact. See TT Bernard testimony, p. 103, lines 17-25, p. 104, 1-6.

As the Universal motion for summary judgment was denied and found in favor of LAMCO/ACEMLA as to the issue of priority between their conflicting interest. This is the Law of the Case. This Honorable Court found that the EMLASA's 1981 recordation

of its assignment of copyright "Fichas Negras" …does not constitute recordation for purpose of 17 USC section 205(d"). "The recordation of transfers and other documents for purposes of said disposition must be made in the U.S. Copyright Office. See 17 USC section 205(a)." Dk. 408, page 1, lines 21-25. This Court further held that "Universal does not argue that LAMCO took the assignment with notice of its prior transfer, nor does it allege that LAMCO did not pay valuable consideration. Universal's only argument is that LAMCO's transfer was not "duly recorded" because it was not done within one year month of the transfer".

The Court also ruled and found that "Universal also pointed that the recordation document in this case lists too many songs for it to conform with the specificity requirements of 17 USC section 205(d). This Court concluded, [H]owever, that disposition merely deals with whether or not a recordation document in the Copyright Office may give constructive notice of the facts stated therein. Such disposition is inopposite as to whether or not LAMCO's transfer takes priority over EMLASA's, an issue that is governed by 17 USC section 205(d)." Id, lines 4-13

The Court concluded that "the transfer of the copyright over "Fichas Negras" to LAMCO takes priority over the prior transfer to EMLASSA under 17 USC section 205(d)." Id, page 2, lines 14-17.

In this district, among other requirements to litigate a copyright infringement case a plaintiff must establish "compliance with the formalities of the Copyright Act". See, Pedrosillo Music. Inc. v. Radio Musical. Inc.. 815 F.Supp. 511, 514 (D.Puerto Rico, 1993). Another requirement for bringin a copyright infringement case is ownership of a valid copyright. Brown v. Latin American Music, Co., 498 F.3d 18, 12 (1st Cir. 20(7).

LAMCO has documented that such work was properly processed and registered by the US Copyright Office on March 22, 1999 by Latin American Music Co., Inc (LAMCO). The US Copyright office issued a valid US Copyright Registration Certificate under No. PAU-2-357 -341; "No Debimos Conocernos y 22 Titulos Mas de Johnny Rodriguez". Such registration contains a total of 23 Titled Works composed by Mr. Johnny Rodriguez Lozada; a collection for which the underlying "copies of music recordings" See Trial Ex. D.

Furthermore the LAMCO exclusive copyright assignment contract and the ACEMLA's Non-Exclusive contract were also properly recorded within one month after its execution by the US Copyright office on May 23,1995, Vol. 3118-p495. Such recordation contracts prevails under § 205.[2], Recordation of transfers and other documents.

---

[2]§ 205. Recordation of transfers and other documents:(a) Conditions for Recordation. — Any transfer of copyright ownership or other document pertaining to a copyright may be recorded in the Copyright Office if the document filed for recordation bears the actual signature of the person who executed it, or if it is accompanied by a sworn or official certification that it is a true copy of the original, signed document. (b) Certificate of Recordation. — The Register of Copyrights shall, upon receipt of a document as provided by subsection (a) and of the fee provided by section 708, record the document and return it with a certificate of recordation. (c) Recordation as Constructive Notice. — Recordation of a document in the Copyright Office gives all persons constructive notice of the facts stated in the recorded document, but only if — (1) the document, or material attached to it, specifically identifies the work to which it pertains so that, after the document is indexed by the Register of Copyrights, it would be revealed by a reasonable search under the title or registration number of the work; and (2) registration has been made for the work. (d) Priority between Conflicting Transfers. — As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer. (e) Priority between Conflicting Transfer of Ownership and Nonexclusive License. — A nonexclusive license, whether recorded or not, prevails over a conflicting transfer of copyright ownership if the license is evidenced by a written instrument signed by the owner of the rights licensed or such owner's duly authorized agent, and if (1) the license was taken before execution of the transfer; or (2) the license was taken in good faith before recordation of the transfer and without notice of it.

Therefore LAMCO has clearly established full compliance with the formalities of the Copyright Act" for "Fichas Negras" and twenty other copyrighted works by Johnny Rodriguez.. See, <u>Pedrosillo Music. Inc. vs. Radio Musical. Inc</u>.. 815 F.Supp. 511, 514 (D.Puerto Rico, 1993). The other requirement for bringing a copyright infringement case is ownership of a valid copyright has also been met. <u>Brown v Latin American Music.Co.,</u> 498 F.3d 18, 12 (1st Cir. 2007).

