1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4

**BANCO POPULAR DE PUERTO RICO,
INC.,**

5

    **Plaintiff,**

6

    **v.**                                    **CIVIL NO. 01-1142 (GAG)**

7

**LATIN AMERICAN MUSIC CO., INC., et
al.,**

8

    **Defendants.**

9

10

11

**BENCH TRIAL OPINION: OWNERSHIP OF "FICHAS NEGRAS"**

12

        On October 16, 2009, the court held a bench trial in the above-captioned case to determine

13

ownership of the song "Fichas Negras" which is disputed between co-defendants Universal and

14

Latin American Music Company, Inc. ("LAMCO"). Prior to the trial, the court ruled on summary

15

judgment that LAMCO's 1995 recordation of its assignment contract would have priority over

16

EMLASA's 1981 Mexican assignment contract if it was determined that LAMCO's 1995

17

recordation and 1999 registration of the copyright of "Fichas Negras" were valid. (Docket Nos. 408,

18

409.) After careful consideration of the evidence presented by the parties on this date, the court rules

19

that Universal has failed to present sufficient evidence to overcome the rebuttable presumption that

20

LAMCO's recordation of the assignment contracts and registration of the song "Fichas Negras" were

21

valid. Therefore, consistent with the courts earlier findings, the court finds that ownership of the

22

song "Fichas Negras" is vested in LAMCO.

23

**I.      Background**

24

        At trial, LAMCO presented evidence that on May 23, 1995 it recorded assignment contracts

25

between itself and Johnny Rodriguez Lozada ("Rodriguez") which included the assignment of the

26

ownership of the work "Fichas Negras." (Exhibits A & B). LAMCO also presented an application

27

for a copyright registration of twenty three of the Rodriguez works including the work "Fichas

28

Negras," which was filed on March 22, 1999 as well as a valid US copyright registration certificate

**Civil No. 01-1142(GAG)**                    2

for the work "No Debimos Conocernos y 22 Titulos Mas de Johnny Rodriguez." (Exhibit D). This registration contained a total of twenty three works composed by Rodriguez, including the work "Fichas Negras."

## II.     DISCUSSION

### A.     *Admissibility of the Assignment Contracts*

At trial, Universal argued that the assignment contracts, which executed the transfer of title to LAMCO of a number of the works of Johnny Rodriguez including "Fichas Negras," were inadmissible hearsay. Universal averred that such documents did not fall under the business record exception, citing U.S. v. Vigneau, 187 F.3d 70 (1st Cir. 1999) as precedent. The Vigneau court ruled that the business record hearsay exception did not apply when the preparer of the document was not a part of the business. Id. at 75-78. In the case at bar, the court ruled from the bench that the documents would be admitted solely for the purpose of establishing that they were the documents that were submitted to the USCO for recordation in 1995. However, the court decided it would determine the weight that should be afforded to these documents at a later time.

Thus, the court finds that the decision in U.S. v. Vigneau is inapplicable here. LAMCO is offering this evidence to show what was sent to and recorded by the USCO in 1995. The evidence is not being presented to show that Johnny Rodriguez in fact transferred title to these songs, as no contractual issue over what was transferred is in dispute. Therefore, the records of the transfer are admitted for the purpose of demonstrating which works LAMCO recorded with the USCO in 1995 and will be given full weight for that limited evidentiary purpose.

### B.     *Validity of the 1995 Recordation of Transfer*

Registration of a copyright creates a rebuttable presumption of validity. Zyla v. Wadsworth, Div. of Thompson Corp., 360 F.3d 243, 250 (1st Cir. 2004). "[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the [other party] to demonstrate why the copyright is not valid." Saenger Organization, Inc. v. Nationwide Ins. Licensing Associates, Inc., 119 F.3d 55, 59 (1st Cir. 1997) (quoting Bibbero Sys., Inc. v. Colwell Sys., Inc., 893 F.2d 1104, 1106 (9th Cir. 1990)).

**Civil No. 01-1142(GAG)**                                      3

At trial, LAMCO presented evidence of a valid certificate of recordation, thus shifting the burden to Universal to present evidence demonstrating that LAMCO's recordings should be invalidated. At trial, and throughout its post-trial brief, Universal argued that LAMCO's recordation of the transfer was invalid, claiming that LAMCO did not meet the statutory requirements to successfully record the transfer of ownership of the works.

§ 205 of the U.S. Copyright Act provides for the recordation of transfers of copyright ownership. When considering conflicting transfers of ownership, Section 205(d), entitled *Priority Between Conflicting Transfers*, provides as follows:

> As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within 1 month after its execution in the United States or within 2 months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner and if *taken in good faith*, for valuable consideration or on the basis of a binding promise to pay royalties, *and without notice of the earlier transfer*. 17 U.S.C. § 205(d) (emphasis added).

To meet the § 205(d) requirements and prevail as the first to record the transfer of the song "Fichas Negras," LAMCO had to provide undisputed evidence that it recorded the transfer in good faith and without notice of any earlier transfers. See LAMCO v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 40-41 (1st Cir. 2007). To demonstrate its conformity with these requirements, LAMCO offered the testimony of Raul Bernard ("Bernard"), President of LAMCO. Bernard testified that in compliance with its regular practices, LAMCO conducted a copyright search to locate any prior conflicting transfers of the copyright over the the works included in LAMCO's recordation. See Tr. at 52 lines 4-10. The court found this testimony to be credible. Universal has failed to offer any evidence refuting Bernard's contention that LAMCO had conducted a search. Universal's pertinent evidentiary offerings consist of the cross-examination of Bernard, in which he admits that he did not conduct the search personally; and that there is no record of the conducted search. While such testimony may weaken the strength of LAMCO's evidence, it does not satisfy Universal's evidentiary burden.

