IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BANCO POPULAR DE PUERTO RICO, INC.,

    Plaintiff,

v.

LATIN AMERICAN MUSIC CO., INC., et al.,

    Defendants.

CIVIL NO. 01-1142 (GAG)

### BENCH TRIAL MEMORANDUM OPINION & ORDER

On July 19, 2010, the court held a bench trial in the above-captioned case to determine two issues presented by this litigation: (1) whether Latin American Music Company ("LAMCO") had committed copyright infringement against Guillermo Venegas Lloveras, Inc. ("GVLI") by granting a retroactive performance license for the work "Genesis" in 1998; (2) whether Banco Popular de Puerto Rico ("BPPR") should be rewarded off-setting costs for the monies that were paid to LAMCO pursuant to this 1998 licensing contract.

**I.**   **Background**

Prior to the commencement of this bench trial it had been previously held by this court that LAMCO's granting of a retroactive license for mechanical and synchronization royalties for the work "Genesis" resulted in liability for copyright infringement. In his opinion, Judge Fuste awarded $16,363.47 in damages to GVLI for the granting of this license, and declined to award statutory damages. Venegas-Hernandez v. Peer, 2004 WL 3686337, * 33-34 (D.P.R. 2004). This decision was affirmed in part and vacated in part by the First Circuit which determined that LAMCO had obtained 50% of the ownership rights to the work "Genesis" through an assignment contract entered into in October of 1996 with the widow of Guillermo Venegas Lloveras. See Venegas-Hernandez v. Asociacion De Compositores Editores De Musica Latinoamericana, 424 F.3d 50, 60 (1st Cir. 2005). The court determined that this 50% interest was in the renewal rights for "Genesis" and did not take effect until January 1, 1998. Id.

**Civil No. 01-1142(GAG)**                                 2

II.     **Factual Findings of the Court**

Pursuant to Rule 52 of the Federeal Rules of Civil Procedure, the court makes a special finding of the specific facts which were pertinent to its analysis of the legal issues presented at trial.

GVLI presented the testimony of two witnesses: Rafael Venegas and Richard Viera Cintron. Mr. Venegas testified to his experience as Executive Director in exploiting the musical works of his father for the company GVLI. He also testified to the split of ownership of the work "Genesis" during the time the alleged infringement occurred. This testimony of ownership rights is consistent with the previous holdings by Judge Fuste in his district court opinion, Venegas-Hernandez, 2004 WL 3686337, as well as with the holding by the Appeals court of Puerto Rico, Lucy Chavez Butler v. Rafael Venegas Hernandez y Otros (Exhibits A & A1). Mr. Venegas further testified that, because the retroactive licenses covered the six songs that were performed by BPPR during the period between 1993 and1998, he believed a fair calculation of damages for LAMCO's alleged infringing action would be 1/6 of the $260,432.10 which LAMCO received from BPPR in 1998 for the retroactive granting of the license for performance rights.

Mr. Viera Cintron testified to the process used to determine the costs that were associated with the granting of the licenses to BPPR.

BPPR presented the testimony of Paulette Lavergne. Ms. Lavergne was the attorney for BPPR that negotiated the contract with LAMCO for the retroactive licenses with regard to the songs that were performed during the Christmas Specials during the years 1993-1998. BPPR presented a series of correspondence between Ms. Lavergne and LAMCO indicating her belief that she was contracting for retroactive licenses for the use of songs which LAMCO owned all of the rights to.

LAMCO offered the testimony of its President of operations, Luis Raul Bernard. Mr. Bernard testified that the licenses signed in 1998 were actually prospective licenses granting rights for future performances of the works. He further claimed that the references to the years 1993-1998 were not actually retroactive licenses, but were merely included to prevent any infringement from occurring from future performances of the Christmas Specials (after 1998) which were filmed during the years 1993-1998. He also testified that the $260,432.10 paid for the performance license was

**Civil No. 01-1142(GAG)**                                       3

for the entire catalogue of LAMCO works and, therefore, did not offer a viable starting point from which to calculate the sum of monies that was paid for the performance right of the singular work "Genesis."

The court also recognizes stipulated facts which were pertinent to its decision. The parties stipulated to the fact that the work "Genesis had in fact been performed by BPPR during the years covered by the retroactive license granted to" them by LAMCO. (See Docket No. 518 at 24). This stipulated fact was contrary to the facts before Judge Fuste when he made his holding that no evidence of performance was presented by the parties and therefore no damages could be awarded for the infringement stemming from the granting of performance licenses.

**II.     Discussion**

*A.     Infringement of the work Genesis*

With regard to the claims of infringement of the performance rights to "Genesis," the court finds that the evidence presented by GVLI belies the testimony of LAMCO president Raul Bernard. The court finds that GVLI has demonstrated by a preponderance of the evidence that LAMCO infringed GVLI's copyright to the song "Genesis." Remaining consistent with Judge Fuste's previous findings, the court finds that the licensing contract entered into between LAMCO and BPPR on November 6, 1998 (Exhibits II & III) constituted a retroactive license. See Venegas-Hernandez, 2004 WL 3686337 at *33-34. The court also finds that based upon the irrefuted testimony of Venegas, as well as the presiding case law, these rights of ownership were solely owned by GVLI during the period covered by the retroactive licenses granted by LAMCO. Therefore, LAMCO's improper licensing of the performance rights to "Genesis" infringed the copyright owned by GVLI.

With respect to the calculation of damages, the court understands that it could apply the statutory penalties for infringement, but instead has chosen to follow the ruling of Judge Fuste and utilize the payments provided by the licensing contract to calculate an award of actual damages. See Venegas-Hernandez, 2004 WL 3686337, at *34. In assessing the contract, the court concludes that

**Civil No. 01-1142(GAG)**                                4

because these licenses were granted retroactively, the court will construe the costs paid to have been paid for those songs which were actually performed in that time period; the six songs listed among the licenses. (See Exhibit II.) Therefore, the $260,432.10 received for retroactive performance licenses was, in essence, paid for the retroactive performances of these six works. As such, the court finds GVLI's offering of a calculation of damages to be a fair indication of the actual damages that GVLI suffered as a result of LAMCO's infringement of their copyright. The court, therefore, awards 1/6 of the $260,432.10 paid to LAMCO by BPPR for the performance rights of the songs listed, or $43,405.35. The 1/6 represents the portion which can be attributed to payments made for the rights to "Genesis." Therefore, the court orders LAMCO to pay GVLI a total of $43,405.35 plus interest for the infringement resulting from its 1998 retroactive licensing of GVLI's copyrighted work "Genesis."

   *B.   Off-Setting Claims by BPPR*

BPPR claims that it is due monies in the form of off-setting claims for payments it made to LAMCO for licenses that LAMCO had unlawfully granted the bank during the years 1993-1998. BPPR specifically prays for off-setting claims with respect to the works "Ojos Chinos" and "Genesis."

With respect to the "Genesis" claim, the court finds that this claim is moot, as pursuant to this order the payments made to LAMCO for the retroactive license of the performance rights to "Genesis" have now been awarded to GVLI, the rightful owner of the copyright at the time BPPR contracted for these rights. Therefore, in accordance with the parties' assertions at trial, this claim is **MOOT**.

As to the "Ojos Chinos" claim, no evidence was presented indicating that LAMCO was not the valid copyright owner during the time-period covered by the retroactive licenses granted to BPPR. As grounds for its claim, BPPR cites <u>Latin Am. Music Co. v. Archdiocese of San Juan of the Roman and Apostolic Church</u>, 499 F.3d 32 (1st Cir. 2007), contending that, in this case, the First Circuit court held that LAMCO had no rights to the song "Ojos Chinos." The court understands,

**Civil No. 01-1142(GAG)**                                5

however, that BPPR has misstated the First Circuit's holding in that case. The court in <u>Archdiocese of San Juan</u> affirmed the district court decision, which determined that "with respect to the fifth song, 'Ojos Chinos,'... LAMCO/ACEMLA had a non-exclusive license, which might entitle them to receive payments from the Broadcasters but did not support standing to maintain a copyright infringement claim." 499 F.3d at 37. The court affirmed the dismissal of LAMCO's infringement claim but did not hold, as BPPR asserts, that LAMCO had no ownership interest in the work. In this case BPPR had the burden to prove that LAMCO misrepresented their ownership rights as to "Ojos Chinos" during the contract negotiations. As no evidence has been presented that LAMCO did not own the rights to "Ojos Chinos" at the time that they contracted with the bank, BPPR has failed to show that LAMCO made any misrepresentation which resulted in the bank's decision to contract for the licensing of synchronization and performance rights to the song "Ojos Chinos."

**IV.    CONCLUSION**

In accordance with the above, the court orders LAMCO to pay $43,405.35 plus interest in damages to GVLI. The court also finds BPPR's off-set claim moot with respect to "Genesis." As to BPPR's off-set claim for "Ojos Chinos," the court holds that BPPR has failed to present evidence demonstrating that LAMCO misrepresented its ownership of "Ojos Chinos" at the time that the rights were contracted for. Therefore, the court finds in favor of LAMCO with regards to this claim.

**SO ORDERED.**

In San Juan, Puerto Rico this 21st day of July, 2010.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge