# United States Court of Appeals
## For the First Circuit

Nos. 10-2170, 10-2171

BANCO POPULAR DE PUERTO RICO,

Plaintiff, Appellant, Cross-Appellee,

v.

ASOCIACIÓN DE COMPOSITORES Y EDITORES DE MÚSICA LATINOAMERICANA
(ACEMLA); LATIN AMERICAN MUSIC COMPANY, INC. (LAMCO),

Defendants, Appellees, Cross-Appellants,

GUILLERMO VENEGAS LLOVERAS, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Edwin J. Prado-Galarza, with whom Prado, Nunez &
Associates, P.S.C. was on brief, for plaintiff Banco Popular de
Puerto Rico.
Mauricio Hernandez-Arroyo for defendant LAMCO/ACEMLA.
José L. Barreto-Rampolla, with whom Rivera, Barreto &
Torres Marcano was on brief, for defendant Guillermo Venegas
Lloveras.

_____

May 11, 2012

_____

**LYNCH, Chief Judge**.  These are cross-appeals in a case involving copyright infringement.  In 2001, appellant and cross-appellee Banco Popular de Puerto Rico ("BPPR") sought a declaratory judgment under the Copyright Act, 17 U.S.C. § 101 *et seq.*, after several music publishing companies contacted BPPR claiming that they owned and were owed royalties on various music compositions that BPPR had produced and distributed in a series of Christmas concerts.  BPPR deposited the royalties due on these compositions with the district court and asked the district court to declare to whom the royalties were actually due, and distribute them accordingly.

Latin American Music Co., Inc. ("LAMCO") and its affiliate, La Asociación de Compositores y Editores de Música Latinoamericana ("ACEMLA"), countersued BPPR for copyright infringement of several of their compositions.  An additional music publishing company, Guillermo Venegas Lloveras, Inc. ("GVLI"), filed counterclaims against BPPR, LAMCO, and ACEMLA for copyright infringement of the song "Genesis."  The district court consolidated these cases and denied the parties' respective motions for summary judgment.

Subsequently, several of the co-defendants settled their claims for copyright infringement amongst themselves and with BPPR.  The district court then bifurcated the remaining claims into two

cases, case 01-1461 proceeded as a jury trial, case 01-1142, as a bench trial.

The jury found BPPR liable for the copyright infringement of two compositions owned by LAMCO and ACEMLA, and awarded LAMCO and ACEMLA $42,941.00 in compensatory damages.  Meanwhile, after the bench trial, the district court found ACEMLA liable for violating the copyright of GVLI's composition and ordered ACEMLA to pay GVLI $43,405.35, plus interest, in damages.  We affirm the decisions in both cases, in all respects.

I.

Beginning in 1993, BPPR, a financial services corporation, has produced live Christmas concerts to showcase Puerto Rican and international singers and songwriters.  These concerts are broadcast over major radio and television stations throughout Puerto Rico, and then released on CD, DVD, and in other formats, in part to raise money for BPPR's philanthropic foundation, Fundación Banco Popular.

BPPR did not initially obtain performance, mechanical, or synchronization licenses for all of the compositions it utilized in these concerts.  In 1998, BPPR began the complicated task of obtaining retroactive licenses from various license holders for the use of their compositions in the 1993-1998 concerts.

LAMCO, a New York-based music publisher, represented to BPPR through LAMCO's affiliate, ACEMLA, a performance-rights

company based in Puerto Rico,[1] that it held the rights to license and collect royalties for a number of the compositions utilized by BPPR before 1999.   BPPR negotiated with LAMCO a contract (the "retroactive licensing agreement") in which BPPR agreed to pay $91,977.26 to LAMCO for the mechanical and synchronization licenses for six compositions: "Dame La Mano Paloma," "Genesis," "Madrigal," "Mi Jaragual," "Ojos Chinos," and "Un Jibaro Terminado," as well as $260,432.12 in public performance fees to ACEMLA for the public performance of its entire catalogue between 1993 and 1998.   In exchange, LAMCO/ACEMLA agreed to indemnify BPPR against any future claimants asserting interests in the performance of the compositions set forth in the agreement.   At the same time, BPPR negotiated with LAMCO/ACEMLA the mechanical and synchronization licenses for seventeen compositions BPPR planned to use in its 1999 Christmas concert, and began negotiations for the performance rights for these same compositions.   The parties never followed through on this performance license agreement however, partly, BPPR alleges, because BPPR became aware that LAMCO/ACEMLA did not hold the rights to some of the compositions it sought to license to BPPR.

---

[1]     LAMCO and ACEMLA are closely associated, both being owned and controlled by the same person, Luis Raul Bernard.  They have litigated this action together, and we will hereafter refer to them as LAMCO/ACEMLA, except where it is necessary to distinguish between them.

While negotiations for the 1999 Christmas concert were ongoing, BPPR began to receive claims from outside entities purporting to hold the rights to several of the compositions then under negotiation for the 1999 Christmas concert as well as compositions which had been licensed to BPPR by LAMCO/ACEMLA under the retroactive license agreement.  On January 31, 2001, BPPR filed suit under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and 28 U.S.C. §§ 1338(a), 1400(a), and 2201(a), seeking a declaratory judgment and naming those companies which had come forward: Peer International Corporation and affiliates ("Peer"), Universal Musica Inc. ("Universal"), Sonido, Inc., EMI Catalogue Partnership and affiliates, GVLI, Broadcast Music, Inc., and the American Society of Composers, Authors and Publishers, as well as LAMCO/ACEMLA, and any and all other entities purporting to hold rights in the compositions utilized in the 1993-1999 Christmas concerts.

BPPR deposited the royalties due on these compositions with the district court and asked the court to disburse the monies to whichever of the defendants were lawful license holders of the compositions during the time period in question.  BPPR also requested that the court enjoin the defendants from instituting any further copyright infringement actions against it over the 1993-1999 Christmas concerts.  BPPR asked for a reimbursement of any sums of money paid under the retroactive licensing agreement to LAMCO/ACEMLA for the rights to perform works which were not

actually under the control of LAMCO/ACEMLA during the term of the agreement; or, in the alternative, for an offset against any royalties or fees the court found BPPR owed to LAMCO/ACEMLA.

On March 22, 2001, LAMCO/ACEMLA answered BPPR's complaint, contesting various facts and alleging that BPPR had not yet paid the royalties owed LAMCO/ACEMLA for several compositions performed in BPPR's 1999, 2000, and 2001 Christmas concerts.  For this reason, and under the terms of the retroactive licensing agreement, including its indemnity provision, LAMCO/ACEMLA argued that BPPR should not receive any offset or refund of monies paid for the license to use any of the compositions included under the agreement.  In addition, on April 19, 2001, LAMCO/ACEMLA filed its own complaint against BPPR under the Copyright Act and 28 U.S.C. §§ 1331, 1337(a), 1338(a), and 2201(a), alleging that BPPR had willfully infringed LAMCO/ACEMLA's copyrights to multiple compositions performed in BPPR's 1999, 2000, and 2001 Christmas concerts, and had committed other violations under the Copyright Act and Puerto Rico law.  LAMCO/ACEMLA sought injunctive relief and damages under 17 U.S.C. §§ 502-505, and under Puerto Rico law.  The district court consolidated this suit with BPPR's case.

On June 26, 2001, GVLI, which claimed to hold the rights to the song "Genesis," filed an answer to BPPR's complaint, a counterclaim against BPPR alleging copyright infringement for the

unauthorized use of "Genesis,"[2] and a cross-claim against LAMCO/ACEMLA and Peer.   In its cross-claim, GVLI alleged that LAMCO/ACEMLA and Peer knew or had reason to know that they could not license "Genesis" to BPPR and accordingly had infringed GVLI's copyright to that song.

After extensive discovery, the parties moved for summary judgment.   On October 9, 2009, the district court denied their motions for summary judgment in nearly all respects.[3]   The court set the date for trial as October 15, 2009 and denied the parties' motions for reconsideration.

On October 16, 2009, the district court held a bench trial as to the dispute between defendant LAMCO/ACEMLA and defendant Universal over the ownership of "Fichas Negras."   On January 19, 2010, the district court held that "[LAMCO/ACEMLA's] 1999 copyright registration is valid" for "Fichas Negras" and that LAMCO/ACEMLA held a priority registration for that composition.

_____

[2]      The district court dismissed this claim, finding that the decision of the court in Venegas-Hernandez v. Peer, No. 01-1215, 2004 WL 3686337 (D.P.R. May 19, 2004), precluded GVLI's counterclaim against BPPR.   See Banco Popular de P.R., Inc. v. Latin Am. Music Co. ("BPPR"), No. 01-1142 (D.P.R. Apr. 24, 2009).

[3]      The district court granted BPPR's motion for summary judgment with respect to its request to exclude GVLI's claims for copyright infringement falling outside the Copyright Act's three-year statute of limitations, BPPR, No. 01-1142, 2009 WL 3428039 (D.P.R. Oct. 9, 2009), and BPPR's request to dismiss certain of LAMCO/ACEMLA's Puerto Rico law claims equivalent in substance to LAMCO/ACEMLA's claims under the Copyright Act, BPPR, No. 01-1142, 2009 WL 3294790 (D.P.R. Oct. 9, 2009).   The court additionally granted other motions not at issue here.

<u>Banco Popular de P.R., Inc.</u> v. <u>Latin Am. Music Co.</u>, 685 F. Supp. 2d 259, 263 (D.P.R. 2010).

Importantly, on October 27, 2009, the defendants reached a settlement agreement, in which they resolved their various claims as to most of the compositions in dispute and distributed the royalty funds deposited by BPPR as to these. LAMCO/ACEMLA received payment for the equivalent of 12.5 songs used in BPPR'S 1999 Christmas program. Payment for the equivalent of 9.5 songs was divided among the remaining publishers and rights holders, who were subsequently dismissed from the suit.

The settlement agreement expressly excluded from settlement the dispute between BPPR and LAMCO/ACEMLA as to BPPR's alleged copyright infringement of twelve songs (what the agreement termed the "Undisputed LAMCO songs"), including "Fichas Negras," "Madrigal," "Mi Dolor Es Mio," and "Aló Quien Llama." LAMCO/ACEMLA's claims as to those songs would proceed in a jury trial. The settlement agreement also excluded the dispute over GVLI's claims concerning "Genesis." On October 30, 2009, the district court approved the settlement agreement.

On November 2, 2009, BPPR filed a motion objecting to the settlement agreement on the basis of an understanding it claimed to have reached with LAMCO/ACEMLA, in which LAMCO/ACEMLA had promised, as part of the settlement agreement, to voluntarily dismiss its infringement claims against BPPR with respect to the 1999 Christmas

concert.  BPPR argued in this motion, and in an additional motion in limine filed on July 2, 2010, that the district court should read the settlement agreement to exclude from the twelve "Undisputed LAMCO songs" four songs performed in the 1999 Christmas concert: "Fichas Negras," "Madrigal," "Mi Dolor Es Mio," and "Aló Quien Llama."  LAMCO/ACEMLA opposed both BPPR motions.

On July 12, 2010, the district court denied BPPR's motions as to the settlement agreement, finding that the agreement specifically permitted further litigation as to the twelve "Undisputed LAMCO songs."

On July 19, 2010, the district court held a bench trial in case 01-1142 to determine whether LAMCO/ACEMLA had violated GVLI's copyright to the song "Genesis" by granting BPPR a retroactive performance license for that song, and whether BPPR should be awarded off-setting costs for the monies it paid LAMCO/ACEMLA under the retroactive licensing contract for "Genesis" and "Ojos Chinos."  <u>Banco Popular de P.R., Inc.</u> v. <u>Latin Am. Music Co.</u> ("<u>BPPR</u>"), No. 01-1142, 2010 WL 2900366 (D.P.R. July 21, 2010).

On July 21, 2010, the court ruled based on the testimony at trial and several decisions considering the same topic, <u>see, e.g.</u>, <u>Venegas-Hernández</u> v. <u>Asociación De Compositores y Editores De Música Latinoamericana (ACEMLA)</u>, 424 F.3d 50 (1st Cir. 2005), that GVLI held the exclusive performance rights to "Genesis" between 1993 and December 31, 1997, and that LAMCO/ACEMLA accordingly had

infringed those rights by issuing BPPR a retroactive performance license for "Genesis" during that time period.  <u>BPPR</u>, No. 01-1142, 2010 WL 2900366, at *1-2 (D.P.R. July 21, 2010).

The court declined to award statutory damages and instead ordered ACEMLA[4] to pay GVLI damages in the amount of $43,405.35, or 1/6 of the total sum paid by BPPR to ACEMLA under the retroactive licensing agreement for the retroactive licenses to use the six compositions, including "Genesis."[5]  <u>Id.</u> at *2.

The court then held that BPPR's offset claim with respect to "Genesis" was moot, since the court had awarded to GVLI all the royalties originally paid by BPPR to ACEMLA under the retroactive licensing agreement.  <u>Id.</u> at *3.

Relying on this court's opinion in <u>Latin American Music Co.</u> v. <u>Archdiocese of San Juan of the Roman Catholic & Apostolic Church</u>, 499 F.3d 32 (1st Cir. 2007), BPPR presented evidence that LAMCO/ACEMLA was not the exclusive owner of "Ojos Chinos" during the time period covered under the retroactive licensing agreement, and argued that the court should reassign or refund the monies BPPR

---

[4]     ACEMLA had licensed the performance rights to "Genesis" to BPPR; therefore, correcting an earlier order, the district court ordered ACEMLA, and not LAMCO, to pay the damages award to GVLI.

[5]     LAMCO/ACEMLA argues that the retroactive licensing agreement gave BPPR the rights to its entire catalog; however, the district court reasoned that because the agreement conferred the licenses retroactively, it should be construed to cover only "those songs which were actually performed" by BPPR during the period between 1993 and 1998: the six compositions, including "Genesis." <u>BPPR</u>, No. 01-1142, 2010 WL 2900366, at *2 (D.P.R. July 21, 2010).

-11-

had paid to LAMCO/ACEMLA for "Ojos Chinos" under the agreement. The district court rejected BPPR's argument, noting that this court's opinion in Archdiocese of San Juan had not held that LAMCO/ACEMLA had no ownership interest in the composition, but merely that LAMCO/ACEMLA held a non-exclusive license. BPPR, 2010 WL 2900366, at *3. Finding that BPPR had failed to meet its burden to show that LAMCO/ACEMLA had misrepresented its ownership rights in the song under the retroactive licensing agreement, the court rejected BPPR's request.

On July 21, 2010, the jury trial commenced in the other case, case 01-1461, on the remaining questions of whether BPPR infringed LAMCO/ACEMLA's copyrights to "Fichas Negras," "Madrigal," "Mi Dolor Es Mio," and "Aló Quien Llama" in its 1999 Christmas concert, and if so, whether and what damages were due.

On the seventh day of the twelve-day jury trial, BPPR moved to introduce a new issue and what it said was newly discovered evidence. The evidence consisted of documents and testimony, which BPPR contends reveal that the composer of "Fichas Negras," Johnny Rodriguez, conferred all rights and royalties in his collected works to the University of Puerto Rico upon his death. BPPR also argued that it could prove that LAMCO/ACEMLA knew about this evidence but failed to disclose it during the course of discovery under Fed. R. Civ. P. 26. The district court denied BPPR's motion, finding that the evidence would require additional

-12-

hearings, authentication, and potential discovery, and would unduly delay a jury trial already well underway.  The court noted that BPPR had had several years in which to locate this new evidence during the course of the parties' extensive discovery.

On August 6, 2010, the jury returned a verdict in favor of LAMCO, finding BPPR liable for copyright infringement of two songs: "Fichas Negras" and "Madrigal."  The jury found that BPPR was an innocent infringer with respect to these songs and awarded LAMCO $42,941.00 in compensatory damages.  On the same day, the district court ordered BPPR to pay LAMCO $42,941.00 in compensatory damages, permanently enjoined BPPR from performing, producing, selling and/or distributing the 1999 Christmas concert, and required BPPR to retain the master copy and full inventory of that concert, until final judgment in the case.

## II.

On appeal from the jury's verdict against it, BPPR argues that it was not a party to the October 27, 2009 settlement agreement, did not consent to that agreement's terms, and that, in any event, "Aló Quien Llama," "Fichas Negras," "Madrigal," and "Mi Dolor Es Mio" were included in the agreement and should not have been subjected to a jury trial.  BPPR also argues that it had an implied license from LAMCO/ACEMLA to use these songs in the 1999 Christmas concert, and/or that LAMCO/ACEMLA was precluded from litigating its claims over the songs.  Regardless, BPPR argues,

LAMCO/ACEMLA failed to establish that it owned "Fichas Negras" or "Madrigal" in 1999, failed to establish that BPPR had infringed its ownership of these works in the 1999 Christmas concert, and, regardless, was barred from litigating the copyright infringement claims based on LAMCO/ACEMLA's own misuse of copyright.

BPPR also argues that the district court committed reversible error at trial by limiting BPPR's ability to use the affirmative defense of copyright misuse and by refusing to admit into evidence the documents concerning Johnny Rodriguez's will.

With respect to the bench trial, BPPR argues that because LAMCO/ACEMLA failed to establish exclusive ownership of "Genesis" and "Ojos Chinos," it was error not to refund the monies it paid to LAMCO/ACEMLA for the right to use those songs.

LAMCO/ACEMLA defends the jury's verdict on appeal as well as the district court's decisions to deny BPPR's motions as to the settlement agreement and the evidence of Johnny Rodriguez's will.

LAMCO/ACEMLA appeals the district court's decisions in the bench trial that GVLI exclusively owned the performance rights to "Genesis" between 1993 and December 31, 1997, and that LAMCO/ACEMLA accordingly infringed these rights by licensing "Genesis" to BPPR during that time frame. LAMCO/ACEMLA also appeals the district court's award of damages to GVLI.

GVLI defends the district court's decision in its favor in the bench trial.

We affirm the district court's decisions and rulings in all respects.  We first address BPPR's claims as to the settlement agreement and the jury trial in case 01-1461.  We then take up BPPR, LAMCO/ACEMLA, and GVLI's claims as to the district court's opinion and order from the bench trial in case 01-1142.[6]

A.   <u>BPPR's Claims as to the Scope of the Settlement Agreement</u>

We reject BPPR's claim that the district court abused its discretion by allowing LAMCO/ACEMLA to litigate the copyright infringement claims as to "Aló Quien Llama," "Fichas Negras," "Madrigal," and "Mi Dolor Es Mio," which, BPPR argues, were included under the settlement agreement and therefore should not have been the subject of further litigation.

The district court rejected BPPR's reading of the settlement agreement, finding that the agreement, by its terms, did "not preclude the future litigation of the twelve undisputed LAMCO songs as the same is included in the agreement."

In reviewing the district court's conclusions concerning the settlement agreement, "we apply a sliding scale standard of review under the label of clear error review."  <u>Quint</u> v. <u>A.E. Staley Mfg. Co.</u>, 246 F.3d 11, 14 (1st Cir. 2001).  "The more the district court's conclusions are characterized as factual conclusions, the more our review of those facts is for clear error;

_____

[6]    Appeal No. 10-2170 is BPPR's appeal from both the jury trial and the judgment in the bench trial.  Appeal No. 10-2171 is LAMCO/ACEMLA's appeal from the judgment in the bench trial.

the more the district court's conclusions are conclusions of law, the more independent review we give." Id.

Paragraph six of the settlement agreement states, "[t]he remaining Undisputed LAMCO Songs shall be the further subject of the Litigation in the copyright 01-1461 consolidated case." The settlement agreement defines "Undisputed LAMCO Songs" as the following twelve songs: "Felices Dias," "Aló Quien Nama," "Cortijo Bailable," "Tiempo Perdido," "En la Vida Todo Es Vivir," "Fichas Negras," "Oubau Moin," "Madrigal," "Mi Jaragual," "Mi Dolor es Mio," "Genesis," and "Un Jibaro Terminado."

The district court's interpretation thus plainly accords with the text of the settlement agreement and we reject BPPR's argument.

B.   <u>BPPR's Sufficiency of the Evidence Arguments</u>

BPPR next attacks the jury's verdict on the ground that, as a matter of law, LAMCO/ACEMLA failed to establish that it held the copyright to either "Fichas Negras" or "Madrigal" when BPPR utilized those songs in its 1999 Christmas concert, and so LAMCO/ACEMLA failed to make out a viable claim of infringement. BPPR also argues that it had an implied license to use the songs, and that the evidence demonstrates that LAMCO/ACEMLA in fact misused its copyrights and so should be barred from asserting any claim of copyright infringement against BPPR.

We review the sufficiency of the evidence supporting the jury's verdict by asking "whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found in favor of the party that prevailed." Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc., 504 F.3d 189, 200 (1st Cir. 2007).  We must affirm the jury's verdict "unless the evidence was so strongly and overwhelmingly inconsistent with the verdicts that no reasonable jury could have returned them." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 226 (1st Cir. 2003) (quoting Negron v. Caleb Brett U.S.A., Inc., 212 F.3d 666, 668 (1st Cir. 2000)) (internal quotation marks omitted).  BPPR has failed to meet this exacting standard with respect to its sufficiency of the evidence arguments.

First, with respect to BPPR's claim that LAMCO/ACEMLA failed to establish that it held the rights to either "Fichas Negras" or "Madrigal," BPPR argues that LAMCO/ACEMLA never placed into evidence certified or deposit copies of, or valid copyright registration forms for, the compositions, or testimony comparing the versions registered by LAMCO/ACEMLA with the versions actually utilized by BPPR in its 1999 Christmas concert.  As a result of this failure to demonstrate either that it held valid copyrights in the two compositions or that the versions registered were the versions utilized in the 1999 Christmas concert, BPPR argues, LAMCO/ACEMLA failed to demonstrate that BPPR infringed the

copyrights to the two songs.  Second, BPPR argues that the evidence showed that LAMCO was barred from claiming copyright infringement due to its own misuse of copyrights.  BPPR alleges that LAMCO and affiliate ACEMLA's regular practice of simultaneously assigning the publishing rights of a work to LAMCO, and the public performance rights of the same work to ACEMLA, violates antitrust laws and constitutes copyright misuse.

We reject these claims.  As we noted earlier, on October 16, 2009, the district court conducted a bench trial on the issue of the ownership of "Fichas Negras" as between LAMCO/ACEMLA and Universal, after which the court ruled that LAMCO held a priority assignment in the song, and that "LAMCO's 1999 copyright registration is valid" for "Fichas Negras." BPPR, 685 F. Supp. 2d at 263.  In addition, at trial, the President of LAMCO/ACEMLA testified as to, and presented the registrations of, the two compositions, and BPPR has failed to establish that these registrations were invalid or insufficient to support LAMCO/ACEMLA's claims of copyright infringement.

The jury heard the evidence and received instructions as to the copyright registrations and its verdict was not unreasonable in light of the evidence presented.  BPPR bore the burden of proving its affirmative defense of copyright misuse, and the jury was not unreasonable in rejecting this defense with respect to "Fichas Negras" and "Madrigal."

BPPR also argues that it had an implied license from LAMCO/ACEMLA to perform "Aló Quien Llama," "Fichas Negras," "Madrigal," and "Mi Dolor Es Mio" in the 1999 Christmas concert because it had signed license agreements with LAMCO/ACEMLA for the mechanical and synchronization licenses for these songs, and LAMCO/ACEMLA had prepared the performance licenses for the songs' use in the 1999 Christmas concert.  BPPR argues that even though the parties never signed these licenses, "it is clear from LAMCO's actions that it had authorized BPPR to use the songs in the [1999 Christmas concert]."  BPPR points to the fact that LAMCO/ACEMLA brought a breach of contract claim in its countersuit for failure by BPPR to pay LAMCO/ACEMLA for the songs used in the 1999 concert.

The jury considered BPPR's argument, and we find its conclusion that BPPR's actions constituted copyright infringement of "Fichas Negras" and "Madrigal" to be reasonable, regardless of whether it found that BPPR did not have licenses to perform the songs either because the licenses had not been conferred or because BPPR had not made the proper payments pursuant to conferred licenses.

C.   <u>BPPR's Challenges to the District Court's Evidentiary Rulings</u>

BPPR argues that the district court erred by twice denying it the opportunity to introduce certain evidence.  Our review is for abuse of discretion.  <u>See</u> <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir. 2006).  In conducting that review, this

court "defer[s] to the district court's hands-on judgment so long
as the record evinces an adequate reason for the denial." Id.
(quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir.
2006)) (internal quotation marks omitted).

First, BPPR argues that the district court committed
reversible error by refusing to admit into evidence a series of
judgments entered against LAMCO/ACEMLA, in which various courts had
held that LAMCO/ACEMLA did not have the rights or exclusive rights
to various compositions within certain time frames. See, e.g.,
Archdiocese of San Juan, 499 F.3d 32; Brown v. Latin Am. Music Co.,
498 F.3d 18 (1st. Cir. 2007); Venegas-Hernández, 424 F.3d 50; Peer
Int'l Corp. v. Latin Am. Music Corp., 161 F. Supp. 2d 38 (D.P.R.
2001).  However, none of the judgments cited by BPPR concerns any
of the four songs at issue in the jury trial.  The district court
found that mentioning these rulings by name and in detail could
give the jury a misimpression of the evidence before it.  There was
no abuse of discretion.  See Fed. R. Evid. 403.

Second, BPPR argues that the district court erred in
excluding newly discovered evidence consisting of documents and
testimony BPPR alleges reveal that Johnny Rodriguez, composer of
"Fichas Negras," conferred all rights and royalties in that
composition to the University of Puerto Rico upon his death.[7]

---

[7]    LAMCO/ACEMLA asserts that Johnny Rodriguez transferred,
sold, and conferred all copyrights and royalties in his works to
LAMCO/ACEMLA on March 31, 1995; however, BPPR alleges that

BPPR argued that LAMCO/ACEMLA knew about this evidence all along and failed to disclose it during the course of discovery under Fed. R. Civ. P. 26.  On appeal, BPPR points to the fact that LAMCO/ACEMLA has conceded in its brief before this court that it had evidence of Rodriguez's will which it did not disclose in discovery.  In its brief at page 48, LAMCO/ACEMLA states of the will and testament: "Such evidence had been previously provided to ACEMLA/LAMCO, thus available."

However, there was no error.  BPPR asked to introduce the evidence on July 30, 2010, seven days into the jury trial and nine years into the litigation.  Among the district court's concerns with admitting the evidence so late in the litigation were that LAMCO/ACEMLA would then have "every right to seek additional discovery into [the will]," and the court would have to examine "Puerto Rico probate law or testament law" in depth, and "there is no telling how long that should take."  The court also noted there might be a need "to hear [from] other witnesses," including from the University of Puerto Rico.  After reviewing BPPR's documents concerning the will, the district court ruled against BPPR, finding that the evidence would unduly delay the trial.

The fact that BPPR had nine years to find the evidence of Johnny Rodriguez's will, the fact that it came from a witness, Richard Viera Cintron, who testified at trial, but who could have

---

Rodriguez's will was executed on February 22, 1991.

been questioned on the matter well before that point, and the fact that the district court was concerned that the new evidence would result in the need for significant new discovery when the parties were already halfway through the jury trial, all more than justify the court's decision to disallow the new evidence.

D.   <u>LAMCO/ACEMLA and GVLI's Dispute Over "Genesis"</u>

LAMCO/ACEMLA appeals the district court's July 21, 2010 decisions from the bench trial that GVLI owned "Genesis" between 1993 and December 31, 1997, and that LAMCO/ACEMLA accordingly infringed GVLI's rights by retroactively licensing the performance rights to that song between 1993 and 1998.   LAMCO/ACEMLA also appeals the court's award of damages.   GVLI defends both rulings.

We review the district court's legal conclusions de novo, <u>Walsh</u> v. <u>Walsh</u>, 221 F.3d 204, 214 (1st Cir. 2000), its factual conclusions for clear error, <u>id.</u>, and its damages award for abuse of discretion, <u>Lawton</u> v. <u>Nyman</u>, 327 F.3d 30, 37 (1st Cir. 2003).

First, LAMCO argues that GVLI's claim was precluded based on the district court's ruling in <u>Venegas-Hernandez</u> v. <u>Peer</u>, No. 01-1215, 2004 WL 3686337, at *33-34 (D.P.R. May 19, 2004), <u>aff'd in part, rev'd in part</u>, <u>Venegas-Hernández</u>, 424 F.3d 50, that there was no evidence that BPPR actually performed "Genesis" before 1998.   In that case, the district court held that by granting BPPR retroactive mechanical and synchronization licenses for the work "Genesis," LAMCO/ACEMLA had infringed GVLI's copyrights in that

song, but that because there was no evidence in the record that BPPR had actually performed "Genesis" before 1998, LAMCO's mere authorization of the performance rights of that song did not result in liability for infringement. Id. at *34.

In this case, the parties stipulated to the fact that the work "Genesis had in fact been performed by BPPR" in the 1993 Christmas concert. BPPR, 2010 WL 2900366, at *2. As a result, LAMCO/ACEMLA's authorization of the performance of that song under the retroactive license agreement, under these new facts, supports the district court's finding of liability for copyright infringement.[8]

LAMCO/ACEMLA next argues that GVLI failed to produce any evidence of damages at the bench trial, and thus the district court's award of $43,405.35, plus interest, to GVLI was improper. Once the district court found that LAMCO/ACEMLA had infringed GVLI's rights to "Genesis," it did not abuse its discretion in awarding GVLI damages.

---

[8]    LAMCO/ACEMLA also argues that the issue of ownership of "Genesis" had already been decided in Venegas-Hernández v. Asociación De Compositores y Editores De Música Latinoamericana ("ACEMLA"), 424 F.3d 50, 60 (1st Cir. 2005), in which this court held that Guillermo Venegas-Lloveras's widow, Lucy Chávez-Butler, owned a 50% copyright renewal interest in Venegas-Lloveras's works, and Venegas-Lloveras's four surviving children owned the remaining 50% interest, divided evenly among them. Chávez-Butler assigned all of her interests in these works to LAMCO in 1996, but this court held that this assignment did not take effect until January 1, 1998; therefore, the district court was not wrong to conclude that GVLI held exclusive rights to "Genesis" before January 1, 1998. See id.

In its July 21, 2010 opinion and order, the district court used the amount paid under the retroactive licensing contract to calculate the damages owed to GVLI. Id. The court reasoned that because LAMCO/ACEMLA had received $260,432.10 under the contract for the retroactive performances of six works, 1/6 of this amount constituted a fair award for actual damages suffered by GVLI as a result of the copyright infringement of "Genesis." Id. The court ordered LAMCO to pay GVLI a total of $43,405.35, plus interest. Id.

The district court did not abuse its discretion in calculating this award. GVLI owned the performance rights to "Genesis" in full between 1993 and 1998, and thus was entitled to damages equal to the full amount realized by LAMCO/ACEMLA through its improper licensing of GVLI's rights to BPPR.[9]

E.   BPPR's Offset Claims

BPPR argues that it was error not to award it an offset or return of the monies it paid to LAMCO/ACEMLA in performance fees for "Genesis" and "Ojos Chinos." The district court rejected BPPR's claim as to "Ojos Chinos" and found its claim as to "Genesis" moot. Id. at *3. We agree with the district court.

---

[9]   LAMCO also argues that it was error for the court to grant GVLI's motion to amend or correct the judgment to reflect that the damages awarded to GVLI will be paid by defendant ACEMLA, and not LAMCO. This decision was not error.

Under the retroactive licensing agreement, LAMCO/ACEMLA licensed six compositions: "Un Jibaro Terminado," "Madrigal," "Mi Jaragual," "Ojos Chinos," "Genesis," and "Dame La Mano Paloma," and agreed to indemnify BPPR "against any and all claims, demands or suits that may be made or brought against [BPPR]" with respect to these six compositions.

Based on the retroactive licensing agreement, and having found GVLI the rightful owner of "Genesis" during the period in question, the district court properly required LAMCO/ACEMLA to transfer to GVLI the monies paid to it by BPPR for performance rights to "Genesis." BPPR is not owed a return of the funds it paid LAMCO/ACEMLA for "Genesis" because those funds, in effect, have been transferred to their rightful owner.

The district court also properly declined to return the money BPPR had paid for the retroactive performance rights to "Ojos Chinos." Although BPPR presented evidence, based on this court's decision in Archdiocese of San Juan, that LAMCO/ACEMLA was not the exclusive owner of "Ojos Chinos" during the time period covered under the retroactive licensing agreement, BPPR did not prove that LAMCO/ACEMLA had no ownership interest in "Ojos Chinos" or that LAMCO/ACEMLA had misrepresented its rights with respect to the composition when it entered into the retroactive licensing agreement. This court held in Archdiocese of San Juan that LAMCO/ACEMLA held a non-exclusive license in the work. 499 F.3d at

41.  Since BPPR did not prove that any third party holds a priority interest in "Ojos Chinos" over and above LAMCO/ACEMLA's interest, the district court did not abuse its discretion in rejecting BPPR's request.

The district court also did not abuse its discretion in permanently enjoining BPPR from performing, producing, selling, and/or distributing the 1999 Christmas concert.  BPPR confusingly argues that as a matter of law, LAMCO/ACEMLA was not entitled to an injunction.  That is not the proper standard and we are not prepared to say that the district court, after years of complex and tedious litigation, abused its discretion in ending the matter so as to avoid endless future litigation over republication.  To the extent BPPR advances a public interest in future access to the 1999 Christmas concert, nothing forecloses BPPR from reaching a private arrangement providing for such access and seeking relief from the injunction.

### III.

For the reasons stated, the decisions of the district court are affirmed.

As between BPPR and LAMCO/ACEMLA, no costs of appeal are awarded.  GVLI is awarded its costs of appeal.

-26-