In reply to Universal's arguments, claim and to LAMCO's" not having a valid transfer/assignment agreement for ""Fichas Negras"; and/or that "The "Collective Manner " or process which LAMCO used to register, renders such registration void and null.

The 1976 statute amply provides the Copyright Register what is to accept as a copy or best edition [3] to be deposited for the issuing and obtention of a valid copyright certificate for pre 1978 works. [4] § 408 · Copyright registration in general .The copy(s) deposited for

---

[3] The "best edition" of a work is the edition, published in the United States at any time before the date of deposit, that the Library of Congress determines to be most suitable for its purposes.(US Copyright office definition)

[4] § 408 · Copyright registration in general:
(a) Registration Permissive.—At any time during the subsistence of the first term of copyright in any published or unpublished work in which the copy-right was secured before January 1, 1978, and during the subsistence of any copyright secured on or after that date, the owner of copyright or of any ex-clusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708… (b) Deposit for Copyright Registration.—Except as provided by sub-section (c), the material deposited for registration shall include— (1) in the case of an unpublished work, one complete copy or phonorecords; <u>(2) in the case of a published work, two complete copies or phonorecords of the best edition;</u> (3) in the case of a work .first published outside the United States, one complete copy or phonorecords as so published; (4) in the case of a contribution to a collective work, one complete copy or phonorecords of the best edition of the collective work. Copies or phonorecords deposited for the Library of Congress under section 407 may be used to satisfy the deposit provisions of this section, if they are accompanied by the prescribed application and fee, and by any additional identifying material that the Register may, by regulation, require. <u>The Register shall also prescribe regulations establishing requirements under which copies or phonorecords acquired for the Library of Congress under subsection (e) of section 407, otherwise than by deposit, may be used to satisfy the deposit provisions of this section.</u> (c) Administrative Classification and Optional Deposit— (1)

the obtention of LAMCO's copyright certificates are copies of the original works as the existed unpublished under the 1976 Copyright Act.

Universal does not have or may legally claim to hold a valid assignment, copyright registration or an exclusive license under USA copyright law.

## C.  LAMCO'S USCO COPYRIGHT REGISTRATION CONTAINS NO MATERIAL OMISSIONS AND NO MISSTATEMENT THAT CAN INVALID IT

Universal fails to prove any bad faith, any material misstatements and omissions that would warrant any finding of invalidation of the USCO registrations in this case.  AS this Court denied BPPR's Motion for Summary Judgment and held that "[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.."  2 Nimmer section 720 at 7-201; Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1160 (1st. Cir. 1994)("immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration.").   There is a total lack of any presentation of evidence, or facts to establish fraudulent activities, that LAMCO knowingly misstated dates of publication on their registration because they were aware that these works had irreversibly entered the public domain.  The alleged misstatements date of death, birth, or

---

 The Register of Copyrights is authorized to specify by regulation the ad-ministrative classes into which works are to be placed for purposes of deposit and registration**, and the nature of the copies or phonorecords to be deposited in** the various classes specified. The regulations may require or permit, for particular classes, the deposit of identifying material instead of copies or phonorecords, the deposit of only one copy or phonorecords where two would normally be required**, or a single registration for a group of related works**. This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title. (underline ours)

the group filings, and lack of date of publication does not rise to any fraud that warrants support for this argument raised by Universal in their Brief.

LAMCO/ACEMLA holds exclusive and non-exclusive recorded copyright assignments under § 205. Recordation of transfers and other documents were admitted into evidence, See Ex. A-F, and Ex. A-Registration No. PAU-2-357 -341, as hundreds of others were submitted by LAMCO to the US Copyright Office. All these were accepted, properly examined and registered by the US Copyright office as permitted under their compendium of basic policies and under the CFR Chapter 600 rules.(See USCO correspondence and answers dated November 13th 2002 and December 12, 2002 and respectively).  See Trial Exhibits USCO Letters as Exhibit E and ACEMLA Letter as Exhibit F.

These letters specifically refer to the U S Copyright Office Registration procedures Under the CFR Chapter 600 (below).

Particularly, the correspondence dated November 13th, 2002 from Ms. Carol Guglielm, the Senior Examiner at the US Copyright office at the Performing Arts Section of the US LIRRARY OF CONGRESS, Washington D.C. 20559-6000, states "That regarding  LAMCO's  group registrations; as permitted under their rules § 408 · Copyright registration in general the US Copyright office  had permitted to do so several times until January 13, 2002. Trial Exhibit E.  It was only at that time that the Copyright office "re-examined  the case  and  determined  that  {from that date on}  it is not permissible to register a group of works that were not originally released together, even though the publication  date shown on the applications is January 1,1978.

However, the CFR rules have not changed and group registrations may still be requested upon permission from the US Copyright office. "The answer lies in understanding the "formalities," or technical requirements necessary to secure and maintain copyright protection that characterized the U.S. system under the Copyright Act of 1909, [and 1978] and the use of the terms "copy" and "publication" as they were [and are to be presently] applied.

U S Copyright Office Registration Procedures under the CFR Chapter 600: See Dk. 380, Ex. 5.

> "607- Registration as a single unit. Single unitary works are ordinarily registered with one application, deposit, and fee. Under Copyright Office regulation, certain other works may also be registered as a single unit. See 37 C.F.R. 202.3(b)(3)."

> "607.01-Registration as a single unit. Single unitary works are ordinarily registered with one application, deposit, and fee. Under Copyright Office regulation, certain other works may also be registered as a single unit. See 37 C.F.R.202.3(b)(3).3(b)(5)"

> "607.02- Registration as a single unit: unpublished collections. For the purpose of registration on a single application and payment of a single fee, a number of unpublished works may be registered as a single work, if:
> 1) The elements are assembled in an orderly form;
> 2) The combined elements bear a single title identifying the collection as a whole;
> 3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and
> 4) All of the elements are by the same author; or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element. See 37 C.F.R. 202.3(b)(3)(i)(B)."

LAMCO properly submitted its claim to the USCO which upon receipt of the underlying copies of music recordings under PAU 2-357-341. SMF. Par 24. The 22 songs registered is provided for by 37 CFR section 202.3 (a)(1) Registration of Copyright. Instructions provided by USCO Circular No. 50. See Dk. 380 USCO Circular 50 as Ex. 6.

The Universal Brief also argues that "Fichas Negras" is not being specified as one of the works assigned. In this kind of "bulk assignments' it is such **specificity** and descriptive title what will give "constructive notice" upon the registration of such copyrighted title as evidence through the underlying mandatory musical deposit during the registration process.

Obviously such public documents and contracts containing the addenda submitted by the composer in his own handwriting and the filled out forms constitute the "whole assignment" as recorded under the US Copyright Laws , cannot be anything else but a business **"Record of Regularly Conducted Activity"** pertaining to AMCO/ACEMLAS normal transactions with the composer and the US Copyright Office.

Universal goes on at length on their attempt to undermine LAMCO's recordations and registrations to no avail. Yet, it is Universal whom if it held such a valid assignment, for such a valuable and famous work from their Mexican counterpart, should have followed all of their own arguments on US Copyright Law and should have diligently registered and recorded their assignments at the US Copyright office. However, such matter could not have been possible due to the facts of the case and documents.

The fact remains that there is no indication whatsoever that "Fichas Negras" by Johnny Rodriguez " was ever previously registered or assigned to anyone else.

The US Copyright office will not register any .work which may have been previously registered or where there may be a question as to ownership[5]

---

[5]     See 37 C.F.R. 201.4. and the Compendium at:
1603.03  [Where] An application for registration is submitted where a claim in the same work has already been registered in the name of the prior owner of copyright. When the second registration is sought to reflect the change of ownership, the Copyright Office

As in any contractual agreement LAMCO must first rely in the good faith and information provided by the composer and proceed in good faith as it does for each and every assignment. LAMCO's music publishing contract in its first and second, clauses clearly establishes "that each of the works are original unpublished, and the composer guarantees there exist no claim or impediment ,that he has all the rights to enter into the contract.

Universal goes on questioning the clear facts of this case regarding the registration and publication of these works, including "Fichas Negras".

Yet it has not brought even a scintilla of evidence that these works were ever published before LAMCOS 1999 registration and 1995 assignment.

Finally, at Universal Brief at page 20, paragraph two, Universal advises "this Honorable Court [that], whether or not a work is published or unpublished has enormous legal significance.[6] [that] LAMCOIACEMLA's blanket averment that the distribution of a sound recording [phonorecord] prior to January 1, 1978 did not constitute "publication" under the Copyright Act - while correct pursuant to Congress' 1997 amendment to Section 303 of the Copyright Act, it can only take LAMCOIACEMLA so far. This is so because Bernard admitted that he had no knowledge of whether "Fichas Negras" was recorded and distributed after January 1, 1978, which would entail that song's "publication".

This is the kind of legalese double-talk that should be ignored if not penalized by the courts. There are great advantages to copyright proper registrations, however

will refuse to make a second registration, but will point out the **possibility** of reflecting the change in ownership by recording the instrument of transfer.

"***Copyright Protection Is Automatic*** Under the present copyright law, which became effective January 1, 1978, a work is automatically protected by copyright when it is created. A work is created when it is "fixed" in a copy or phonorecord for the first time. <u>Neither registration in the Copyright Office nor publication is required for copyright protection under the law.(circular 50,US Copyright office)</u>

Moreover, Universal is well aware of all of the information available within the documents  provided by the composer in LAMCO's  submitted documentation in evidence. Such documentation actually makes mention of  pre-1950 to 70 record labels such as, Verne, RCA, Ansonia, Seeco, Marvela and others. Original Recordings that had been released within those year dates. Obviously, no one knows or would know or could possibly "verify" the exact date of 'creation'[7] or publication of such works and only  the approximate or statutorily defined date would suffice for registration purposes.

It is evident that Universal is well aware that "both the 1909 Act and the current Act do not invalidate a registration certificate because of an 'innocent error" committed by the applicant."…[that the US Copyright office did register the copyright and recorded the assignment] that the 'first Circuit Court of appeals held that an immaterial, inadvertent error in the copyright registration or deposit does not invalidate the copyright registration"

---

[6]        Publication is no longer the key to obtaining federal copyright as it was under the Copyright Act of 1909. However, publication remains important to copyright owners.(US Copyright Office)

[7]        A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.( § 101. Definitions)

The fact is that here and in respect to this particular registration, there was a careful examination by the US Copyright office in order for it to be processed.

However, Universal's counsel is not apparently familiar with the statutorily defined publication issue.  Regardless of its release or re-released date  any work contained within a pre-1978 recording date of publication for purposes of registration is 1978 or that date upon which is re-release as a new recording; yet for "publication" purposes it remains to be a 'pre-1978 'originally fixed work, which becomes published under the statute in1978.,  [8]


## V.  <u>THE ORIGINAL CLAIM BY BPPR AND UNIVERSAL</u>

The Original claim for "Fichas Negras" was submitted by BPPR under Civ 01-1142  at page 10 , paragraph 36, as follows: "With respect to the composition "Fichas Negras" by Johnny Rodriguez …co-defendant Universal Musica, Inc., claims control of the same , By the same token , co-defendant ASCAP  claims that it has an exclusive right [non-exclusive] to license the public performance rights of "Fichas Negras" …registered under title code #360018722"

However, Universal and ASCAP were then claiming such rights through a different assignment. See Dk. 138, entered April 29, 2005 Universal Musica, Ltd. chart containing a claim for "Fichas Negras" by ASCAP and Ethel Music Corp..

---

[8]      The relevant statutory provision is 17 USC 408(a)
— At any time during the subsistence of the first term of copyright in any published or unpublished work in which the copyright was secured before January 1, 1978, and during the subsistence of any copyright secured on or after that date, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim …

Subsequently on May 11, 2001 after noticing their obvious "mistakes" the ASCAP claim for "Fichas Negras" was voluntarily dismissed with prejudice. See Docket 14.

Nevertheless, (EMLASSA) Universal Musica, LTD, persisted with their claim. Universal now brings new tactical and baseless approach questioning "the legal terms of compliance with the US Copyright requirement for document recordation which must be rejected by this Court.

## VI. <u>CONCLUSION</u>

As the evidence adduced at trial and Universal having failed to introduce any credible evidence and proof to sustain their allegations in their Post-Trial Brief, LAMCO/ACEMLA parties respectfully requests that this Honorable Court issue an Order declaring them the ownership of the song "Fichas Negras" and enter Judgment accordingly for all of the reasons stated herein.


**RESPECTFULLY SUBMITTED:**

**CERTIFICATE OF SERVICE:**  I HEREBY CERTIFY that a true and exact copy of the foregoing document has been filed with the Clerk of Court using the CM-ECF system that will served notice to all counsel and  to  all of the parties counsel at their address of record herein.

In Ponce, Puerto Rico, this 24h day of November, 2009.


/s Mauricio Hernandez Arroyo

_____

**LAW OFFICES OF**
**MAURICIO HERNANDEZ ARROYO**
**USDC-PR NO. 208409**
**Attorney for LAMCO/ACEMLA**
1369 Calle Salud, Suite 104
Ponce, Puerto Rico 00717-2014
Tel./Fax No. (787) 984-0789
Cel No. (787) 597-4815
e-mail"mhernandezarroyolaw@gmail.com