Universal fails to offer proof of any prior recordation that should have put LAMCO on notice

**Civil No. 01-1142(GAG)**                                        4

of a conflicting interest.  Cf. LAMCO v. Archdiocese of San Juan, 499 F.3d at 41 (entity that had

notice of valid copyright certificates of other entity could not meet good faith and lack of notice

requirements of recording statute).  Universal is also unable to produce any evidence supporting its

contention that LAMCO never conducted a copyright search.  Furthermore, it is unable to identify

any conflicting interest that LAMCO would have overlooked had it, as Universal contends, never

conducted a search. (i.e. previosuly recorded transfers of the works)  Thus, the court finds that

LAMCO complied with the statutory requirements to record in good faith and without notice of any

earlier transfers by conducting a copyright search prior to recording the transfer of "Fichas Negras."

In failing to present evidence to the contrary, Universal has failed to meet its evidentiary burden to

invalidate this recordation.

       *C.*     *Validity of the 1999 Copyright Registration*

       At trial, Universal argued that LAMCO's March 22, 1999 registration of a number of works

including "Fichas Negras," is invalid because the application for registration contained willful and

material omissions and misstatements.  Similar evidentiary deficiencies impair this argument as

Universal is unable to produce sufficient proof to meet the evidentiary burden necessary to invalidate

the registration.

       "It is well established that immaterial, inadvertent errors in an application for copyright

registration do not jeopardize the validity of the registration."  Data General Corp. v. Grumman

Systems Support Corp., 36 F.3d 1147, 1161 (1st Cir. 1994).  The First Circuit has defined an error

as immaterial only "if its discovery is not likely to have led the Copyright Office to refuse the

application."  Id.  Further, "a misstatement or clerical error in the registration application if

unaccompanied by fraud will not invalidate the copyright nor render the registration certificate

incapable of supporting an infringement action."  2 Nimmer on Copyright § 7.20, at 7-201 (1993).

       Universal avers that the numerous misstatements found in LAMCO's registration application,

which were highlighted during trial, demonstrate a willful attempt to defraud the USCO.  In making

this assertion, Universal points to a number of misstatements found in the application including: the

**Civil No. 01-1142(GAG)**                                           5

incorrect dates of the birth and death of the author; the incorrect date in which all 23 of the works

were created; and the representation by LAMCO to the USCO that none of the 23 works had been

published before.  Among these identified misstatements, the court finds that only the misstatement

regarding prior publication would be sufficiently material as to invalidate LAMCO's copyright

registration.  See Data General Corp., 36 F.3d at 1161 (an error is material if its discovery would have

likely led the copyright office to reject the application).

        The USCO permits the registration of multiple copyrights as long as all of the works included

in the registration are unpublished works.[1]  Therefore, if any of the 23 works submitted by LAMCO

on its 1999 copyright registration had been "published" prior to 1999 LAMCO's group registration

could be invalidated.  See 37 C.F.R. 202.3 (b)(4)(i)(B).  However, at trial, Universal was unable to

present any evidence demonstrating that any of the selected works had in fact been published prior to

LAMCO's application for registration.  Instead, Universal offers Bernard's testimony on cross

examination, in which he admitted that he had heard recordings of these works prior to LAMCO's

registration.  However, such testimony does not necessarily lead to the conclusion that Bernard was

---

        [1] The pertinent section of the code which permits the registration of multiple copyrights with one application reads:

> (4) Registration as a single work.
> (i) For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:
> (B) In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection." For these purposes, a combination of such elements shall be considered a "collection" if:
> (1) The elements are assembled in an orderly form;
> (2) The combined elements bear a single title identifying the collection as a whole;
> (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and
> (4) All of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.

37 C.F.R. 202.3 (b)(4)(i)(B).

**Civil No. 01-1142(GAG)**                    6

aware that there were existing "publications" of the works prior to LAMCO's registration.  Under the copyright code, the distribution before January 1, 1978 of a phonorecord is not considered a "publication" for purposes of copyright analysis."  See 17 U.S.C. §303(b).  Therefore, any recordings of Rodriguez's works which were produced on phonorecord prior to 1978 would not constitute "publications."  In light of this statutory classification, Universal rests its argument upon the belief that during the 21 year span between 1978 and 1999 one of these famous songs *had to have* been published.  This conjectural assertion does not satisfy Universal's burden to produce evidence demonstrating materially fraudulent misstatements in LAMCO's application.

Because LAMCO has offered a valid copyright certificate, the burden is upon the challenging party to produce evidence that identifies material misstatements which would invalidate the registration.  See CMM Cable Rep, Inc. v. Ocean Coast Prop. Inc., 97 F.3d 1504, 1513 (1st Cir. 1996); 17 U.S.C. §410.  Universal has failed to meet this burden.  Therefore, the court holds the 1999 registration of the work "Fichas Negras" to be valid and grants LAMCO the rights of ownership in said work.  See American Broadcasting Companies, Inc. v. U.S., 129 F.3d 1243, 1246 (1st Cir. 1997) (failure of challenging party to produce evidence invalidating copyright certification resulted in granting rights of ownership to holder of certification).

**IV.    CONCLUSION**

For the foregoing reasons the court finds that Universal has not met its burden to present evidence calling into question the validity of LAMCO's copyright recordings.  Therefore, the court rules in favor of LAMCO and finds that LAMCO's recordation of the work "Fichas Negras" takes priority over EMLASA's 1981 Mexican assignment contract and that LAMCO's 1999 copyright registration is valid.

**SO ORDERED.**

In San Juan, Puerto Rico this 19th day of January, 2010.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge